**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

JONATHAN H. PARDEE, an individual; and Carol H. Pardee (formerly Carol P. Havican) as Trustee of the JONATHAN H. PARDEE CHARITABLE REMAINDER UNITRUST U/A MAY 17, 1997.

Plaintiffs,

v.

CHARLES E. BRADLEY, JR., an individual; and CHARLES E. BRADLEY, SR., an individual

Defendants.

CA 07 023ML

**COMPLAINT FOR:**
**(1) BREACH OF CONTRACT; AND**
**(2) DECLARATORY RELIEF**

Plaintiff Jonathan H. Pardee ("Plaintiff Pardee") and Plaintiff Carol H. Pardee (formerly Carol P. Havican), as Trustee of the Jonathan H. Pardee Charitable Remainder Unitrust U/A May 17, 1997 ("Plaintiff Trustee") (collectively, Plaintiff Pardee and Plaintiff Trustee shall be referred to as the "Plaintiffs") allege as their Complaint against defendant Charles E. Bradley, Jr. ("Defendant Bradley, Jr.") and defendant Charles E. Bradley, Sr. ("Defendant Bradley, Sr.") (collectively, Defendant Bradley, Jr. and Defendant Bradley, Sr., shall be referred to as the "Bradley Defendants") as follows:

## NATURE OF THE CASE

1. This action arises from the wrongful actions of Defendant Bradley, Jr., who is the President and CEO of a publicly traded company known as Consumer Portfolio Services Inc.

("CPS"), and Defendant Bradley, Sr., who was the Chairman of CPS in May 1997. Together, the Bradley Defendants orchestrated a failed investment strategy that included more than $19 million in personal loans to themselves, which loans are now in default. Thereafter, and as a result of the Bradley's failed investment strategy and other actions of the Bradley's, a structured settlement assignment company that had nearly $100 million in obligations to settlement payee creditors could no longer meet its obligations to those payee creditors and to other creditors. These creditors were largely comprised of grievously injured tort plaintiff settlement payees (or their surviving orphans, widows or widowers) (the "Payees") who had bargained to have their structured litigation settlements paid over time by and through the structured settlement assignment company. As a result of the actions of the Bradley Defendants, including but not limited to their pursuit of an excessively risky and illiquid investment strategy, the structured settlement assignment company became insolvent, defaulted on payment obligations to more than two hundred Payees, and became mired in bankruptcy in June 2001, where that company remains to this day.

2. The conduct of the Bradley Defendants resulted in a proliferation of litigation, spawning suits and other proceedings by creditors in California, Montana and Connecticut. Although the Plaintiffs had no role in the Bradley Defendants' excessively risky and illiquid investment strategy, the Plaintiffs were drawn into much of that litigation and were forced to mount a defense, which defense has proven to be arduous and expensive. The Plaintiffs were dragged into that litigation because they had sold to the Bradley Defendants all of their stock in the structured settlement assignment company while that entity was still a solvent, going concern that had never failed to make payments as they came due to any Payee. It was more than three years after the sale of all of the Plaintiffs' stock that the structured settlement

assignment company defaulted on payments to the Payees as a result of the Bradley Defendants' excessively risky and illiquid investment strategy and their misuse of the assets of the structured settlement assignment company. To date, the Plaintiffs have been forced to spend millions of dollars defending against these claims by Payees and others, and have suffered other substantial losses as well. Through those litigation efforts, the Plaintiffs have been dismissed from one lawsuit and have obtained summary judgment in another. An adversary proceeding against the Plaintiffs continues in federal Bankruptcy Court in Connecticut where the Bradley Defendants took the structured settlement assignment company into bankruptcy in June 2001. A judgment against Defendant Bradley, Jr., due December 31, 2005, and now in default, has been entered by the Connecticut Bankruptcy Court in the amount of $4.1 million, and an additional $15 million in judgments, due December 31, 2004, and also in default, has been entered by that Court against Defendant Bradley, Sr. In all, approximately $48 million in judgments have been entered by that Court against the Bradley Defendants personally and against other entities controlled by them.

