**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JONATHAN H. PARDEE, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>CHARLES E. BRADLEY, JR., *et al.*,<br>Defendants. | ) | C.A. No. 07-023 ML<br><br>**Hearing Requested**<br>**L.R. Civ. 7(e)** |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY**

Pursuant to Rule 12(b)(1), Defendants Charles E. Bradley, Jr. and Charles E. Bradley, Sr. (collectively the "Bradleys") hereby move to dismiss this action on the grounds that Plaintiffs' claims for indemnity and declaratory relief are premature and unripe. Should the Court chose not to dismiss this action, the Bradleys also hereby move, in the alternative, for a stay. In support of this motion, the Bradleys rely on the memorandum of law and exhibits filed herewith.

Respectfully submitted,

CHARLES E. BRADLEY, JR., and CHARLES E. BRADLEY, Sr.,

By Their Attorneys,

/s/ Christopher H. Little
Christopher H. Little (#1789)

/s/ Scott K. Pomeroy
Scott K. Pomeroy (#6044)
LITTLE MEDEIROS KINDER BULMAN & WHITNEY, P.C.
72 Pine Street
Providence, RI 02903
(401) 272-8080
Fax (401) 521-3555
Email: clittle@lmkbw.com,
spomeroy@lmkbw.com

DATED: March 20, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March 2007, I caused a true copy of the within Motion to Dismiss or, in the Alternative, Stay to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

Marc DeSisto, Esq. (marc@desistolaw.com)
DeSISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906

/s/ Christopher H. Little

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JONATHAN H. PARDEE, *et al.*,<br>Plaintiffs, | ) | C.A. No. 07-023 ML |
| v. | ) | |
| CHARLES E. BRADLEY, JR., *et al.*,<br>Defendants. | ) | **Hearing Requested**<br>**L.R. Civ. 7(e)** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY**

Pursuant to Rule 12(b)(1), Defendants Charles E. Bradley, Jr. and Charles E. Bradley, Sr. (collectively the "Bradleys") move to dismiss this action on the grounds that Plaintiffs' claims for indemnity and declaratory relief are premature and unripe. Depending upon the outcome of a related proceeding pending before this Court and other uncertain future events, the claims asserted in the Complaint may be completely moot. Should the Court chose not to dismiss this action, the Bradleys move, in the alternative, for a stay so that, when ripe, this action may be consolidated with two related actions now pending in this Court that arise out of the same complex commercial transactions and involve many of the same legal issues.

**Factual Background and Related Cases**

Plaintiffs Jonathan H. Pardee ("Pardee") and the Jonathan H. Pardee Charitable Remainder Trust ("JHP Trust") allege that the Bradleys personally guarantied the indemnity obligations that Consumer Portfolio Services, Inc. ("CPS") undertook as part of the May 1997 sale of a structured settlement company called Structured Settlement Treasury Assignments, Inc. ("SSTAI"). *See*, *e.g.*, Compl. at ¶¶ 3, 14, 16–19, and 32. Mr. Bradley, Jr. is the president and chief executive officer of CPS, and his father was the non-executive chairman of CPS's board at

the time of the sale. *See, e.g.*, id. at ¶ 1. The Plaintiffs were two of SSTAI's selling shareholders. *See, e.g.*, id. at ¶¶ 13–14. Both the Stock Purchase Agreement ("SPA"), which contains the indemnity provisions allegedly guarantied, and the Limited Guaranty ("Guaranty") were executed on May 20, 1997, as part of the sale transaction. *See, e.g.*, id. at ¶¶ 3 and 14. Copies of the Guaranty and the SPA are attached hereto as Exhibits A and B.[1]

In 2001, Pardee and the JHP Trust sued CPS for indemnity under the SPA, and after removing the case to this Court, CPS counterclaimed against Pardee, the JHP Trust, and SSTAI's other sellers for intentional and negligent misrepresentation with respect to the sale, indemnity, negligence, and declaratory relief. That case, captioned Jonathan H. Pardee, *et al.* v. Consumer Portfolio Services, Inc., Case No. 01-594 L (the "CPS case"), is currently assigned to Senior Judge Ronald R. Lagueux.[2] In it, CPS denies all indemnification liability on the grounds, *inter alia*, that SSTAI's sellers made material misrepresentations in connection with the sale, resulting in a failure of consideration and non-occurrence of conditions precedent to CPS's contractual duties under the SPA. Moreover, CPS contends that public policy bars Pardee from being indemnified for his own wrongful intentional acts which occurred prior to the sale of SSTAI. Copies of the operative pleadings in the CPS case are attached hereto as Exhibits C, D, and E.

