# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JONATHAN H. PARDEE and CAROL HAVICAN, as Trustee of the JONATHAN H. PARDEE CHARITABLE REMAINDER TRUST,<br>Plaintiffs,<br><br>v.<br><br>CONSUMER PORTFOLIO SERVICES, INC.,<br>Defendant. | C.A. No. 01-594-L<br><br>**JURY TRIAL DEMANDED** |
| CONSUMER PORTFOLIO SERVICES, INC.,<br>Counterclaim Plaintiff,<br><br>v.<br><br>JONATHAN H. PARDEE; JONATHAN H. PARDEE CHARITABLE REMAINDER TRUST; DUNBAR/WHEELER TRUST; and OGDEN H. SUTRO,<br>Counterclaim Defendants. | |

**DEFENDANT'S SECOND AMENDED COUNTERCLAIMS**

These Counterclaims seek indemnification, damages and other relief arising out of breaches by the shareholders and officers of Settlement Services Treasury Assignments, Inc. ("SSTAI") of various representations made to Consumer Portfolio Services, Inc. ("CPS") in connection with its agreement to be an indemnitor as to certain claims that might arise subsequent to the sale of the SSTAI stock to SST Acquisition Corp. CPS also seeks damages on account of the shareholders' and officers' failure to indemnify CPS on account of certain claims

asserted against CPS and also seeks declaratory relief as to their obligations to indemnify CPS as to future claims.

## PARTIES

1. CPS, Counterclaim Plaintiff, is a California corporation.

2. Jonathan H. Pardee ("Pardee"), Counterclaim Defendant, on information and belief, is a resident of Newport, Rhode Island. Pardee was a shareholder of SSTAI prior to May 20, 1997.

3. Jonathan H. Pardee Charitable Remainder Trust ("Pardee Trust"), Counterclaim Defendant, on information and belief, has its address in Newport, Rhode Island and was a shareholder of SSTAI prior to May 20, 1997. The Pardee Trust is joined in this counterclaim pursuant to Rule 13(h) of the rules of civil procedure.

4. Dunbar/Wheeler Trust ("Dunbar/Wheeler"), Counterclaim Defendant, on information and belief, has its address in Old Greenwich, Connecticut. Dunbar/Wheeler was a shareholder of SSTAI prior to May 20, 1997. Dunbar/Wheeler is joined in this counterclaim pursuant to Rule 13(h) of the rules of civil procedure.

5. Ogden H. Sutro ("Sutro"), Counterclaim Defendant, on information and belief, is a resident of Old Greenwich, Connecticut and was a party to the Stock Purchase Agreement, pursuant to which Pardee, the Pardee Trust and Dunbar/Wheeler sold their shares of stock to SST Acquisition Corp. Sutro is joined in this counterclaim pursuant to Rule 13(h) of the rules of civil procedure.

6. On May 20, 1997, Counterclaim Defendants and SST Acquisition Corp.("SST") and CPS executed that certain Stock Purchase Agreement ("Stock Purchase Agreement") attached as **Exhibit A**. Pursuant to the terms of the Stock Purchase Agreement, the shareholders

agreed to sell and SST agreed to purchase all of the outstanding shares of SSTAI for the consideration and subject to the terms set forth in the Agreement.

7. CPS agreed, subject to the terms set forth in the Agreement, both to indemnify the Counterclaim Defendants from claims that might arise subsequent to the purchase of the stock and to be indemnified from certain claims resulting from Counterclaim Defendants' acts or omissions prior to closing.

8. Attached as **Exhibit B** is a summary of representations made by Bear Stearns, the authorized agent of the Counterclaim Defendants, relative to SSTAI and its value to a potential buyer. The Counterclaim Defendants represented that a buyer would have the following material benefits from owning SSTAI:

> ACQUISITION OPTIONS
>
> Because the Company [SSTAI] has not acquired new business since 1992, any acquisition should be viewed as a purchase of high quality, highly liquid and flexible assets, primarily US Treasury Bonds.
>
> Value comes from the following:
>
> > Ability to borrow against more than $94 million in US Treasuries at Fed Fund rates and earn a positive spread from highly flexible reinvestment (i.e. fund warehouse facilities, short term capital needs, fixed income investments or commercial paper)
> >
> > Present value of Treasury payments exceeds future payment liabilities by $2.2 million
> >
> > Real cash equity is over $2 million
>
> * * *
>
> OTHER HIGHLIGHTS
>
> * * *
>
> > Company currently pledges US Treasury bonds for repo primarily with Morgan Stanley and uses the proceeds to invest in Morgan Stanley fixed income vehicles and private investments at Sanford Berstein, Fidelity, Vanguard, and other accounts.

