# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JONATHAN H. PARDEE AND CAROL HAVICAN, AS TRUSTEE OF THE JONATHAN H. PARDEE CHARITABLE REMAINDER TRUST,

Plaintiffs,

vs.

CONSUMER PORTFOLIO SERVICES, INC.

Defendant.

C.A. No. 01-594 ML

---

CONSUMER PORTFOLIO SERVICES, INC.

Counterclaim Plaintiff,

vs.

JONATHAN H. PARDEE; JONATHAN H. PARDEE CHARITABLE REMAINDER TRUST; DUNBAR/ WHEELER TRUST; OGDEN H. SUTRO,

Counterclaim Defendants.

---

DUNBAR/WHEELER TRUST AND OGDEN H. SUTRO

Third Party Counterclaim Plaintiffs,

vs.

CONSUMER PORTFOLIO SERVICES, INC.

Third Party Counterclaim Defendant.

---

**ANSWER TO DEFENDANT'S SECOND AMENDED COUNTERCLAIM AND THIRD PARTY COUNTERCLAIM OF DUNBAR/WHEELER TRUST AND OGDEN H. SUTRO**

Counterclaim defendants, the Dunbar/Wheeler Trust (the "Trust") and Ogden H. Sutro ("Sutro") (collectively, the "Counterclaim Defendants") answer Consumer Portfolio Services, Inc.'s ("CPS") Second Amended Counterclaims as follows:

The introductory paragraph is a summary of CPS's amended counterclaims to which no response is required. The Counterclaim Defendants deny that CPS is entitled to indemnification, damages, or any other requested relief.

**PARTIES**

1. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 and, therefore, deny those allegations.

2. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 and, therefore, deny those allegations.

3. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 and, therefore, deny those allegations.

4. The Counterclaim Defendants admit that the Trust's address is Dunbar/Wheeler Trust, c/o Jonathan M. Wainwright, Esq., Cadwalader, Wickersham & Taft LLP, 100 Maiden Lane, New York, New York 10038. The Counterclaim Defendants further admit that the Trust was a shareholder of SSTAI prior to May 20, 1997. The remaining allegation in Paragraph 4 states a legal conclusion as to which no response is required.

5. The Counterclaim Defendants admit that Ogden H. Sutro is a resident of Old Greenwich, Connecticut and was a party to the Stock Purchase Agreement, pursuant to which

Pardee, the Pardee Trust and the Dunbar/Wheeler Trust sold their shares of stock to SST Acquisition Corp. The remaining allegation in Paragraph 5 states a legal conclusion as to which no response is required.

6. The Counterclaim Defendants admit that they executed a Stock Purchase Agreement with SST Acquisition Corp. and CPS on or about May 20, 1997. The document referenced in Paragraph 6 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations.

7. The document referenced in Paragraph 7 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations.

8. The document referenced in Paragraph 8 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants deny the remaining allegations in this paragraph.

9. Denied.

10. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 and, therefore, deny those allegations.

11. The document referenced in Paragraph 11 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants are without knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph and, therefore, deny those allegations.

12. The document referenced in Paragraph 12 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations.

13. Denied.

**The Structured Settlement Litigation**

14. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 and, therefore, deny those allegations.

15. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 and, therefore, deny those allegations.

16. The Counterclaim Defendants admit that the Complaint in the California structured settlement litigation is the Second Amended Model Complaint – Class Action. The Counterclaim Defendants deny the allegations contained therein.

17. The document referenced in Paragraph 17 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 17 refers.

18. The document referenced in Paragraph 18 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim

Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 18 refers.

19. The document referenced in Paragraph 19 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 19 refers.

20. The document referenced in Paragraph 20 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 20 refers.

21. The Counterclaim Defendants admit that SSTAI executed a Master Trust Agreement in 1995. The Master Trust document speaks for itself. To the extent that the allegations in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants deny the remaining allegations in this paragraph.