3. As part of the transaction by which the Plaintiffs sold all of their stock in the structured settlement assignment company to an entity controlled by the Bradley Defendants, the Bradley Defendants signed a written, personal guarantee (the "Guaranty") dated May 20, 1997, promising to protect the Plaintiffs if the Plaintiffs ever suffered losses, damages, costs, expenses or the like as a result of post-sale events. A true and correct copy of the Guaranty is attached hereto as Exhibit "A" and is incorporated herein by this reference. The Guaranty is "absolute, unconditional and continuing," and guarantees "full and punctual payment and performance." Once the Bradley Defendants had completed the transaction with the Plaintiffs, the Bradley Defendants set off on a strategy that redirected enormous sums of money from the structured

settlement assignment company into high risk, illiquid businesses under their personal control. Notably, some of the funds taken by the Bradley Defendants from the structured settlement assignment company (and that materially contributed to the ultimate insolvency of that company) were used to provide a multi-million dollar loan to Defendant Bradley, Jr. personally for investments such as a restaurant. The loan to Defendant Bradley, Jr., due on December 31, 2005, has not been repaid. He is, therefore, in default on that loan. The actions of the Bradley Defendants drove the structured settlement assignment company into bankruptcy. The Bradley Defendants' conduct caused the Plaintiffs to be subjected to the epic litigation that followed on the heels of the Bradley Defendants' wrongdoings. The clear and express terms of the Bradley Defendants' Guaranty include the "guarantee to the [Plaintiffs]" of "full and punctual payment when due (whether at maturity, by acceleration or otherwise), and the performance" of certain indemnification obligations owed to the Plaintiffs, including those sued on here. As executed by the Bradley Defendants, "This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectibility only and is in no way conditioned upon any requirement that the Indemnitees (including the Plaintiffs) first attempt to collect any of the Obligations from [others] or resort to any security or other means of obtaining payment and performance of the Obligations." The Bradley Defendants have been and are now obligated to fulfill those indemnification obligations to the Plaintiffs, but have not done so.

**PARTIES**

4. Plaintiff Jonathan H. Pardee is an individual and is now, and at all times mentioned in this complaint has been, a resident of the State of Rhode Island.

5. Plaintiff Carol H. Pardee (formerly Carol P. Havican) as Trustee of the Jonathan H. Pardee Charitable Remainder Unitrust U/A May 17, 1997 (the "Trust"), is an individual trustee and is now, and at all times mentioned in this complaint has been, a resident of the State of Rhode Island. The Trust is, and at all times mentioned in this complaint has been, a duly constituted Rhode Island trust.

6. Defendant Charles E. Bradley, Jr. is an individual and is now, and at all times mentioned in this complaint has been, a resident of the State of California.

7. Defendant Charles E. Bradley, Sr., is an individual; Plaintiffs are informed and believe, and thereupon allege, that Defendant Charles E. Bradley, Sr. is now, and at all times mentioned in this complaint has been, a resident of the State of Connecticut and/or the State of Florida.

8. At all times mentioned herein the Bradley Defendants, and each of them, were agents, partners, employees, representatives and/or affiliates of one another, and in doing the things alleged in this Complaint the Bradley Defendants were acting within the course and scope of such position and were acting with the knowledge, permission, approval and consent of each other.