---

[1] Although the Complaint states that copies of the Guaranty and SPA are attached as exhibits thereto, no exhibits of any kind were attached to the copies of the Complaint served upon the Defendants or, apparently, the copy filed with the Court.

[2] Before being assigned to Judge Lagueux, the CPS case was assigned at various times to then-Chief Judge Ernest C. Torres, Judge William E. Smith, and Judge Mary M. Lisi, all of whom recused themselves for various reasons. Given that both of the related cases pending in this Court are currently assigned to Judge Lagueux, it may be appropriate under L.R. Gen. 105(a)(2) for this case to be assigned to him as well.

In the CPS case, Pardee and the JHP Trust claimed indemnification with respect to the same California class-action lawsuit (the "California case")[3] and Connecticut adversary proceeding (the "Connecticut case")[4] that lie at the root of their indemnity claims against the Bradleys here. *Compare* Exhibit C at ¶¶ 10–14, 23 and 29 *with* Compl. at ¶¶ 25–26, 33, and 37. In addition, the indemnity obligations alleged here arise out of the same section of the SPA as the indemnity obligations alleged by Pardee and the JHP Trust in the CPS case. *Compare* Exhibit C at ¶ 8 *with* Compl. at ¶ 18.

By a reported decision, Judge Lagueux stayed the CPS case on ripeness grounds on November 17, 2004. *See* Pardee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823 (D.R.I. 2004)("CPS"), a copy of which is attached hereto as Exhibit F. Applying the well-established two-part test set forth in Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1952), Judge Lagueux ruled that Plaintiffs could satisfy neither prong of the ripeness inquiry. CPS, 344 F. Supp. 2d at 839. First, the indemnity claims against CPS were not fit for judicial determination because they involved "uncertain and contingent events" in the underlying out-of-state actions "that may or may not occur as anticipated or may not occur at all." *Id.* at 836 (quoting Operation Clean Gov't v. Rhode Island Ethics Comm'n, 315 F. Supp. 2d 187, 195 (D.R.I. 2004)). Specifically, no indemnity claim arises "until the indemnitee's liability is fixed either by entry of judgment holding the indemnitee liable or by the settlement of the underlying claim by the indemnitee on the belief that he is liable," and Judge Lagueux found that Plaintiffs' liability had not been fixed by judgment or settlement in the California or Connecticut cases. *Id.* Moreover, the common

[3] In re Structured Settlement Litig., Case No. BC-244111, Los Angeles, California, Superior Court.

[4] Official Committee of Unsecured Creditors v. Jonathan H. Pardee, *et al.*, Case No. 02-5023, United States Bankruptcy Court for the District of Connecticut.

factual and legal issues between the respective cases—*e.g.*, the California and Connecticut plaintiffs claimed that Pardee breached certain contractual and fiduciary duties to the settlement payees prior to his sale of SSTAI, and CPS contends that Pardee misrepresented those breaches at the time of the sale—led Judge Lagueux to conclude that a premature adjudication of the CPS case could result in an "unacceptable risk of inconsistent results" and the potential for prejudice to California and Connecticut case litigants who were not parties in Rhode Island. *Id.* at 837–838.

Turning to the hardship prong of the ripeness inquiry, Judge Lagueux found that Pardee did not face any "direct and immediate dilemma" such that issuance of the sought-for relief would be of practical assistance in setting the controversy to rest. *Id.* at 838–39. Although Pardee argued that he had already begun to incur significant defense costs in California and Connecticut, Judge Lagueux explained that there was simply no "possibility that Pardee would be forced to detrimentally change his behavior or that the resources that Pardee spends on his defense would be largely or entirely wasted." CPS, 344 F. Supp. 2d at 839.