9. The Counterclaim Defendants also represented to potential buyers that they had the legal authority to borrow money at repo rates (about 5.5 - 6%) using the Treasury Bonds as collateral and that they had reinvested the funds in equities and fixed income securities earning a spread of about 150 basis points over cost.

10. CPS relied on these representations of the Counterclaim Defendants in determining whether to provide indemnification under the Stock Purchase Agreement in connection with SST's purchase of the stock.

11. The Stock Purchase Agreement contains various representations by Counterclaim Defendants and their counsel that CPS and SST relied upon in providing indemnity and purchasing the stock. These representations included the following:

> Section 3.08. Title to Assets. The Company owns good and marketable title to the Assets [defined in Section 1.04 as ". . . all of the assets of the Company as of the Closing Date, including without limitation, . . . the Company's interest as the sole beneficiary . . . of the SSTAI Trust."]. . . . *free and clear of any and all* mortgages, liens *encumbrances, charges, claims, restrictions, pledges,* security interests or impositions, . . . . (Emphasis added.)

> Section 3.20. Compliance with Law. The conduct of the business of the Company and the use of its Assets *does not violate* or conflict, and has not violated or conflicted, with *any law in any material respect*. . . . (Emphasis added.)

> Section 3.26. Accuracy of Information. Neither this Agreement nor any other document provided by the Company or any Sellers to the Purchaser in connection with the transactions contemplated herein contains an untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

> Section 3.28. Settlement Agreements. All of the obligations of the Company and the California Corporation under each of the Settlement Agreements required to be paid or performed by it through the date of this Agreement have been paid and performed.

> Section 3.29. <u>Trusts</u>. The Company is the *sole beneficiary and trustor*, and Bankers Trust Company of New York is the sole trustee, of a trust (the "SSTAI Trust") established under that certain Settlement Services Treasury Assignments, Inc. Amended and Restated Master Trust Agreement executed as of July 12, 1995. . . . Except for the SSTAI Trust, there are no other trusts in effect relating to any of the Settlement Agreements. . . . *the Payees are solely unsecured creditors of the Company. The SSTAI Trust is in full force and effect and complies with applicable law and with the obligations of the Company and the California Corporation under the Settlement Agreements.* Exhibit 3.29(b) sets forth, in chronological order, each master trust agreement relating to the Settlement Agreements (other than the SSTAI Trust) to which the Company or the California Corporation was a party. Each trust relating to the Settlement Agreement or any of them (collectively, the "Prior Trusts"), the termination thereof and the transfer of assets held thereunder to each successor trustee complied with applicable law and the obligations of the Company and the California Corporation under the Settlement Agreements. The Prior Trusts were consolidated into master trusts which were Prior Trusts. Accounts for Payees under the Prior Trusts whose Settlement Agreements have not been satisfied in full are now maintained under the SSTAI Trust. (Emphasis added.)
>
> Section 3.30. <u>Administration of Trusts</u>. Exhibit 3.30 contains a true and complete list of all assets owned by SSTAI and held by the SSTAI Trust as of May 19, 1997, *which assets are owned free and clear of all liens and encumbrances of every kind. . . .* The administration of each of the SSTAI Trust and the Prior Trusts, and the investment of the assets held by the Company or in the SSTAI Trust or the Prior Trusts, to the extent under the control of direction of the Company or the California Corporation, *have not violated the terms of the Settlement Agreement or applicable law.* (Emphasis added.)

12. The opinion letter from counsel for Counterclaim Defendants represented as follows:

> The SSTAI Trust is a duly constitute trust under Rhode Island law and in full force and effect as of the date hereof. Except as set forth in Section ___ [sic] of the Purchase and Sale Agreement, *the Corporation is the sole beneficiary and sole trustor under the SSTAI Trust. There are no facts known to us "which give us reason to believe that the SSTAI Trust does not hold all of the assets now held by it, free and clear of all liens, charges and encumbrances and adverse claims of every kind or nature."* (Emphasis added.)