22. The document referenced in Paragraph 22 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 22 refers.

23. The document referenced in Paragraph 23 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 23 refers.

24. The document referenced in Paragraph 24 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 24 refers.

25. The document referenced in Paragraph 25 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 25 refers.

26. The document referenced in Paragraph 26 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants also deny the substantive allegations to which Paragraph 26 refers.

27. The Counterclaim Defendants admit that CPS was originally named as a defendant in the structured settlement litigation. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in this paragraph and, therefore, deny those allegations.

28. The document referenced in paragraph 28 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 28 and, therefore, deny those allegations.

29. The document referenced in Paragraph 29 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations.

30. The Counterclaim Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 and, therefore, deny those allegations.

**COUNT I**
**Intentional Misrepresentation/Fraud**

31. Denied.

32. Denied.

33. Denied.

34. Denied.

**COUNT II**
**Negligent Misrepresentation**

35. Counterclaim defendants repeat and incorporate herein by reference their responses to the allegations set forth in Paragraphs 1 through 34 above.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

**COUNT III**
**Indemnification**

42. Counterclaim defendants repeat and incorporate herein by reference their responses to the allegations set forth in Paragraphs 1 through 41 above.

43. The document referenced in Paragraph 43 speaks for itself. To the extent that the allegations contained in this paragraph are inconsistent with that document, the Counterclaim Defendants deny those allegations.

44. Denied.

45. Denied.

46. Counterclaim defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in this paragraph and, therefore, deny those allegations.

**COUNT IV**
**Negligence/Indemnity**

47. Counterclaim defendants repeat and incorporate herein by reference their responses to the allegations set forth in Paragraphs 1 through 46 above.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

**COUNT V**
**Equitable Indemnity**

52. Counterclaim defendants repeat and incorporate herein by reference their responses to the allegations set forth in Paragraphs 1 through 51 above.

53. Denied.

54. Denied.

**COUNT VI**
**Declaratory Judgment**

55. Counterclaim defendants repeat and incorporate herein by reference their responses to the allegations set forth in Paragraphs 1 through 54 above.

56. Denied.

57. The Counterclaim Defendants admit that an actual controversy exists between CPS and the Counterclaim Defendants regarding their interpretation of the Stock Purchase Agreement.

58. Counterclaim defendants admit that CPS is seeking a judicial determination of its rights to indemnification in this action. The Counterclaim Defendants deny that CPS is entitled to any indemnification.

**AFFIRMATIVE DEFENSES AND OTHER DEFENSES**

**FIRST DEFENSE**

CPS's amended counterclaims fail to state any claims against the Counterclaim Defendants for which relief may be granted.

**SECOND DEFENSE**

Certain of CPS's amended counterclaims are barred by the applicable periods of limitation.

**THIRD DEFENSE**

Certain of CPS's amended counterclaims are barred by the doctrines of estoppel, laches, and waiver.

**FOURTH DEFENSE**

Certain of CPS's amended counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

WHEREFORE, the Counterclaim Defendants demand that CPS's Second Amended Counterclaims be denied and dismissed with prejudice and that costs and attorneys' fees be awarded to Counterclaim Defendants.

DUNBAR/WHEELER TRUST and
OGDEN H. SUTRO
By their attorneys

Craig M. Scott, Esq. (#4237)
Ralph N. Gaboury, Esq. (#6638)
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Dated: November 7, 2003

**COUNTERCLAIM**

This is a counterclaim by counterclaim defendants/third party counterclaim plaintiffs Dunbar/Wheeler Trust (the "D/W Trust") and Ogden H. Sutro ("Sutro"), for indemnification from counterclaim plaintiff/third party counterclaim defendant Consumer Portfolio Services, Inc. ("CPS") for damages that Sutro and the D/W Trust have incurred, and will continue to incur, as a result of a lawsuit pending against Sutro and the D/W Trust in the United States District Court for the District of Rhode Island (the "Rhode Island Litigation"), and an action pending against Sutro and the D/W Trust in the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Litigation"). Both actions arose as a result of Stanwich Financial Services, Corp.'s ("Stanwich") default on periodic payment obligations to approximately two hundred former tort plaintiffs ("Payees") from around the country who entered into structured settlements to settle their individual actions. Stanwich was contractually obligated to make periodic payments to these Payees for the next twenty (20) years.