**JURISDICTION AND VENUE**

9. The Plaintiffs already have incurred, and will continue to incur, substantial losses guaranteed by the Bradley Defendants, which losses of each of the Plaintiffs already exceed $75,000.00, exclusive of interest and costs. This action is among and between citizens of different States, as neither of the Plaintiffs resides in or is a citizen of the same State as either of the Bradley Defendants. The commercial transaction giving rise to the Bradley Defendants' Guaranty at issue in this action occurred in Rhode Island and pertained to a company

incorporated in Rhode Island. The payments by the Bradley Defendants under that Guaranty are to be paid to the Plaintiffs in Rhode Island. That Guaranty is governed by, and is to be construed in accordance with, the laws of Rhode Island. The Bradley Defendants agreed that any action to enforce that Guaranty could be brought in "any Federal Court sitting" in the State of Rhode Island and consented to the jurisdiction of such court. Jurisdiction is proper in the United States District Court for the District of Rhode Island under Title 28, section 1332 of the United States Code, because this action is between and among citizens of different States.

10. Venue is proper in the United States District Court for the District of Rhode Island pursuant to Title 28, section 1391(a) of the United States Code, because a substantial part of the events or omissions giving rise to the claims occurred in that judicial district. In addition, Defendant Bradley, Jr. asserted in the Superior Court for the State of California, County of Orange, that Rhode Island was the proper venue for this lawsuit.

## FACTUAL ALLEGATIONS

### A. <u>Background</u>

11. A structured settlement is a tax-driven vehicle for settling tort actions, typically actions for personal injury, products liability or medical malpractice. In a structured settlement, the plaintiff enters into a settlement agreement with a defendant that provides for periodic payments over time in settlement of his or her claims. The defendant then assigns the liability under the settlement agreement to a third party assignment company in exchange for a one-time cash payment. The structured settlement assignment company makes periodic settlement payments to the original tort plaintiff.

**B. The Plaintiffs' Sale of the Structured Settlement Assignment Company to the Bradley Defendants**

12. Stanwich Financial Services, Corp. ("Stanwich") is a structured settlement assignment company for over 200 structured settlements that were established in the late 1970s and early 1980s when Stanwich was known as IBAR, Inc., and later renamed Merrill Lynch IBAR, Inc., Merrill Lynch Settlement Services, Inc., ML Settlement Services, Inc., and Settlement Services Treasury Assignments, Inc.

13. From March 1, 1993, until May 20, 1997, Plaintiff Pardee was an officer and majority shareholder in Settlement Services Treasury Assignments, Inc. ("SSTAI"), a structured settlement assignment company that was the predecessor to Stanwich. At all times during Plaintiff Pardee's tenure as an officer and shareholder in SSTAI and (as has been adjudicated by the Superior Court for the State of California, County of Los Angeles) for at least seven months after the sale of all of the Plaintiffs' stock, SSTAI had liquid assets available in excess of those needed to satisfy all present and future obligations, including those owed pursuant to agreements with Payees. During Plaintiff Pardee's tenure, all of SSTAI's obligations to its creditors, including all Payees, were paid in full as they came due.

14. On May 20, 1997, the Plaintiffs sold all of their stock in SSTAI pursuant to the terms of a "Stock Purchase Agreement By and Among Settlement Services Treasury Assignments, Inc. and SST Acquisition Corp." (the "Stock Purchase Agreement"), a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by this reference. The Bradley Defendants participated in the formation of, and controlled, SST Acquisition Corp. SST Acquisition Corp. was formed as the holding company for the acquisition of SSTAI.

15 Immediately following the sale of the Plaintiffs' interest in SSTAI, that entity's name was changed to Stanwich Financial Services, Corp. ("Stanwich"). The Plaintiffs have had

no involvement with, employment by, or ownership interest in, SSTAI since May 20, 1997, and have never had any affiliation with Stanwich.

**C. <u>The Bradley Defendants Personally Guaranteed the Obligations and Indemnities under the Stock Purchase Agreement</u>**

16. In connection with the sale of the Plaintiffs' interest in SSTAI, the Plaintiffs received certain rights to indemnification of certain losses, including losses which the Plaintiffs have incurred, indemnification for which is now overdue and in default. The Plaintiffs have not been indemnified for those losses. The Bradley Defendants guaranteed the indemnification of those losses under the Guaranty. The obligations of the Bradley Defendants are now overdue and in default.