Noting that "it is certain that in most cases lack of ripeness is grounds for dismissal," Judge Lagueux nevertheless opted to stay the CPS case rather than dismiss it outright due to the "overwhelming amount of time" already dedicated, by the parties and the Court, to discovery and motion practice in the case. *Id.* at 834. Judge Lagueux stayed the case at the summary judgment stage, and by that point, tens of thousands of pages of documents had been produced in discovery, there had been multiple discovery hearings, and witnesses had been deposed in Los Angeles, Atlanta, New York, Philadelphia, and New Haven, as well as locally.

During discovery, CPS learned of the basis for claims against Hinckley, Allen & Snyder, LLP ("HA&S"), the law firm that represented Pardee and SSTAI's other sellers at the time of the

sale. Subsequently, CPS filed suit against HA&S in this forum alleging, *inter alia*, that an opinion letter HA&S supplied in connection with the May 1997 sale contained material misrepresentations that induced CPS's agreement to indemnify SSTAI's sellers. That action, captioned Consumer Portfolio Services, Inc. v. Hinckley, Allen & Snyder, LLP, Case No. 04-493 L (the "HA&S case"), is also assigned to Judge Lagueux. On May 25, 2005, Judge Lagueux stayed the HA&S case on ripeness grounds and to prevent the costly duplication of effort, waste of judicial resources, and potential for prejudice that could result should the HA&S case be allowed to proceed independently of the factually-intertwined CPS case. Copies of CPS's amended complaint in the HA&S case and Judge Lagueux's stay order are attached as Exhibits G and H.

Since the stays entered in the CPS and HA&S cases, the California case has apparently concluded, but the Connecticut case remains active and contentious. In California, the superior court approved a settlement in which a group of defendants led by Bankers Trust agreed to pay more than $90,000,000 to the structured settlement payees. As Pardee refused to participate in the settlement, the payees assigned their claims against him to Bankers Trust, but Bankers Trust declined to timely file an amended cross-complaint against Pardee in that forum.

In Connecticut, CPS has reached a settlement with the Liquidating Agent that, if approved, would result in CPS paying $625,000 into the bankruptcy estate in exchange for the dismissal with prejudice of all adversary proceeding claims against Pardee and the JHP Trust. Pardee, however, has objected to this settlement, and a trial is scheduled for May 16, 2007, on the Liquidating Agent's contested motion to approve the settlement. Copies of the amended complaint in the Connecticut case, the Liquidating Agent's motion, and Pardee's objection are attached as Exhibits I, J and K.

In addition to the California and Connecticut cases, Pardee and the JHP Trust also seek indemnity from the Bradleys with respect to Takako Hawkins, *et al.* v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *et al.*, Case No. 279691 (the "Hawkins case"), which was filed in the Los Angeles, California, Superior Court. *See* Compl. at ¶¶ 27 and 33. The plaintiffs in the Hawkins case are a group of structured settlement payees who allege, *inter alia*, that prior to the sale of SSTAI, Pardee breached his and SSTAI's contractual and fiduciary duties by selling Treasury Investment Growth Receipts ("TIGRs") that were intended to fund the plaintiffs' settlements without their knowledge or consent. These allegations, if true, would further support CPS's defenses—and the Bradleys' anticipated defenses—against Pardee's indemnity claims and show that SSTAI's sellers made material misrepresentations in connection with the sale. A copy of the complaint in the Hawkins case is attached as Exhibit L.

The Hawkins Case is currently "on appeal" and, as such, has not yet come to any final resolution. *See* Compl. at ¶ 27.

As should be obvious, Plaintiffs' present indemnity claims against the Bradleys are unripe for exactly the same reasons that Judge Lagueux found Plaintiffs' already pending indemnity claims against CPS to be unripe. Two of the cases regarding which Pardee and the JHP Trust seek indemnity—the Connecticut case and the Hawkins case—are still unresolved. The core factual and legal issues in those cases are also relevant to the defenses and counterclaims in the CPS case and the Bradleys' likely parallel defenses and counterclaims here.