13. The Counterclaim Defendants made the representations referenced in Paragraphs 8, 9, 11, and 12 above to inflate the value of SSTAI (a company they paid approximately one

dollar for a few years earlier) and induce SST to purchase the stock for $17 million and induce CPS to indemnify them.

**The Structured Settlement Litigation**

14. After the closing on the stock purchase, SST became known as Stanwich Financial Services Corp. ("Stanwich").

15. After the closing, Stanwich became unable to continue making periodic payments due to the structured settlement payees. As a consequence of the non-payment by Stanwich, many of the structured settlement payees asserted claims in California courts against Pardee, CPS and other entities that had had been associated with the structured settlements. The claims were consolidated in the Los Angeles Superior Court (the "Structured Settlement Litigation").

16. On information and belief, The Second Amended Model Complaint – Class Action is the operative pleading which contains the Structured Settlement Litigation Plaintiffs' ("SSL Plaintiffs") allegations against the various defendants. A copy is attached as **Exhibit C**.

17. The SSL Plaintiffs allege that upon securing control, Pardee, through another trustee wrongfully amended the Master Trust agreement to delete the anti-hypothecation provisions so as to permit the investments at issue in the Structured Settlement Litigation (Ex. C at ¶ 63).

18. The SSL Plaintiffs allege that Pardee, who assumed control over SSTAI in 1992, immediately thereafter began a course of seeking control over the Treasury Bonds which were then held in trust. Pardee sued the trustee and thereafter entered into a "collusive settlement" which resulted in having the trustee resign as trustee and agree that SSTAI, not the payees, was the sole beneficiary of the Master Trust. SSL Plaintiffs assert that they are beneficiaries of the various trusts in the litigation. (Ex. C at ¶ 56-58).

19. SSL Plaintiffs further allege that Pardee sought to use the Treasury Bonds for purposes that were: (a) inconsistent with the purpose of a Treasury Bond Trust and the statutory requirements applicable thereto; (b) in violation of the Trust Agreements; (c) in violation of the Settlement Agreements and Assignment Agreements; and (d) In violation of the fiduciary duties that SSTAI and the Trustees owed to the SSL Plaintiffs. (Ex. C at ¶ 65).

20. SSL Plaintiffs allege that Pardee wrongfully further amended the Trust Agreements to provide that SSTAI would be the sole beneficiary of the Trust and to eliminate any requirement that the Trust estate consist of Treasury Bonds and instead allow whatever property SSTAI wanted. (Ex. C at ¶ 71).

21. In 1995, SSTAI, under Pardee's control, reinforced and restated the 1994 Master Trust Agreement to permit hypothecation of the Treasury Bonds held in the Treasury Bond Trust. (Ex. C at ¶ 73).

22. SSL Plaintiffs further allege that Pardee and SSTAI, by amending the Master Trust Agreements, intended to obtain access to the Treasury Bonds to use the bonds as collateral for loans to SSTAI and Pardee, as collateral for repurchase agreements, and for other speculative financial transactions intended to benefit Pardee and SSTAI. (Ex. C at ¶ 75).

23. SSL Plaintiffs further allege that the Bear Stearns prospectus referenced in paragraph 9 was false because the actions undertaken by SSTAI and Pardee to allow for such investments and categorization of the papers were illegal and unauthorized by the underlying trust agreements for the structured settlement.

24. SSL Plaintiffs allege that Bear Stearns' memorandum, prepared on behalf of SSTAI and Pardee, falsely represented that the purchase of SSTAI would provide a "purchase of high quality, highly liquid and flexible assets, primarily US Treasury Bonds," conferring on the

purchaser the ability "to borrow against more than $94 million dollars in US Treasuries and Fed Fund rates and to earn a positive spread from highly flexible reinvestment." (Ex. C at ¶ 81).

25. SSL Plaintiffs allege that the sale of Treasury Bonds subject to repurchase agreements violated the rights of the SSL Plaintiffs in the Structured Settlement Litigation and exposed the Treasury Bonds to tremendous risk of loss. (Ex. C at ¶ 81).