The D/W Trust was a shareholder in Stanwich, then known as Settlement Services Treasury Assignments, Inc. ("SSTAI"), until May 20, 1997, when it sold its interest therein pursuant to the terms of a Stock Purchase Agreement By and Among Settlement Services Treasury Assignments, Inc. and SST Acquisition Corp. (the "Stock Purchase Agreement"). Sutro was the sole beneficiary of the D/W Trust at the time of the sale, and was a named party to the Stock Purchase Agreement. CPS was also a party to the Stock Purchase Agreement, and agreed to indemnify Sutro and the D/W Trust for, inter alia, any damages arising out of Stanwich's subsequent failure to make any periodic payments and any claim that the purchase and sale constituted a fraudulent transfer or conveyance. Despite Sutro's and the D/W Trust's requests for indemnification, CPS has refused to do so.

**Parties and Jurisdiction**

1. Third party counterclaim plaintiff Ogden H. Sutro is a resident of Old Greenwich, Connecticut.

2. Third party counterclaim plaintiff Dunbar Wheeler Trust, is a charitable remainder trust organized and existing under the laws of the State of New York.

3. Third party counterclaim defendant Consumer Portfolio Services, Inc. is, on information and belief, a corporation organized and existing under the laws of the State of California.

**General Allegations**

4. A structured settlement is a tax-driven vehicle for settling a tort action, typically actions for personal injury, products liability, or medical malpractice. In a structured settlement, the plaintiff enters into a settlement agreement with a defendant that provides for periodic payments in settlement of his or her claims. The defendant then assigns the liability under the settlement agreement to a third party assignment company in exchange for a one-time cash payment. The assignment company makes periodic payments to the original tort plaintiffs and, typically, a lump sum payment when the stream of periodic payments runs out.

5. Stanwich is a structured settlement assignment company for over 200 structured settlements that were established in the late 1970s and early 1980s when Stanwich was known as IBAR, Inc., Merrill Lynch IBAR, Inc., Merrill Lynch Settlement Services, Inc., or ML Settlement Services, Inc.

6. The D/W Trust was a minority shareholder of Stanwich, then known as SSTAI, on May 20, 1997, when it sold its interest in SSTAI pursuant to the Stock Purchase Agreement. Sutro was the sole beneficiary of the D/W Trust, and was a named party to the Stock Purchase

Agreement. Stanwich changed its name from SSTAI immediately following the D/W Trust's sale of its interests in SSTAI in 1997. Neither Sutro nor the D/W Trust has had any involvement with, employment by, or ownership interest in, SSTAI or Stanwich since May 20, 1997.

7. The following individuals or entities were parties to the Stock Purchase Agreement governing the sale of D/W Trust's interests in SSTAI:

(a) Jonathan Pardee ("Pardee") and the minority shareholders of SSTAI, including the D/W Trust and the Jonathan H. Pardee Charitable Remainder Trust (the "Pardee Trust"), collectively and individually referred to in the Stock Purchase Agreement as the "Sellers;"

(b) Ogden H. Sutro, as the beneficiary of the D/W Trust;

(c) SST Acquisition Corp., referred to as the "Purchaser" in the Stock Purchase Agreement; and

(d) CPS, referred to as the "Indemnitor" in the Stock Purchase Agreement.