17. The Bradley Defendants assumed these obligations to the Plaintiffs by executing the Guaranty in favor of the Plaintiffs and other sellers of SSTAI. The Bradley Defendants signed the Guaranty pursuant to the transfer of stock by the Plaintiffs to Bradley-controlled entities. If the Bradley Defendants did not provide this Guaranty, the Plaintiffs had no obligation to transfer their stock to the Bradley-controlled entities. But the Bradley Defendants did provide the Guaranty, and in reliance on the Guaranty the Plaintiffs did transfer the stock. The Bradley Defendants are "Guarantors" under the Guaranty, with joint and several liability. The Plaintiffs are "Indemnitees" under the Guaranty.

18. Specifically, in the Guaranty executed by both of the Bradley Defendants, they made an "absolute, unconditional and continuing guaranty of the full and punctual payment and performance" of the following things, <u>inter alia</u>:

> Indemnify and hold each of the Sellers [which term includes the Plaintiffs], Sutro and each of the Seller's trustees and agents (collectively, the "Seller Indemnified Parties") harmless from and against, and agree to defend promptly each of the Seller Indemnified Parties for, any and all losses, damages, costs,

> expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses (hereinafter referred to collectively as "Seller Losses"), that any of the Seller Indemnified Parties may at any time suffer or incur, or become subject to, as a result of or in connection with the following (the "Seller Claims"):
> . . . (iv) any failure of the Purchaser, Indemnitor and/or the Company [SSTAI or Stanwich], after the date hereof, to carry out and perform its obligations under any agreement, instrument or other document to which the Company is now bound or becomes bound, (v) any fraudulent behavior by the Company, the Purchaser and/or the Indemnitor arising after the date hereof, (vi) any claim that the purchase and sale of the Shares constitutes a fraudulent transfer or fraudulent conveyance under applicable federal or state law and (vii) any failure to fulfill any obligation of the Sellers, the Company [SSTAI or Stanwich] and/or the SSTAI Trust to any Payee as and when due any time after the closing date.

(Stock Purchase Agreement at Section 9.02(a).)

19. Section 1 of the Guaranty, executed by both of the Bradley Defendants, also provides as follows, inter alia:

> This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations[1] and not of their collectibility only and is in no way conditioned upon any requirement that the Indemnitees first attempt to collect any of the Obligations from the Company, the Purchaser or the Indemnitor or resort to any security or other means of obtaining payment and performance of the Obligations. Should the Company, the Purchaser or the Indemnitor fail to pay or perform any of the Obligations when due, the obligations of the Guarantors hereunder shall become immediately due and payable to the Indemnitees, without demand or notice of any nature, all of which are expressly waived by the Guarantors. Payments by the Guarantors hereunder may be required by the Indemnitees on any number of occasions.

[1] Defined as "…the performance, of all indemnification obligations of the Company, the Purchaser and the Indemnitor to the Indemnitees contained in that certain Stock Purchase Agreement (the "Agreement") among the Indemnitees, the Purchaser and the Indemnitor of even date herewith . . . "

(Guaranty, Section 1.)

20. Section 6 of the Guaranty requires the Guarantors (including, without limitation, Defendant Bradley, Jr.) to provide (upon request) specified financial information and take (upon request) certain actions "after occurrence of a default in payment of the obligations." On or about February 16, 2006, Plaintiff Pardee properly made such a request of Defendant Bradley, Jr., for information and for such actions. Defendant Bradley Jr. did not provide (and as of the date of this complaint has not provided) to Plaintiff Pardee such information. In addition, Defendant Bradley, Jr., did not take (and as of the date of this complaint has not taken) such actions.