Moreover, the Guaranty at issue in this case only requires the Bradleys to personally honor CPS's indemnity liability in the event that CPS defaults. *See, e.g.*, Compl. at ¶¶ 19–22. At present, however, the question of whether CPS even has any indemnification liability is still

pending before Judge Lagueux in the CPS case, and that case remains stayed pending the final resolution of the Connecticut action.

Should Judge Lagueux ultimately determine that CPS has no indemnity liability because of the misrepresentations made by Pardee or for any other reason, then Plaintiffs' Complaint here will immediately become moot. Even should Judge Lagueux ultimately rule against CPS, there is absolutely no reason to believe that CPS would not honor the judgment once it becomes final and all appeals have run. Thus, the Plaintiffs' Complaint here presents the Court with an abstract, hypothetical, and purely speculative dispute that, depending upon future events, is unlikely to ever arise.

Unlike the CPS case, there is nothing in this case that makes a stay preferable to dismissal. In the CPS case, Judge Lagueux concluded that prudential concerns of judicial economy and the parties' substantial expenditures of time and energy in discovery counterbalanced Article III's jurisdictional mandate and weighed in favor of a stay. Here, by contrast, the case has just commenced, no discovery has been undertaken, and the Court has not yet devoted its time to numerous substantive hearings in this matter.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) is "a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including "those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction." Valentin v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001). Under Rule 12(b)(1), "a party may contest the court's subject matter jurisdiction by challenging the allegations in the complaint as insufficient on their face or by questioning the accuracy of those allegations," Hernandez-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005), and "[t]he

court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." Dynamic Image Tech., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000)(citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 890–91 (3d Cir. 1977)). In conducting its inquiry, the Court has "considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." Valentin, 254 F.3d at 364.

The party asserting subject-matter jurisdiction has the burden of demonstrating its existence. Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003), *cert. denied*, 542 U.S. 903 (2004); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995), *cert. denied*, 515 U.S. 1144 (1995); *see also* Fed. R. Civ. P. 12(h)(3)("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## Points and Authorities

### I. There is no subject-matter jurisdiction because Plaintiffs' claims for indemnity and declaratory relief are not ripe.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984); *see* U.S. Const. art. III, § 2. Whether the plaintiff has made out a "case or controversy" within the meaning of Article III is "the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975).

The ripeness doctrine, grounded in both constitutional and prudential concerns, serves to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs., 387 U.S. at 148–49 (1967); Rhode Island Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 33 (1st Cir. 1999); Ernst & Young v. Depositors

Economic Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995); Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dept., 973 F.2d 18, 20 (1st Cir. 1992); Pharmaceutical Research & Mfrs. of America v. Nicholas, 353 F. Supp. 2d 231, 240 (D.R.I. 2005); CPS, 344 F. Supp. 2d at 835. As the First Circuit has explained,

> [C]ourts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance . . . . Defendants, moreover, should not be forced to bear the burdens of litigation without substantial justification, and in any event may find themselves unable to litigate intelligently if they are forced to grapple with hypothetical possibilities rather than immediate facts.

Gun Owners' Action League , Inc. v. Swift, 284 F.3d 198, 206 (1st Cir. 2002), *cert. denied*, 537 U.S. 827 (2002)(quoting 13A Charles A. Wright, *et al.*, Federal Practice & Procedure § 3532.1).

While the Declaratory Judgment Act, 28 U.S.C. § 2201, empowers federal courts to grant declaratory relief under certain circumstances, the Act does not confer or expand subject matter jurisdiction. Rather, it "makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis." Ernst & Young, 45 F.3d at 534 (citing Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 15–16 (1983)). The Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *Id.* (quoting El Dia, Inc. v. Hernandez-Colon, 963 F.2d 488, 493 (1st Cir. 1992)); CPS, 344 F. Supp. 2d at 835; Operation Clean Gov't, 315 F. Supp. 2d at 194.