26. In the Structured Settlement Litigation, SSL Plaintiffs assert their right as beneficiaries of a trust rather than as unsecured creditors. SSL Plaintiffs also assert the fundamental cause of their losses was Pardee's unlawful altering of the Trust Agreements in order to allow him to utilize the funds for his own improper purposes.

27. CPS has been named as a defendant in the Structured Settlement Litigation and has expended substantially in excess of $25,000 in defense of the claims asserted against it.

28. SST agreed to purchase the SSTAI stock and CPS agreed to indemnify the Counterclaim Defendants based upon the express representations of the Counterclaim Defendants contained in the Bear Stearns marketing materials, the Stock Purchase Agreement, and the opinion letter from counsel for Counterclaim Defendants. As referenced above, these representations included without limitation: that SSTAI had every legal and contractual right necessary to borrow against the trust assets and use the proceeds for any business purpose including re-investment; that the Counterclaim Defendants' conduct of SSTAI and the administration and modification of the trusts was in full compliance with the law and did not breach any legal and contractual obligations SSTAI owed to the payees; that SSTAI had fulfilled all of its obligations under all of the structured settlement agreements and related documents through the time of the sale; and that the settlement payees had no claims of any kind whatsoever against SSTAI or against the trust assets.

29. Counterclaim Defendants represented in Section 3.29 of the Stock Purchase Agreement that, except for the SSTAI trust, there were no other trusts in effect relating to any of the settlement agreements. They further represented that "the Prior Trusts were consolidated into master trusts which were Prior Trusts. Accounts for Payees under the Prior Trust whose Settlement Agreements have not been satisfied in full are now maintained under the SSTAI trust."

30. On information and belief, there are at least two trusts which were not consolidated into the SSTAI Master Trust as represented by Counterclaim Defendants. These include:

a. The Jennifer Ruth Broughton Trust was secured by a $400,000 U.S. Treasury Bond. The structured settlement called for the interest to provide a payment of $10,250.00 on May 15 and November 15 of every year through 2009. On November 15, 2009, the final interest payment of $10,250.00 is due and the principal amount of $400,000 is due. Counterclaim Defendants sold the bond and used the funds for other investments. CPS did not know of the existence of this trust when it agreed to execute the Stock Purchase Agreement.

b. The Ward Trust was for payee, Ferrell Stanley Ward. Mr. Ward died on August 9, 1993. Thereafter, James Russell Ward received the benefits of the trust. The trust was secured by a $120,000 U.S. Treasury Bond. The structured settlement called for interest to provide a payment of $3,000 on February 13 and August 13 of every year through an unknown year. In the final year of the agreement, the final interest payment of $3,000 is due and the principal amount of $120,000 is due. Counterclaim Defendants sold the bond and used the funds for other investments. CPS did not know of the existence of this trust when it agreed to execute the Stock Purchase Agreement.

## COUNT I
**Intentional Misrepresentation/Fraud**

31. Counterclaim Defendants made false representations to CPS that the structured settlements and trust agreements fully authorized the holder of the SSTAI stock to borrow against the U.S. Treasuries at Fed Fund rates and to earn a positive spread from highly flexible re-investments which would yield higher returns. Counterclaim Defendants also falsely

represented that SSTAI had every legal and contractual right necessary to borrow against the trust assets and use the proceeds for any business purpose including re-investment; that the Counterclaim Defendants' conduct of SSTAI and the administration and modification of the trusts was in full compliance with the law and did not breach any legal and contractual obligations SSTAI owed to the payees; that SSTAI had fulfilled all of its obligations under all of the structured settlement agreements and related documents through the time of the sale; and that the settlement payees had no claims of any kind whatsoever against SSTAI or against the trust assets. These false representations were made with the intent to induce reliance by CPS to agree to be a party to the Stock Purchase Agreement, and CPS did in fact take action in reliance on these misrepresentations by becoming a party and subjecting itself to claims of indemnification and potential liability from hundreds of payees in the Structured Settlement Litigation.