8. In Section 9.02(a) of the Stock Purchase Agreement, CPS, as Indemnitor, agreed and obligated itself to, inter alia:

> Indemnify and hold each of the Sellers, Sutro and each of the Seller's trustees and agents (collectively, the "Seller Indemnified Parties") harmless from and against, and agree to defend promptly each of the Seller Indemnified Parties for, any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses (hereinafter referred to collectively as "Seller Losses"), that any of the Seller Indemnified Parties may at any time suffer or incur, or become subject to, as a result of or in connection with the following (the "Seller Claims"): ... (iv) any failure of the Purchaser, the Indemnitor and/or the Company [SSTAI or Stanwich], after the date hereof, to carry out and perform its obligations under any agreement, instrument or other document to which the Company is now bound or becomes bound, (v) any fraudulent behavior by the Company, the Purchaser and/or the Indemnitor arising after the date hereof, (vi) any claim that the purchase and sale of the Shares constitutes a fraudulent transfer or fraudulent conveyance under applicable federal or state law and (vii) any failure to fulfill any obligation of the Sellers, the Company [SSTAI or Stanwich] and/or the SSTAI Trust to any Payee as and when due any time after the

closing date.

9. Beginning in the fourth quarter of 2000, Stanwich stopped making the periodic payments that were due and owing under the structured settlement agreements.

10. As a result of Stanwich's failure to make the structured settlement payments, the Payees filed dozens of individual and class action lawsuits in California against Stanwich and several other entities and individuals associated with the structured settlements, including Jonathan Pardee (the "California Litigation").

11. On or about June 25, 2001, Stanwich filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Connecticut. On or about May 3, 2002, the Official Committee of Unsecured Creditors of Stanwich Financial Services Corp. ("Creditors' Committee"), as Estate Representative and on behalf of Stanwich and its creditors, commenced an adversary proceeding against Sutro, the D/W Trust, Pardee and the Pardee Trust in the Bankruptcy Court (the "Connecticut Litigation"). The Creditors' Committee asserted claims for, among other things, fraudulent conveyance under 11 U.S.C. § 544(b).

12. On or about November 11, 2001, Pardee initiated the present litigation against CPS for indemnification of Pardee's costs in defending the California and Connecticut Litigation, pursuant to the indemnification provision of the Stock Purchase Agreement. Pardee filed an Amended Complaint in this proceeding on January 14, 2003, to add as a named plaintiff Carol A. Havican as the Trustee of the Pardee Trust. In both its Answer and two Amended Answers in this proceeding, CPS asserted a counterclaim against Pardee, the Pardee Trust, Sutro and the D/W Trust.

13. Sutro and the D/W Trust already have incurred, and will continue to incur, substantial Seller Losses, as defined under the Stock Purchase Agreement in connection with the

Rhode Island and Connecticut Litigation, including, but not limited to, attorneys' fees and costs for which CPS is obligated to indemnify Sutro and the D/W Trust. These Seller Losses already exceed $25,000.

14. Pursuant to the provisions of Paragraph 9.02(a) of the Stock Purchase Agreement, CPS has an obligation to indemnify Sutro and the D/W Trust for all "Seller Losses," defined as

> any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses that . . . [Sutro and the D/W Trust] may at any time suffer or incur, or become subject to, as a result of or in connection with [the Rhode Island and Connecticut Litigation.]

CPS also has an obligation to fund the costs of defense of Sutro and the D/W Trust.

15. On or about September 23, 2003, Sutro and the D/W Trust made a written indemnification demand on CPS, including a demand that CPS indemnify and pay for Sutro's and the D/W Trust's attorneys' fees incurred in connection with the defense of the Rhode Island and Connecticut Litigation. Sutro and the D/W Trust sent copies of the demand to CPS and its attorney's accordance with the terms of the Stock Purchase Agreement

16. By letter dated October 24, 2003, CPS refused to indemnify Sutro and the D/W Trust.

**<u>COUNT I</u>**
**(Breach of Contract)**

17. Sutro and the D/W Trust repeat and reallege the allegations contained in paragraphs 1 through 16 of this Counterclaim as if fully set forth herein.