21. Section 6 of the Guaranty, executed by both of the Bradley Defendants, also provides as follows, inter alia:

> The Guarantors agree that each of them will, on the date hereof and from time to time (but no more often than every 6 months) at the request of any of the Indemnitees after occurrence of a default in payment of the Obligations, provide to the Indemnitees his most recent federal income tax returns and unaudited personal financial statements and such other information relating to the business and affairs of the Guarantors as the Indemnitees may reasonably request. All of such information shall be delivered subject to confidentiality restrictions. The Guarantors also agree to do all such things and execute all such documents, as the indemnities may consider necessary or desirable to give full effect to this Guaranty and to perfect and preserve the rights and powers of the Indemnitees hereunder.

(Guaranty, Section 6.)

22. Section 5 of the Guaranty, executed by both of the Bradley Defendants, provides as follows:

> The Guarantors agree that after the occurrence of any default in the payment or performance of the Obligations, the Guarantors will not receive, demand, sue for or otherwise attempt to collect any such indebtedness of the Company, the Purchaser or the Indemnitor to any of the Guarantors until the Obligations shall

> have been paid in full. If, notwithstanding the foregoing sentence, any of The Guarantors shall collect, enforce or receive any amounts in respect of such indebtedness. Such amounts shall be collected, enforced and received by the Guarantors as trustee for the Indemnitees and be paid over to the Indemnitees on account of the Obligations without affecting in any manner the liability of the Guarantors under the other provisions of this Guaranty. (Guaranty, Section 5.)

**D. The Structured Settlement Company Defaults on Its Obligations to the Payees, Resulting In Litigation against the Plaintiffs**

23. After the sale of the Plaintiffs' interest in the structured settlement assignment company to SST Acquisition Corp. and after the structured settlement assignment company's name was changed to Stanwich Financial Services, Inc. ("Stanwich"), the Bradley Defendants controlled Stanwich and directed and controlled the investment decisions made by Stanwich. The Bradley Defendants directed Stanwich to make various substantial investments, many in illiquid, closely-held companies controlled by the Bradley Defendants and/or their family members. One multi-million dollar loan was made directly to Defendant Bradley, Jr., purportedly to finance the opening of a now-defunct restaurant. Because of the excessively risky and illiquid nature of their investments, Stanwich became unable to repay certain loan obligations that Stanwich had undertaken, which resulted in the sale of the collateral securing the loans. When the collateral was sold, Stanwich was unable to meet Stanwich's contractual obligations to make periodic payments to structured settlement Payees, and stopped making those payments to Payees.

24. More specifically, in November 2000, more than three years after the Plaintiffs had sold all of the Plaintiffs' stock in the structured settlement assignment company, and while that company was under the control and direction of the Bradley Defendants, Stanwich stopped

making the periodic payments that were due and owing under the structured settlement agreements entered into with the Payees.

25. As a result of Stanwich's failure to make the structured settlement payments that were due and owing to Payees, the Payees filed multiple individual and class action lawsuits in California against Stanwich and many other entities and individuals formerly associated with the structured settlement assignment company, including Plaintiff Pardee. All cases naming Plaintiff Pardee and filed before August 14, 2002 were consolidated (the "Consolidated Actions") and assigned to the complex litigation calendar of the Superior Court of the State of California for the County of Los Angeles. Without entering into a settlement or providing any consideration, Plaintiff Pardee was voluntarily dismissed from the Consolidated Actions. A Bradley-controlled entity made a $6.7 million payment in the Consolidated Actions.

26. On or about June 25, 2001, Stanwich filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court of the District of Connecticut. That bankruptcy proceeding ("the Connecticut Bankruptcy") has included adversarial and related proceedings involving the Plaintiffs.