To determine whether a claim is ripe for review, the Court must evaluate the "fitness" of the issue for adjudication and the "hardship" that withholding immediate judicial consideration will work. Abbott Labs., 387 U.S. at 148–49; Whitehouse, 199 F.3d at 33; Public Serv. Co. v. Patch, 167 F.3d 15, 23 (1st Cir. 1998); Riva v. Commonwealth of Massachusetts, 61 F.3d 1003,

1009 (1st Cir. 1995); CPS, 344 F. Supp. 2d at 835. The party asserting ripeness bears the burden of adducing evidence of facts sufficient to establish that both prongs of the ripeness test are satisfied. Whitehouse, 199 F.3d at 33; Ernst & Young, 45 F.3d at 535; CPS, 344 F. Supp. 2d at 835.

**A. The Plaintiffs' indemnity and declaratory judgment claims are not "fit" for adjudication at this time.**

In the First Circuit, the "critical consideration" in determining the fitness of a claim is the extent to which "the claim involves uncertain and contingent events that may not occur as anticipated, or may not occur at all." Riva, 61 F.3d at 1009; Ernst & Young, 45 F.3d at 536; Afro-American Police, 973 F.2d at 20; Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990); CPS, 344 F. Supp. 2d at 836. Here, the Plaintiffs' indemnity claims are clearly contingent on events in the CPS, Connecticut, and Hawkins cases that may not occur as anticipated if they ever occur at all.

The Bradleys' alleged obligation to indemnify is derivative of CPS's alleged indemnification liability which is currently being litigated in the CPS case. Should Judge Lagueux ultimately rule that CPS has no indemnification liability to the Plaintiffs, as CPS contends in that suit, then there is nothing here for the Bradleys to personally guaranty. Where, as here, a claim is contingent upon the outcome of another lawsuit, the claim is not ripe. Lincoln House, 903 F.2d at 847; Terra Nova Ins. Co. v. Distefano, 663 F. Supp. 809, 811 (D.R.I. 1987).

Even were this Court to by-pass the CPS case and attempt to independently adjudicate the question of CPS's indemnity liability under the SPA (as a prerequisite to reaching the claims against the Bradleys), this Court would encounter the same ripeness problem identified by Judge Lagueux in his CPS decision. In Rhode Island, as elsewhere, "the general rule regarding indemnity is that no claim arises as such until the indemnitee's liability is fixed either by entry of

a judgment holding the indemnitee liable or by the settlement of the underlying claim by the indemnitee on the belief that he is liable." CPS, 344 F. Supp. 2d at 836; A&B Constr., Inc. v. Atlas Roofing & Skylight Co., 867 F. Supp. 100, 113 (D.R.I. 1994)(indemnity claim arises where "one party has been compelled by reason of some legal obligation to pay damages"); Muldowney v. Weatherking Prods., Inc., 509 A.2d 441, 443 (R.I 1986)(necessary element of indemnity claim is that "the party seeking indemnity must be liable to a third party"); *see also*, Runyan v. United Brotherhood of Carpenters, 566 F. Supp. 600, 609 (D. Colo. 1983); Mangone v. Moore-McCormack Lines, 152 F. Supp. 848, 855 (E.D.N.Y. 1957); Read Drug & Chem. Co. v. Colwill Constr. Co., 243 A.2d 548, 558 (Md. App. 1968).

Apart from the CPS case, federal courts in other jurisdictions have routinely found that indemnity claims are unripe until the alleged indemnitee's liability has been fixed by a judgment or settlement. *See*, *e.g.*, Armstrong v. Alabama Power Co., 667 F.2d 1385, 1388–89 (11th Cir. 1982); A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp., 559 F.2d 928, 932–33 (4th Cir. 1977); Cunningham Brothers, Inc. v. Bail, 407 F.2d 1165, 1169 (7th Cir. 1969), *cert denied*, 395 U.S. 959 (1969); National Valve & Mfg. Co. v. Grimshaw, 181 F.2d 687, 689–90 (10th Cir. 1950); UNR Indus., Inc. v. American Mutual Liability Ins. Co., 92 B.R. 319, 325–27 (N.D. Ill. 1988); Companion Assurance Co. v. Alliance Assurance Co., 585 F. Supp. 1382, 1385 (D.V.I. 1984). The mere fact that an alleged indemnitee has begun to incur defense costs does not render his or her indemnity claim ripe. Mowinckles, 559 F.2d at 932.