32. In light of the language of the marketing materials from Bear Stearns, the Stock Purchase Agreement, the opinion letter of Counterclaim Defendants' counsel, and the documents provided to CPS prior to the acquisition, its reliance was reasonable and foreseeable.

33. Counterclaim Defendants had knowledge of the falsity of their representations and/or utter disregard for the truth of the representation.

34. As a direct and proximate result of Counterclaim Defendants' fraud and intentional misrepresentations, CPS has been substantially damaged.

**COUNT II**
**Negligent Misrepresentation**

35. CPS incorporates by reference the allegations contained in paragraphs 1 through 34 as set forth above.

36. Counterclaim Defendants falsely represented to CPS that the structured settlements and trust agreements fully authorized the holder of the SSTAI stock to borrow

against the U.S. Treasuries at Fed Fund rates and to earn a positive spread from highly flexible re-investments which would yield higher returns. Counterclaim Defendants also falsely represented that SSTAI had every legal and contractual right necessary to borrow against the trust assets and use the proceeds for any business purpose including re-investment; that the Counterclaim Defendants' conduct of SSTAI and the administration and modification of the trusts was in full compliance with the law and did not breach any legal and contractual obligations SSTAI owed to the payees; that SSTAI had fulfilled all of its obligations under all of the structured settlement agreements and related documents through the time of the sale; and that the settlement payees had no claims of any kind whatsoever against SSTAI or against the trust assets. These false representations were made with the intent to induce reliance by CPS to agree to be a party to the Stock Purchase Agreement, and CPS did in fact take action in reliance on these misrepresentations by becoming a party and subjecting itself to claims of indemnification and potential liability from hundreds of payees in the Structured Settlement Litigation.

37. The false representations made by Counterclaim Defendants were made to induce reliance by CPS.

38. The Counterclaim Defendants had no reasonable grounds to support their representations to CPS and failed to exercise due care with respect to those false representations.

39. CPS took action in reliance on the misrepresentations by Counterclaim Defendants by agreeing to become a party to the Stock Purchase Agreement; in the circumstances, CPS's reliance was reasonable and foreseeable.

40. CPS did not know and could not reasonably have known that the representations made by the Counterclaim Defendants were false.

41. As a direct and proximate result of Counterclaim Defendants' negligent and careless misrepresentations, CPS has been damaged by being forced to expend substantial amounts of funds in defense of the structured settlement litigation.

**COUNT III**
**Indemnification**

42. CPS incorporates by reference the allegations contained in paragraphs 1 through 41 as set forth above.

43. Section 9.01 of the Stock Purchase Agreement provides as follows:

> Section 9.01 Indemnification by the Seller and Sutro.
>
> (a) Subject to Sections 9.01(b) hereof, each of the Sellers and Sutro, (collectively the "Seller Indemnifying Parties") hereby jointly and severally indemnify and hold the Purchaser, the Indemnitor and each of the Purchaser's and Indemnitor's respective officers, directors, employees, agents, and shareholders and, from and after the Closing Date, the Company and the Company's officers, directors, employees, agents and shareholders (collective, the "Purchaser Indemnified Parties") harmless from and against, and agree to defend promptly each of the Purchaser Indemnified Parties for, *any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses* (hereafter referred to collectively as "Purchaser Losses"), that any of the Purchaser Indemnified Parties may at any time suffer or incur, or become subject to as a result of or in connection with the following (the "Purchaser Claims"): (i) *any breach or inaccuracy of any of the representations and warranties made by the Sellers or Sutro in or pursuant to this Agreement*; (ii) any failure of the Sellers to carry out, perform, satisfy and discharge any of their covenants, agreements, undertakings, liabilities or obligations under this Agreement or any of the documents and instruments delivered by the Sellers pursuant to this Agreement; (iii) any liability for the payment by the Sellers of federal, state or foreign taxes, (iv) *any fraudulent behavior by any Seller Indemnifying Party of any kind or nature in connection with the transactions under or pursuant to this Agreement or any subparagraphs of this Section 9.01(a)* and (v) any failure of the Sellers to pay the fees and expenses listed on Exhibit 3.22. Notwithstanding the foregoing provisions of this Section 9.01(a), any indemnification obligation under clause (i) above based on any representation or warrant contained in Article IV,

shall be solely the obligation of the Seller with respect to whom or which the representation and warranty is inaccurate. (emphasis added).