18. Sutro and the D/W Trust have incurred, and will continue to incur, substantial expenses in defending the Rhode Island and Connecticut Litigation, including, but not limited to, attorneys' fees and costs.

19. Pursuant to the express right of contractual indemnity between Sutro and D/W Trust as Seller Indemnified Parties, and CPS as Indemnitor, in the Stock Purchase Agreement, Sutro and D/W Trust are entitled to recover from CPS the substantial expenses that they have incurred, and will continue to incur in connection with the Rhode Island and Connecticut Litigation, as well as their other Seller's Losses, as defined in the Stock Purchase Agreement, and to be indemnified from CPS for any damages, expenses, or losses that they might sustain as a result of the events alleged above. Sutro and the D/W Trust also are entitled to entry of an Order requiring CPS to fund Sutro's and D/W Trust's costs of defense in the Rhode Island and Connecticut Litigation.

20. CPS has breached its contractual obligations to Sutro and D/W Trust in failing to indemnify as the Stock Purchase Agreement requires, and in failing and continuing to fail to provide for the costs of their defense in the Rhode Island and Connecticut Litigation.

21. Sutro and the D/W Trust have incurred substantial damages as a result of CPS' breach.

**COUNT II**
**(Declaratory Relief)**

22. Sutro and the D/W Trust repeat and reallege the allegations contained in paragraphs 1 through 21 of this Counterclaim as if fully set forth herein.

23. Sutro and the D/W Trust made written demand for indemnification on CPS on or about September 23, 2003. CPS denied any indemnification obligations. CPS also has failed to make indemnification payments to Sutro and the D/W Trust that the Stock Purchase Agreement required.

24. An actual controversy exists between Sutro, the D/W Trust, and CPS regarding the correct interpretation of the Stock Purchase Agreement that substantially affects Sutro's and

the D/W Trust's substantive rights under the Stock Purchase Agreement.

25. Sutro and the D/W Trust seek a judicial declaration, pursuant to R.I. Gen. Laws § 9-30-1 et seq., of their rights to indemnification from CPS in connection with the Rhode Island and Connecticut Litigation.

WHEREFORE, Sutro and the D/W Trust pray for judgment against CPS as follows:

1. For damages according to proof;

2. For indemnification of "any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expense" that Sutro or the D/W Trust have incurred or may incur or become subject to in connection with the Rhode Island and Connecticut Litigation and any other related lawsuits;

3. For a preliminary and permanent injunction requiring CPS to fund the costs of Sutro's and the D/W Trust's defenses in the Rhode Island and Connecticut Litigation pursuant to the terms of the Stock Purchase Agreement;

4. For a judicial determination of the obligation of CPS to indemnify Sutro and the D/W Trust for all Sellers' Losses incurred in connection with the Rhode Island and Connecticut Litigation and provide for payment of all defense and costs in connection with the defense of those actions;

5. For costs of suit herein incurred;

6. For attorneys' fees herein incurred pursuant to R.I. Gen Laws §9-1-45; and

7. For such other and further relief as the court may deem proper.

DUNBAR/WHEELER TRUST and
OGDEN H. SUTRO
By their attorneys

Craig M. Scott, Esq. (#4237)
Ralph N. Gaboury, Esq. (#6638)
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Dated: November 7, 2003

## CERTIFICATION

TO: Matthew F. Medeiros, Esq.
Christopher H. Little, Esq.
Scott J. Pomeroy, Esq.
Little, Medeiros, Kinder, Bulman & Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Gerald J. Petros, Esq.
Christopher R. Bush, Esq.
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

I hereby certify that on the 7th day of November, 2003, I caused a true copy of the within *Answer to Defendant's Second Amended Counterclaim and Third Party Counterclaim of Dunbar/Wheeler Trust and Ogden H. Sutro* to be mailed to the above-listed attorneys.

*H:\Clients\Sutro\CPS, Inc\Pleadings\Amended Answer 09-09-03.rtf*