27. On August 14, 2002, three Payees, Takako Hawkins, Clive Hawkins, and the Estate of Thelma Jean Fenter, to whom Stanwich would be unable to make more than $2.5 million of required structured settlement payments as a result of Stanwich's insolvency and bankruptcy, filed a lawsuit (the "Hawkins Action") against Plaintiff Pardee as well as other entities formerly associated with the structured settlement assignment company (with the exception of those, including the Bradleys, that paid to settle the main action and of Stanwich which could not be sued by virtue of its pending bankruptcy). The Hawkins Action proceeded separately from the Consolidated Actions referred to in paragraph 25 above, in the Superior

Court of the State of California for the County of Los Angeles. On December 7, 2005, Plaintiff Pardee obtained summary judgment (currently on appeal) in the Hawkins Action pursuant to a written opinion absolving Plaintiff Pardee of any wrongdoing.

28. In the years since the Consolidated Actions, the Connecticut Bankruptcy and the Hawkins Action were filed, the Plaintiffs have incurred, and will continue to incur, substantial "Seller Losses," as defined under the Stock Purchase Agreement (including, but not limited to, attorneys' fees and costs) for which the Bradley Defendants have been and are now liable to the Plaintiffs under the Guaranty and for which the Plaintiffs remain unreimbursed. The Bradley Defendants have been and are obligated to fully and immediately pay the Plaintiffs each and all of the various Seller Losses under the terms of the Guaranty. These Seller Losses already amount to millions of dollars and continue to grow. To date, the Plaintiffs have not received payment for these losses from anyone and have borne these losses alone.

## FIRST CAUSE OF ACTION

**Breach of Contract**

**(By All Plaintiffs Against All Defendants)**

29. The Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 28 above, as if fully stated herein.

30. A valid written contract, the Guaranty, exists between the Plaintiffs and the Bradley Defendants.

31. The Plaintiffs at all times fulfilled all conditions, covenants and promises that the Plaintiffs were required to perform under the Guaranty, except those conditions rendered void or otherwise waived or excused by reason of the breaches of the Bradley Defendants or the non-fulfillment of which the Bradley Defendants are estopped from asserting.

32. Pursuant to Section 1 of the Guaranty, the Bradley Defendants "jointly and severally guarantee[d] to the Indemnitees [including the Plaintiffs] the full and punctual payment when due . . . , and the performance, of all indemnification obligations of the Company, the Purchaser and the Indemnitor to the Indemnitees contained in that certain Stock Purchase Agreement . . . (the "Obligations"). . . . Should the Company, the Purchaser or the Indemnitor fail to pay or perform any of the Obligations when due, the obligations of the Guarantors hereunder shall become immediately due and payable to the Indemnitees . . ."

33. To date, as the Bradley Defendants are fully aware, no one has indemnified the Plaintiffs for any of the Sellers Losses, as defined under the Stock Purchase Agreement, that the Plaintiffs have incurred, inter alia, in connection with the defense of the Consolidated Actions, the Hawkins Action and the Connecticut Bankruptcy, as well as in connection with the pursuit of the Plaintiffs' rights to indemnification under the Stock Purchase Agreement and their rights under the Guaranty, despite the fact that the indemnification obligations set forth in the Stock Purchase Agreement and referenced in the Guaranty have come due. The Bradley Defendants' obligations to the Plaintiffs under the Guaranty have come due and remain unsatisfied. The Bradley Defendants have thus breached the Guaranty.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (By Plaintiff Pardee Against Defendant Bradley, Jr.)

34. Plaintiff Pardee incorporates and realleges the allegations set forth in paragraphs 1 through 33 above, as if fully stated herein. Plaintiff Pardee has requested that Defendant Bradley, Jr. provide information and take actions required of Defendant Bradley, Jr. pursuant to Section 6 of the Guaranty. To date, Defendant Bradley, Jr., has failed to do so, thus breaching

the Guaranty. As a direct and proximate result of the breach of contract by Defendant Bradley, Jr., Plaintiff Pardee has suffered substantial damages, including but not limited to those incurred attempting to obtain the benefits of Section 6 of the Guaranty and of the Guaranty generally, in an amount which will be proven at trial.