Since the Plaintiffs' underlying liability has not yet been fixed by judgment or settlement in the Connecticut or Hawkins cases, their claims for indemnity and declaratory relief against CPS—and, in turn, their claim that the Bradleys must personally guaranty CPS's indemnity obligations—are entirely contingent on uncertain future events. If, in the Hawkins or

Connecticut case, liability is imposed on the basis of Pardee's (and SSTAI's) pre-sale breaches, then the express representations Pardee and the JHP Trust made in the SPA were false at the time of the 1997 sale. As alleged by CPS, such misrepresentations render the SPA indemnity provisions unenforceable for failure of consideration, non-occurrence of conditions precedent, and other reasons. Likewise, if it turns out that one or more of SSTAI's sellers is found liable for damages based on the willful and intentional nature of their wrongful pre-sale conduct, CPS would have no indemnity obligation. If CPS has no indemnity liability, then neither do the Bradleys. Thus, uncertainty as to the basis of the Plaintiffs' underlying liability and the existence of CPS's indemnification liability presents an especially acute risk of inconsistent results should this Court attempt to adjudicate the Bradleys' indemnity liability before the conclusion of the CPS case and all of the out-of-state cases.

"A second important factor in the fitness calculus is the extent to which the claim is bound up in the facts." Riva, 61 F.3d at 1009–10; CPS, 344 F. Supp. 2d at 838. As the First Circuit has explained, "Courts are more likely to find a claim ripe if it is of an intrinsically legal nature, and less likely to do so if the absence of a concrete factual situation seriously inhibits the weighing of competing interests." Riva, 61 F.3d at 1009–10 (citations omitted). As Judge Lagueux found in the CPS case, "there are indeed factual *and* legal questions surrounding Pardee's liability in the California and Connecticut cases that are at the root of, and therefore inseparable from Plaintiffs' request for indemnification in this matter." *Id.*, 344 F. Supp. 2d at 838 (emphasis in original). Although the California case has come to an end, a review of the complaint in the Hawkins case, *see* Exhibit L, indicates that it also encompasses many of the same factual and legal issues that are at the heart of Plaintiffs' indemnity claims against CPS and, by extension, the Bradleys. Until there has been a final resolution of all of the out-of-state

cases with respect to which the Plaintiffs seek indemnity, this case, like the CPS case, is "bound up in the facts" and unripe. Indeed, even upon the conclusion of the out-of-state cases, this case will still be "bound up in the facts" of the CPS case until such time as that case too has reached its final disposition.

"A third salient factor that enters into the assessment of fitness involves the presence or absence of adverseness." Riva, 61 F.3d at 1010; CPS, 344 F. Supp. 2d at 838. This factor focuses on such questions as "whether all affected parties are before the court" and "whether the controversy as framed permits 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Riva, 61 F.3d at 1010 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)). CPS and other parties to the CPS, HA&S, Connecticut, and Hawkins cases are not before this Court but clearly have an interest in such common issues as: the legality and validity of SSTAI's pre-sale Master Trust amendments; whether Pardee and SSTAI's other sellers breached their contractual or fiduciary duties to the payees in their operation of SSTAI; whether Pardee, SSTAI's other sellers, and their lawyers made material misrepresentations in connection with the sale; and the scope and enforceability of the SPA's indemnity provisions. As Judge Lagueux found, there is no way to adjudicate such issues without making findings that could "unfairly and inappropriately" damage parties that are not before the Court. CPS, 344 F. Supp. 2d at 838. The same difficulty exists here, except to a even greater degree.