44. In the Structured Settlement Litigation, CPS has incurred substantial losses, damages and costs, including attorneys' fees as a consequence of the breach and/or inaccuracy of the representations and warranties made by the Counterclaim Defendants in the Stock Purchase Agreement.

45. Counterclaim Defendants are obligated under the Stock Purchase Agreement to defend and indemnify CPS as the Stock Purchase Agreement so requires.

46. CPS has incurred substantial damages and defense costs and is likely to incur substantial damages and defense costs in the future.

**COUNT IV**
**Negligence/Indemnity**

47. CPS incorporates by reference the allegations contained in paragraphs 1 through 46 as set forth above.

48. Counterclaim Defendants owed a duty of care to CPS.

49. Counterclaim Defendants have breached their duty of care to CPS and have negligently performed their contractual duties arising out of the Stock Purchase Agreement.

50. As a direct and proximate result of Counterclaim Defendants' negligence and negligent performance of their contractual duties, CPS has been damaged.

51. CPS is entitled to be indemnified from Counterclaim Defendants' indemnity claims and all claims asserted against CPS in the Structured Settlement Litigation.

**COUNT V**
**Equitable Indemnity**

52. CPS incorporates by reference the allegations contained in paragraphs 1 through 51 as set forth above.

53. SSL Plaintiffs in the Structured Settlement Litigation assert that CPS is liable. Counterclaim Defendants are also liable to the Structured Settlement Litigation payees for their breaches of fiduciary duties, negligence, unlawful modifications to the trust agreements, misrepresentations to third parties, including CPS, and other wrongful conduct.

54. In the Structured Settlement Litigation, CPS is exposed to liability as a result of the wrongful acts of Counterclaim Defendants, and as a consequence is entitled to equitable indemnification from Counterclaim Defendants as to indemnity claims and the claims asserted in the Structured Settlement Litigation.

## COUNT VI
## Declaratory Judgment

55. CPS incorporates by reference the allegations contained in paragraphs 1 through 54 as set forth above.

56. CPS is entitled to indemnification from Counterclaim Defendants on account of the claims asserted against it in the Structured Settlement Litigation.

57. An actual controversy exists between CPS and Counterclaim Defendants regarding the interpretation of the Stock Purchase Agreement that substantially affects CPS's substantive rights under the Stock Purchase Agreement.

58. CPS seeks a judicial determination of its rights to indemnification from Counterclaim Defendants in connection with the Structured Settlement Litigation.

WHEREFORE, Consumer Portfolio Services, Inc. demands judgment against Counterclaim Defendants, jointly and severally, as follows:

1. For an award of its actual damages;
2. For an award of punitive damages;

3. For indemnification of all losses, damages, attorney's fees, and other costs that CPS has incurred or may incur or become subject to in connection with the Structured Settlement Litigation and any related lawsuits;

4. For a judicial determination of the obligation of Counterclaim Defendants to indemnify CPS for all its losses incurred in connection with the underlying Structured Settlement Litigation and to provide for payment of all defense costs;

5. For costs of suit;

6. For attorney's fees and for such other and further relief as the Court may deem proper.

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
Little, Medeiros, Kinder, Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 521-3555

**Counsel for Defendant**
**Consumer Portfolio Services, Inc.**

**DEMAND FOR JURY TRIAL**

Consumer Portfolio Services, Inc. hereby demands a trial by jury.

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
Little, Medeiros, Kinder, Bulman &
Whitney, P.C.
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 521-3555

**Counsel for Defendant**
**Consumer Portfolio Services, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2003, I caused to be served by first class mail, postage prepaid a copy of the within Second Amended Counterclaims to each of the following:

Gerald J. Petros, Esq.
Christopher R. Bush, Esq.
Hinckley, Allen & Snyder, LLP
1500 Fleet Center
Providence, RI 02903

Craig Scott, Esq.
Duffy & Sweeney
76 Westminster Street
Providence, RI 02903

Rene P. Tatro, Esq.
Johnson & Tekosky, LLP
444 S. Flower Street, 31st Floor
Los Angeles, CA 90071

scott/A065/06D7