## THIRD CAUSE OF ACTION

### Declaratory Relief

### (By All Plaintiffs Against All Defendants)

35. The Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 34 above, as if fully stated herein.

36. An actual controversy has arisen and now exists between the Plaintiffs and the Bradley Defendants regarding the construction of the Stock Purchase Agreement and the Guaranty, and the parties' rights and liabilities there under, a controversy that substantially affects the Plaintiffs' substantive rights there under, in that the Bradley Defendants deny they are liable to the Plaintiffs under the Guaranty for the losses the Plaintiffs have suffered and continue to suffer, making a judicial judgment and declaration of rights necessary.

37. The Plaintiffs seek a judicial declaration of the Plaintiffs' rights to indemnification of the Seller Losses that the Plaintiffs have incurred and continue to incur in connection with the Consolidated Actions, the Hawkins Action and the Connecticut Bankruptcy, and of the obligations of the Bradley Defendants to indemnify the Plaintiffs for such losses, under the terms of the Stock Purchase Agreement and the Guaranty.

## FOURTH CAUSE OF ACTION

**Declaratory Relief**

**(By Plaintiff Pardee Against Defendant Bradley, Jr.)**

38. Plaintiff Pardee incorporates and realleges the allegations set forth in paragraphs 1 through 37 above, as if fully stated herein.

39. An actual controversy has arisen and now exists between Plaintiff Pardee and Defendant Bradley, Jr. regarding the construction of the Guaranty, and the parties' rights and liabilities there under, a controversy that substantially affects Plaintiff Pardee's substantive rights there under, in that Defendant Bradley Jr. denies that he is required pursuant to Section 6 of the Guaranty to provide certain information and take certain actions requested of him by Plaintiff Pardee pursuant to Section 6 of the Guaranty, making a judicial judgment and declaration of rights necessary.

40. Plaintiff Pardee seeks a judicial declaration of Plaintiff Pardee's rights and Defendant Bradley Jr.'s obligations regarding information and actions requested by Plaintiff Pardee of Defendant Bradley, Jr. pursuant to Section 6 of the Guaranty.

WHEREFORE, the Plaintiffs pray for judgment against The Bradley Defendants on Counts One and Three, and Plaintiff Pardee prays for judgment against Defendant Bradley Jr. on Counts Two and Four, as follows:

1. For damages according to proof;

2. For indemnification of "any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal

and professional costs and expenses" that the Plaintiffs have incurred or may incur and have or may become subject to, including but not limited to (a) lost income and (b) costs and fees incurred in connection with the Consolidated Actions, the Hawkins Action, and the Connecticut Bankruptcy, and any other litigation or proceedings involving either or both of the Plaintiffs on the one hand, and any, some or all of Stanwich, CPS, or either or both of the Bradley Defendants, on the other hand, pertaining or related in any way to either or both of the Stock Purchase Agreement and/or the Guaranty.

3. For a judicial determination and declaration of the respective rights and duties of the parties under the Guaranty and the Stock Purchase Agreement, of the obligations of the Bradley Defendants to make full and immediate payment to the Plaintiffs for all of the Sellers' Losses pursuant to the terms of the Stock Purchase Agreement and the Guaranty, and of Defendant Bradley Jr.'s obligations regarding providing information and taking actions requested by Plaintiff Pardee of Defendant Bradley, Jr. pursuant to Section 6 of the Guaranty;
4. For pre-judgment interest as provided by law;
5. For post-judgment interest according to law;
6. For the Plaintiffs' attorneys' fees, expenses, and costs of suit herein; and
7. For such other and further relief as the Court deems just and proper.

**Plaintiffs hereby demand a jury trial.**

Plaintiffs,

**Jonathan H. Pardee and Carol H. Pardee (Formerly Carol P. Havican), As Trustee Of The Jonathan H. Pardee Charitable Remainder Unitrust U/A May 17, 1997**

By and through their attorney,

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

DATED: January 17, 2007