**B. The Plaintiffs are not faced with a "direct and immediate dilemma" that threatens a hardship if judicial resolution of their claims is postponed.**

The hardship prong of the ripeness test turns on whether the circumstances giving rise to the claim create "a 'direct and immediate' dilemma for the parties." W.R. Grace & Co. v. United States Envtl. Prot. Agency, 959 F.2d 360, 364 (1st Cir. 1992)(quoting Abbott Labs., 387 U.S. at

152)); CPS, 344 F. Supp. 2d at 838. In assessing this prong, the Court should ask whether "granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Riva, 61 F.3d at 1010 (quoting State of Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994), *cert. denied*, 513 U.S. 919 (1994)).

As the Fourth Circuit explained in Mowinckles, the fact that an alleged indemnitee has already incurred some defense costs " does not make ripe [his or her] claims for indemnification against all potential liability and expenses." *Id.*, 559 F.2d at 932. In order to rise to the level of a "direct and immediate dilemma," Pardee and the JHP Trust would have to face, for example, the risk that the resources spent defending the out-of-state cases "would be largely or entirely wasted" if the issues in this case were later decided in an unfavorable way. Riva, 61 F.3d at 1010 (citing Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n, 461 U.S. 190 (1983) and Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59 (1978)). In Pacific Gas, for example, the plaintiffs were faced with the immediate prospect of deciding whether to spend millions of dollars in construction costs for new nuclear power plants (which take years to build) in the face of legal uncertainty as to whether the new plants could ultimately be certified. The Supreme Court held, "To require the industry to proceed without knowing whether the moratorium is valid would impose a palpable and considerable hardship on the utilities." *Id.*, 461 U.S. at 201–02.

Obviously, Pardee and the JHP Trust face no such immediate dilemma here. Regardless of whether their defense costs ultimately prove to be indemnifiable, the Plaintiffs must defend themselves in the out-of-state cases. Those defense costs will be incurred by *somebody* regardless of who is ultimately adjudged to bear responsibility for them. Postponing a decision

in this case will cause no material harm to the Plaintiffs because they can always be made whole by a money judgment should they ultimately prevail after the resolution of the CPS, Connecticut, and Hawkins cases—assuming, of course, that the claims against the Bradleys are not rendered moot by future events. *See*, *e.g.*, Colonial Courts Apartment Co. v. Paradis, 780 F. Supp. 88, 91–92 (D.R.I. 1992).

Even were the Court to now rule on whether CPS, and thus the Bradleys, must indemnify the Plaintiffs for the defense costs they have so-far incurred, that decision would not put this matter to rest. As discussed above, the question of whether the Plaintiffs are even entitled to indemnity is dependent upon the resolution of factual and legal issues that may yet be litigated and decided in the Connecticut and Hawkins cases and are likely to be litigated in the CPS case. Once all of those cases are finally resolved, this Court would again have to re-consider whether, in light of those cases, the Plaintiffs are, or were, entitled to indemnity at all. Only upon the conclusion of the CPS, Connecticut, and Hawkins cases can this Court make a practical and final decision that will set the Plaintiffs' claims to rest, assuming that there is even anything left by that point for this Court to decide.

**Conclusion**

This case is even farther from being ripe than the CPS case, but it implicates none of the prudential concerns that led Judge Lagueux to order a stay rather than dismissal. As such, this

Court lacks subject matter jurisdiction to hear Plaintiffs' claims against the Bradleys, and this case must be dismissed.

Respectfully submitted,

CHARLES E. BRADLEY, JR., and CHARLES E. BRADLEY, Sr.,

By Their Attorneys,

/s/ Christopher H. Little
Christopher H. Little (#1789)

/s/ Scott K. Pomeroy
Scott K. Pomeroy (#6044)
LITTLE MEDEIROS KINDER BULMAN & WHITNEY, P.C.
72 Pine Street
Providence, RI 02903
(401) 272-8080
Fax (401) 521-3555
Email: clittle@lmkbw.com,
spomeroy@lmkbw.com

DATED: March 20, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March 2007, I caused a true copy of the within Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, Stay to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

Marc DeSisto, Esq. (marc@desistolaw.com)
DeSISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906

/s/ Christopher H. Little

scott/A124/1611