# Exhibit I

# Part 2 of 2

might arise subsequent to the purchase of the stock and to be indemnified from certain claims resulting from the shareholders' acts or omissions prior to closing.[6]

111. Attorneys at Hinckley Allen, including Farmer, were substantially involved in the negotiation and drafting of the Stock Purchase Agreement and in providing substantive legal counsel to Pardee and SSTAI in connection with the sale.

112. The Stock Purchase Agreement contains various representations and warranties by SSTAI's shareholders and their counsel that SFSC relied upon in providing indemnity and purchasing the stock of SSTAI. These representations included the following:

> Section 3.08 Title to Assets. The *Company owns good and marketable title to the Assets* [defined in Section as "...all of the assets of the Company as of the Closing Date, including without limitation, ...the Company's interest as the sole beneficiary...of the SSTAI Trust.] *...free and clear of any and all* mortgages, liens encumbrances, charges, claims, restrictions, pledges, security interest or impositions, .... (Emphasis added.)
>
> Section 3.20. Compliance with Law. The conduct of the business of the Company and the use of its Assets does not violate or conflict, and has not violated or conflicted, *with any law in any material respect...*(Emphasis added.)
>
> Section 3.26. Accuracy of Information. Neither this Agreement nor any other document provided by the Company or any Sellers to the Purchaser in connection with the transaction contemplated herein *contains an untrue statement of a material fact or omits a state of material fact necessary to make the statements contained herein or therein not misleading* (Emphasis added).
>
> Section 3.28. Settlement Agreements. All of the obligations of the Company and the California Corporation under each of the Settlement Agreements required to be paid or performed by it though the date of this Agreement have been paid and performed.
>
> Section 3.29. Trusts. The Company is the sole beneficiary and trustor, and Bankers Trust Company of New York is the sole trustee, of a trust (the "SSTAI Trust") established under that certain Settlement Services Treasury Assignment, Inc. Amended and Restated Master Trust

[6] The other Indemnitor was CPS.

> Agreement executed as of July 12, 1995... Except for the SSTAI Trust, there are not other trusts in effect relating to any of the Settlement Agreements....the Payees are solely unsecured creditors of the Company. *The SSTAI Trust is in full force and effect and complies with applicable law and with the obligations of the Company and the California Corporation under the Settlement Agreements.* Exhibit 3.29(b) sets forth, in chronological order, each master trust agreement relating to the Settlement Agreements (other than the SSTAI Trust) to which the Company or the California Corporation was a party. Each trust relating to the Settlement Agreement or any of them (collectively, the "Prior Trusts"), the termination thereof and the transfer of assets held thereunder to each successor trustee complied with applicable law and the obligations of the Company and the California Corporation under the Settlement Agreements. The Prior Trusts were consolidated into master trusts which were Prior Trusts. Accounts for Payees under the Prior Trusts whose Settlement Agreements have not been satisfied in full are now maintained under the SSTAI Trust. (Emphasis added.)
>
> Section 3.30. Administration Trusts. Exhibit 3.30 contains a true and complete list of all assets owned by SSTAI and held by the SSTAI Trust as of May 19, 1997, which *assets are owned free and clear of all liens and encumbrances of every kind*....The administration of each of the SSTAI Trust and the Prior Trusts, and the investment of the assets held by the Company or in the SSTAI Trust or the Prior Trusts, to the extend under the control of direction of the Company or the California Corporation, have not violated the terms of the Settlement Agreement of applicable law. (Emphasis added.)

113. Before consummating the sale, both SFSC and CPS requested that SSTAI's counsel provide a legal opinion to provide further assurances that SSTAI did in fact have a financial interest in the trust assets and did in fact have the legal right to borrow against the Treasury Bonds. To induce and provide furtherance assurances to both SFSC and CPS, Hinckley Allen provided on May 20, 1997 such an opinion letter ("Opinion Letter"), and the Opinion Letter became part of the basis of the bargain for the sale. In the Opinion Letter, Hinckley Allen represented in relevant part:

> The SSTAI Trust is a duly constituted trust under Rhode Island law and in full force and effect as of the date hereof. Except as set forth in Section ___ [sic] of the Purchase and Sale Agreement, the Corporation is the sole beneficiary and sole trustor under the SSTAI Trust. There are no facts

known to us which give us reason to believe that the SSTAI Trust does not hold all of the assets now held by it, free and clear of all liens, charges and encumbrances and adverse claims of every kind or nature.

114. In the Opinion Letter, Hinckley Allen also represented and attested that:

> We have no knowledge that either the information or the assumptions which are set forth above and which we have relied upon in rendering the opinions herein are false nor do we have knowledge of facts that, under the circumstances, would make our reliance on the information and assumptions unreasonable.

115. In providing the, Hinckley Allen expressly and implicitly represented that it had a high degree of confidence in the truth and accuracy of the representations contained in the Opinion Letter and the Stock Purchase Agreement.

116. In providing the Opinion Letter, Hinckley Allen expressly and implicitly represented that it had an honest belief in the truth of the representations contained in the Opinion Letter and the Stock Purchase Agreement.

117. In providing the Opinion Letter, Hinckley Allen purported to have special knowledge and experience with respect to the history and past transactions of SSTAI that both SFSC and CPS lacked.

118. At the time, attorneys at Hinckley Allen, including Farmer, knew or should have known of the purpose and history of the structured settlement agreements, and specifically, that the original structured settlement documents provided that SSTAI's predecessor did not have any right to use the Treasury Bonds for any purpose other than funding periodic payments to the Settlement Payees.

119. At the time, attorneys at Hinckley Allen, including Farmer, knew or believed that the Settlement Payees had never intended that the Treasury Bonds be used for any purpose other than funding settlement periodic payments.

120. Contrary to what Hinckley Allen attorneys knew or believed to be the purpose and intent of the structured settlement agreements, Hinckley Allen, as legal counsel to SSTAI and Pardee, assisted Pardee in his efforts to modify, without notice to or consent of the Settlement Payees, the underlying trust documents to purportedly give the company a financial interest in the trust assets and *inter alia,* the right to sell, pledge or encumber the Treasury bonds. Thus, attorneys at Hinckley Allen, including Farmer, knew, believed, or should have known that the purported trust amendments were without legal force and effect in altering the rights of the Settlement Payees.

121. Contrary to what Hinckley Allen attorneys knew or believed to be the purpose and intent of the structured settlement agreements, Hinckley Allen, as legal counsel to SSTAI and Pardee, also assisted Pardee in negotiating and entering into various financial transactions, including "repurchase" transactions, without notice to or consent of the Settlement Payees, in which SSTAI pledged the Treasury Bonds as collateral in order to borrow funds to reinvest for SSTAI's financial gain. Thus, attorneys at Hinckley Allen, including Farmer, knew, believed, or should have known that the "repo" transactions violated the rights of the Settlement Payees.

122. Attorneys at Hinckley Allen, including Farmer, knew or should have known that the Settlement Payees had not been informed of the trust amendments contained in the 1992, 1994, or 1995 Master Trust Agreements. Attorneys at Hinckley Allen, including Farmer, knew, believed or should have known that the Settlement Payees, if informed, would not have consented to those amendments. Thus, attorneys at Hinckley Allen, including Farmer, knew, believed, or should have known that upon learning of the trust amendments, a suit by the Settlement Payees to restore the terms of the original trusts was likely or inevitable.

123. Attorneys at Hinckley Allen, including Farmer, knew, believed, or should have known that the Settlement Payees had not been informed of the "repo" transactions or SSTAI's use of the trust assets for its own financial gain. Attorneys at Hinckley Allen, including Farmer, knew, believed or should have known that the Settlement Payees, if informed, would not have consented to such transactions or such use of the trust assets by SSTAI. Thus, attorneys at Hinckley Allen, including Farmer, knew, believed, or should have known that upon learning of the "repo" transactions, a suit by the Settlement Payees to enjoin such transactions and recover any pledged or lost trust assets was likely or inevitable.

124. Attorneys at Hinckley Allen, including Farmer, were substantially involved in negotiating and drafting the various agreements necessary to effect the "repo" transactions and reinvestments. Attorneys at Hinckley Allen, including Farmer, knew that such "repo" transactions and reinvestments substantially increased the risk of losing the Treasury Bonds. Based upon legal analysis undertaken by Hinckley Allen attorneys and legal analysis provided by SSTAI's California attorneys, attorneys at Hinckley Allen, including Farmer, knew, believed, or should have known that any changes to the Governing Documents or use of trust assets that had the effect of increasing the risk of loss of the trust assets could form the basis of a suit by the Settlement Payees against SSTAI and its officers and shareholders.

125. Attorneys at Hinckley Allen, including Farmer, knew, believed or should have known that, at minimum SSTAI owed a duty to the settlement payees to re-invest the borrowed funds only in extremely conservative investments. Attorneys at Hinckley Allen, including Farmer, knew that SSTAI was being marketed to buyers without any such qualification, and that SST intended to use borrowed funds secured by the Treasury Bonds in non-investment grade investments. Thus, attorneys at Hinckley Allen, including Farmer, knew, believed, or should

have known that Pardee had misrepresented SSTAI's rights with respect to the Treasury Bonds, and that SST and CPS were relying on those misrepresentations.

126. Attorneys at Hinckley Allen, including Farmer, knew, believed or should have known that, at minimum, SSTAI owed a duty to the Settlement Payees to re-invest the borrowed funds only in extremely conservative investments. Without disclosing this knowledge or belief to SSTAC or CPS, attorneys at Hinckley Allen, including Farmer, advised Pardee and SSTAI's other shareholders to seek CPS's indemnification to create an "incentive" for SSTAC to utilize funds borrowed against the Treasury Bonds only for the most conservative re-investments and thereby to minimize personal liability to Pardee and SSTAI's other shareholders. Attorneys at Hinckley Allen, including Farmer, knew or believed at the time that SST intended to use borrowed funds secured by the Treasury Bonds for purposes including non-investment grade investments.

127. Neither Hinckley Allen nor SSTAI disclosed to SSTAC or CPS the existence or substance of Hinckley Allen's research and analysis regarding the nature and extent of potential liability arising out of the trust amendments or the "repo" transactions.

128. Neither Hinckley Allen nor SSTAI disclosed to SSTAC or CPS the existence or substance of the concerns raised and difficulties posed by the refusal or reluctance of U.S. Trust Co. CA., Fidelity, or other potential trustees to allow SSTAI to borrow against the Treasury Bonds. Neither Hinckley Allen nor SSTAI disclosed to SST or CPS the existence or substance of the concerns raised by U.S. Trust, Fidelity, or other potential trustees regarding the legality or propriety of SSTAI's borrowing against trust assets or use of the trust assets for the financial benefit of SSTAI's.

129. SSTAI's shareholders and Hinckley Allen made the above-referenced representations to inflate the value of SSTAI (a company Pardee and SSTAI's other shareholders had paid approximately one dollar for a few years earlier) and induced SSTAC to purchase the stock of SSTAI for $17 million and induce SFSC to indemnify SSTAI's shareholders.

130. SFSC relied on the representations made by Pardee, SSTAI's other shareholders, and Hinckley Allen in determining whether to provide indemnification under the Stock Purchase Agreement in connection with SSTAI's purchase of the stock.

131. In providing the Offering Memorandum, R-H expressly and implicitly represented that it had a high degree of confidence in the truth and accuracy of the representations contained in the Offering Memorandum and the contents of the Bear Stearns Offering Memorandum.

132. In providing the Offering Memorandum, R-H Allen expressly and implicitly represented that it had an honest belief in the truth of the representations contained in the Offering Memorandum and the Bear Stearns Offering Memorandum.

133. In providing the Offering Memorandum, R-H purported to have special knowledge and experience with respect to the history and past transactions of SSTAI that both SFSC and CPS lacked.

134. At the time, financial advisors at R-H knew or should have known of the purpose and history of the structured settlement agreements, and specifically, that the original structured settlement documents provided that SSTAI's predecessor did not have any right to use the Treasury Bonds for any purpose other than funding periodic payments to the Settlement Payees.

135. At the time, financial advisors at R-H knew or believed that the Settlement Payees had never intended that the Treasury Bonds be used for any purpose other than funding settlement periodic payments.

136. Contrary to what financial advisors at R-H knew or believed to be the purpose and intent of the structured settlement agreements, R-H, as financial advisors and sole and exclusive agent to SSTAI assisted Pardee in his efforts to conceal that the trust modifications were obtained without notice to or consent of the Settlement Payees and further conceal that the underlying trust documents to purportedly give the company a financial interest in the trust assets and *inter alia,* the right to sell, pledge or encumber the Treasury Bonds. Thus, financial advisors at R-H, believed, or should have known that the purported trust amendments were without legal force and effect in altering the rights of the Settlement Payees.

137. Financial advisors at R-H knew or should have known that the Settlement Payees had not been informed of the trust amendments contained in the 1992, 1994, or 1995 Master Trust Agreements. Financial advisors at R-H knew, believed or should have known that the Settlement Payees, if informed, would not have consented to those amendments. Thus, financial advisors at R-H knew, believed, or should have known that upon learning of the trust amendments, a suit by the Settlement Payees to restore the terms of the original trusts was likely or inevitable.

138. Financial advisors at R-H were substantially involved in negotiating and drafting the Offering Memorandum to sell the company. Financial advisors at R-H knew, believed, or should have known that any changes to the Governing Documents or use of trust assets that had the effect of increasing the risk of loss of the trust assets could form the basis of a suit by the Settlement Payees against SSTAI and its officers and shareholders.

139. Financial advisors at R-H knew, believed or should have known that, at minimum SSTAI owed a duty to the settlement payees to re-invest the borrowed funds only in extremely conservative investments. Financial advisors at R-H knew that SSTAI was being marketed to

buyers without any such qualification, and that SSTAI intended to use borrowed funds secured by the Treasury Bonds in non-investment grade investments. Thus, financial advisors at R-H knew, believed, or should have known that Pardee had misrepresented SSTAI's rights with respect to the Treasury Bonds, and that SFSC and CPS were relying on those misrepresentations.

140. Neither Hinckley Allen nor SSTAI disclosed to SSTAC or CPS the existence or substance of Hinckley Allen's research and analysis regarding the nature and extent of potential liability arising out of the trust amendments or the "repo" transactions.

141. Neither R-H nor SSTAI disclosed to SSTAC or CPS the existence or substance of the concerns raised and difficulties posed by the refusal or reluctance of U.S. Trust Co. CA., Fidelity, or other potential trustees to allow SSTAI to borrow against the Treasury Bonds. Neither R-H nor SSTAI disclosed to SSTAC or CPS the existence or substance of the concerns raised by U.S. Trust, Fidelity, or other potential trustees regarding the legality or propriety of SSTAI's borrowing against trust assets or use of the trust assets for the financial benefit of SSTAI's.

142. SSTAI's shareholders and R-H made the above-referenced representations to inflate the value of SSTAI (a company Pardee and SSTAI's other shareholders had paid approximately one dollar for a few years earlier) and induced SSTAC to purchase the stock of SSTAI for $17 million and induce SFSC to indemnify SSTAI's shareholders.

143. SFSC relied on the representations made by R-H, Pardee, the other Selling Shareholders in determining whether to provide indemnification under the Stock Purchase Agreement in connection with SSTAI's purchase of the stock.

144. In connection with the closing, R-H received approximately $50,000 from the proceeds of the sale.

145. In connection with the closing, Hinckley Allen received approximately $3.5 million from the proceeds of the sale. On information and belief, a portion of these funds constituted payment for legal services Hinckley Allen had provided to Pardee and SSTAI.

146. After the closing on the stock purchase, SSTAC became known as SFSC.

**I. <u>The Indemnification Provisions</u>**

147. Pursuant to Section 9.01 of the Stock Purchase Agreement, the Selling Shareholders and Sutro agreed to provide the Purchaser indemnification for specific future occurrences and under Section 9.02 the Purchaser, SFSC and CPS I turn agreed to provide the Selling Shareholders and Sutro indemnification for certain actions if they arise. The relevant portions of each provision are as follows:

> Section 9.01 <u>Indemnification by the Sellers and Sutro.</u>
>
> (a) Subject to Sections 9.01(b) hereof, each of the Sellers and Sutro (collectively the "Seller Indemnifying Parties") hereby jointly and severally indemnify and hold the *Purchaser, the Indemnitor ... and, from after the Closing date, the Company* and the Company's officers, directors, employees, agents and shareholders (collectively the "Purchaser Indemnified Parties") harmless from and against and agree to defend promptly each of the Purchaser Indemnified parties for, any and all losses, damages, costs, expenses, fines, penalties....of any kind including without limitation, reasonable attorneys' fees and other legal and professional costs....that any of the Purchaser Indemnified Parties may at any time suffer or incur, or become subject to as a result of or in connection with the following...:
>
> (i) any *breach or inaccuracy of any representations and warranties made by the Sellers or Sutro in or pursuant to this agreement;*
> * * *
> (iii) any *fraudulent behavior by any Seller Indemnifying Party of any kind or nature in connection with the transactions under or pursuant to this Agreement...*
>
> Section 9.02 <u>Indemnification by the Purchaser, the Company and the Indemnitor</u>
>
> (a) The Purchaser, the Indemnitor and, from and after the Closing Date, the Company hereby indemnify and hold the Sellers, Sutro and each

> of the Sellers' respective trustees and agents harmless from and against and agree to defend …for any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations of any kind, including without limitation reasonable attorneys' fees and other legal and professional costs and expenses….. that any of the Seller Indemnified Parties may at any time suffer…in connection with the following:
>
> (vi) any claim that the purchase and sale of the Shares *constitutes a fraudulent transfer or fraudulent conveyance* under applicable federal and state law; and
>
> (vii) any failure to fulfill any obligations of the Sellers, the Company and/or the SSTAI Trust to any Payee as and when due at any time after the Closing Date.

148. On November 14, 2001, Pardee filed a Proof of Claim denominated as Claim No. 149, asserting a claim against the estate of approximately $2 million alleging his right to indemnification under Section 9.02 of the Stock Purchase Agreement.

149. Pardee does not hold or assert any other monetary claim against the SFSC bankruptcy estate other than Claim No. 149 which arises solely from his purported right of indemnification pursuant to the Agreement. Pardee's right to indemnification under the Agreement has been challenged and is the subject of a lawsuit currently pending in the United States District Court for the District of Rhode Island entitled *Pardee, et al. v. Consumer Portfolio Services Inc.*, Case No. 01 CV 00594 (D.R.I., 2001).

## V. CAUSES OF ACTION

### COUNT I

### Fraudulent Transfer

**Bankruptcy Code Sections 544, 548, 550 and 551 and the Uniform Fraudulent Transfer Act under Rhode Island General Laws Section 6-16-4 (As to Defendants Pardee, Pardee Trust, Sutro, DW Trust, First Union, and Hinckley Allen)**

150. The Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-149 above as if specifically restated and realleged.

151. The payments made by SFSC, directly and indirectly, to all Defendants to assist or effectuate the purchase of the SSTAI stock by SHI as part of the 1997 LBO constituted fraudulent transfers as to creditors of SFSC whose claims arose before and after the 1997 LBO under Rhode Island General Laws 6-16-4(a)(1) and Bankruptcy Code Section 548(a)(1)(A) because the transfers to the Defendants from SFSC were each made with the actual intent to hinder, delay, or defraud creditors of SSTAI and SFSC.

152. In addition, the payments made by SFSC, directly and indirectly, to all Defendants to assist or effectuate the purchase of the SSTAI stock by SHI as part of the 1997 LBO constituted fraudulent transfers as to creditors of SFSC whose claims arose before and after the 1997 LBO under Rhode Island General Laws 6-16-4(a)(2)(i) because SFSC made such payments without receiving reasonably equivalent value in exchange for the transfers and SFSC engaged in or was about to engage in business or transactions for which SFSC's remaining assets were unreasonably small in relation to such business or transaction.

153. In addition, the payments made by SFSC, directly and indirectly, to all Defendants to assist or effectuate the purchase of the SSTAI stock by SHI as part of the 1997 LBO constituted fraudulent transfers as to creditors of SFSC whose claims arose before and after

the 1997 LBO under Rhode Island General Laws 6-16-4(a)(2)(ii) because SFSC made such payments without receiving reasonably equivalent value in exchange for the transfers and SFSC believed, or reasonably should have believed, that it would incur, or had as part of the 1997 LBO incurred, debts beyond its ability to pay as they became due.

154. Finally, the payments made by SFSC, directly and indirectly, to all Defendants to assist or effectuate the purchase of the SSTAI stock by SHI as part of the 1997 LBO constituted fraudulent transfers as to creditors of SFSC whose claims arose before and after the 1997 LBO under Bankruptcy Code Section 548(a)(1)(B) because SFSC made such payments without receiving a reasonably equivalent value in exchange for the transfers and was insolvent at the time of the transfers or, as a result of which, SFSC became insolvent, or was engaged in or was about to engage in business or transactions for which SFSC's remaining property consisted of unreasonably small capital, or SFSC intended to incur, or believed that it would incur, or had as part of the 1997 LBO incurred, debts beyond its ability to pay as they matured.

155. As a direct and proximate result of the transfers of proceeds from the 1997 LBO to the Defendants, and any and all previous transfers in furtherance of the 1997 LBO, SFSC and its creditors suffered losses amounting to approximately $17.3 million transferred as part of the 1997 LBO and at least $3.0 million in previous transfers made in furtherance of the LBO.

156. The Defendants are either the immediate or mediate transferees of the fraudulent transfers of the proceeds of the 1997 LBO or previous transfers or the entities for whose benefit such transfers were made, and are the entities for whose benefit the Stock Purchase Agreement dated May 20, 1997, between SSTAI and SHI, was made and pursuant to which the transfers were effected.

157. Pursuant to Sections 544(b)(1), 548(a)(1), 550(a)(1) or (2) and 551 of the Bankruptcy Code and Rhode Island General Laws 6-16-7 and 6-16-8(b), the Plaintiff is entitled to a judgment avoiding and recovering these fraudulent transfers from each Defendant, limited to the amount of funds received by the respective Defendant, directly or indirectly, from SFSC in connection with the 1997 LBO, and any and all previous transfers received in furtherance of the 1997 LBO and preserving for the Debtor's estate the proceeds of the 1997 LBO and those previous transfers or the value thereof.

## COUNT II

### Fraudulent Transfer

**Bankruptcy Code Sections 544, 548, 550 and 551 and the Uniform Fraudulent Transfer Act under Rhode Island General Laws Section 6-16-5(a) (As to Defendants Pardee, Pardee Trust, Sutro, DW Trust, First Union, and Hinckley Allen)**

158. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

159. The payments made by SFSC, directly and indirectly, to the Defendants to assist or effectuate the purchase of the stock of SSTAI from the Selling Shareholders as part of the 1997 LBO constituted fraudulent transfers as to the then-existing creditors of SFSC under Rhode Island General Laws §6-16-5(a) because SFSC made such payments without receiving reasonably equivalent value in exchange for the transfers and SFSC was insolvent at the time of such payments or became insolvent as a result of the transfers made and obligations incurred in connection with the 1997 LBO.

160. As a direct and proximate result of the fraudulent transfers, SFSC and its creditors suffered losses amounting to at least the value of the transfers made in connection with the 1997 LBO.

161. The Defendants are either the immediate or mediate transferees of the fraudulent transfers of the proceeds of the 1997 LBO and previous transfers in furtherance of the 1997 LBO or the entities for whose benefit such transfers were made, and are the entities for whose benefit the Stock Purchase Agreement dated as of May 20, 1997, between SSTAI and SHI, was made and pursuant to which the transfers were effected.

162. Pursuant to Sections 544(b)(1), 548(a)(1), 550(a)(1) or (2) and 551 of the Bankruptcy Code and Rhode Island General Laws §§6-16-7 and 6-16-8(b), the Plaintiff is entitled to a judgment avoiding such fraudulent transfers and recovering those fraudulent transfers from each Defendant, limited to the amount of funds received by the respective Defendant, directly or indirectly, from SFSC as a part of the 1997 LBO, and any and all previous transfers in furtherance of the 1997 LBO and preserving for the Debtor's estate the proceeds of the 1997 LBO or the value thereof.

## COUNT III

### Fraudulent Transfer

**Bankruptcy Code Sections 544, 548, 550 and 551**
**and Rhode Island Generals Laws 16-4(a)(2)(A) and (B)**
**(As to Defendants Havican, Morse and Dodge)**

163. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

164. As alleged herein above, Defendants Havican, and Morse and Dodge acted as Trustees and may have provided services to the Pardee Trust and the DW Trust, respectively, for which they were compensated and have continued, with respect to Havican, to be compensated since May 20, 1997 with proceeds which are alleged herein to be fraudulent transfers made in connection with the 1997 LBO. These services were performed for the benefit of certain of the Defendants as immediate or mediate transferees of the proceeds from the sale of their stock

interests in SSTAI. Despite performing these services for the benefit of persons and entities other than SSTAI, Havican, Morse and Dodge were paid fees and expense reimbursements for these services, directly or indirectly, by SFSC (the "Trustee Fee Payments"). The Trustee Fees Payments constitute fraudulent transfers as to all creditors of SFSC whose claims arose before and after the 1997 LBO under Rhode Island General Laws §6-16-4(a)(2)(i) and Bankruptcy Code §548(a)(1)(B) because SFSC did not receive reasonably equivalent value in exchange for the payment of such fees and expense reimbursements and SFSC was engaged or was about to engage in a business or transaction for which SFSC's remaining assets were unreasonably small in relation to the business or transaction.

165. Additionally, the Trustee Fee Payments constitute fraudulent transfers as to creditors of SFSC whose claims arose before and after the 1997 LBO under Rhode Island General Laws § 6-16-4(a)(2)(ii) because SFSC made such payments without receiving reasonably equivalent value in exchange therefor and SFSC believed, or reasonably should have believed, that it would incur, or had as part of the 1997 LBO incurred, debts beyond its ability to pay as they became due.

166. Pursuant to Sections 544(b)(1), 548(a)(1), 550(a)(1) and (2) and 551 of the Bankruptcy Code and Rhode Island General Laws §§ 6-16-7 and 6-16-8(b), the Plaintiff is entitled to judgment avoiding the Trustee Fees Payments and recovering the full amount of the Trustee Fees Payments from Havican, Morse and/or Dodge.

## COUNT IV

### Fraudulent Transfer

**Bankruptcy Code Sections 544, 548, 550 and 551 and the Uniform Fraudulent Transfer Act under Rhode Island General Laws Section 6-16-5(a) (As to Defendants Havican, Morse and Dodge)**

167. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

168. The Trustee Fee Payments made by SFSC, directly or indirectly, to the Defendants from proceeds of the sale of stock of SSTAI from the Selling Shareholders as part of the 1997 LBO constituted fraudulent transfers as to the then-existing creditors of SFSC under Rhode Island General Laws §6-16-5(a) because SFSC made such payments without receiving reasonably equivalent value in exchange for the transfer and SFSC was insolvent at the time of such payments or became insolvent as a result of the transfers made and obligations incurred in connection with the 1997 LBO.

169. As a direct and proximate result of the fraudulent transfers, SFSC and its creditors suffered losses amounting to at least the value of the transfers under the 1997 LBO.

170. The Defendants are either the immediate or mediate transferees of the Trustee Fee Payments, which constitute fraudulent transfers made in connection with the 1997 LBO.

171. Pursuant to Sections 544(b)(1), 548(1), 550(a)(1) and (2) and 551 of the Bankruptcy Code and Rhode Island General Laws §§6-16-7 and 6-16-8(b), the Plaintiff is entitled to avoid such fraudulent transfers and to recover from the Defendants the amount of funds received by each respective Defendant, directly or indirectly, from SFSC in connection with the 1997 LBO.

## COUNT V

### Fraudulent Transfer

### Bankruptcy Code Sections 544, 548, 550 and 551 and the Uniform Fraudulent Transfer Act under Rhode Island General Laws Section 6-16-4 (As to Defendants Bear Stearns, HA&S, R-H, and Junkin, Hinckley Allen and R-H)

172. The Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-149 above as if specifically restated and realleged.

173. The Defendant Bear Stearns acted as financial advisor to SSTAI and Junkin acted as Defendant Hinckley Allen acted as general counsel and legal advisors to SSTAI, Pardee, the Selling Shareholders, and Sutro in connection with the 1997 LBO. R-H acted as financial advisors and exclusive agent to SSTAI and Pardee in connection with the 1997 LBO. The payments made by SFSC, directly or indirectly, to these Defendants (the "Professional Fee Payments") to assist or effectuate the 1997 LBO or previous payments in furtherance of the 1997 LBO constitute fraudulent transfers as to creditors of SFSC whose claims arose before and after the 1997 LBO under Rhode Island General Laws 6-16-4(a)(1) and (2) and Bankruptcy Code Section 548 (a)(1) because the transfers to the Defendants from SFSC were each made: (a) with the actual intent to hinder, delay, or defraud any creditor of SSTAI and SFSC, or (b) or without SFSC receiving reasonably equivalent value in exchange for the transfers and was engaged in or was about to engage in a business or transaction for which SFSC's remaining assets were unreasonably small in relation to such business or transaction, or SFSC believed, or reasonably should have believed, that it would incur, or had as part of the 1997 LBO incurred, debts beyond its ability to pay as they became due. In addition, SFSC was insolvent at the time of the transfers or became insolvent a result of such transfers.

174. As a direct and proximate result of the transfer of proceeds from the 1997 LBO to the Defendants and any and all previous payments in furtherance of the 1997 LBO, SFSC and their respective creditors suffered losses amounting to at least the value of the approximately $17.3 million transferred in connection with the 1997 LBO.

175. The Defendants are either the immediate or mediate transferees of the fraudulent transfers of the proceeds of the 1997 LBO and previous transfers in furtherance of the 1997 LBO.

176. Pursuant to Sections 544(b)(1), 548(a)(1), 550(a)(1) or (2) and 551 of the Bankruptcy Code and Rhode Island General Laws 6-16-7 and 6-16-8(b), the Plaintiff is entitled to a judgment avoiding and recovering these fraudulent transfers from each Defendant, limited to the amount of the funds received by the respective Defendant, directly or indirectly, from SFSC in connection with the 1997 LBO, or any previous transfer and preserving for the Debtor's estate the proceeds of the 1997 LBO or the value thereof.

## COUNT VI

### Fraudulent Transfer

**Bankruptcy Code Sections 544, 548, 550 and 551**
**and the Uniform Fraudulent Transfer Act under**
**Rhode Island General Laws Section 6-16-5(a)**
**(As to Defendants Bear Stearns, HA&S, R-H, and Junkin, Hinckley Allen, and R-H)**

177. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

178. The Professional Fee Payments constitute fraudulent transfers as to the then-existing creditors of SFSC under Rhode Island General Laws § 6-16-5(a) because SFSC made such payments without receiving reasonably equivalent value in exchange therefor and SFSC

was insolvent at the time of such payments or became insolvent as a result of the transfers made and obligations incurred in connection with the 1997 LBO.

179. Pursuant to Sections 544(b)(1), 548(a)(1), 550(a)(1) or (2) and 551 of the Bankruptcy Code and Rhode Island General Laws §§ 6-16-7 and 6-16-8(b), the Plaintiff is entitled to avoid the Professional Fee Payments and to recover from Defendants the amount of the Professional Fee Payments made by SSTAI or SFSC in connection with the 1997 LBO or any previous transfer in furtherance of the 1997 LBO.

## COUNT VII

### Breach of Fiduciary Duty
### (As to Defendants Pardee, Pardee Trust, Sutro, DW Trust, Hinckley Allen and R-H)

180. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

181. Defendants Pardee and Sutro were officers and shareholders of SSTAI during the negotiation and execution of the transactions which comprised the 1997 LBO. Pardee was President, Secretary and a director of SSTAI and Sutro was Executive Vice President, Secretary and a director of SSTAI. From 1992, Hinckley Allen acted as general and corporate counsel to SSTAI and for the same period acted as individual counsel to Pardee. As general counsel, Hinckley Allen was involved in all decision making for SSTAI and therefore was knowledgeable and actively participated in every facet of the 1997 LBO and the chronological events leading up to it. As counsel to SSTAI, Hinckley Allen owed fiduciary duties of care, candor, loyalty, fairness (against self-dealing corporate opportunities and in transactions with others, including Pardee and the Selling Shareholders) to SSTAI and SFSC as its successor. From 1992, R-H acted as financial advisors to SSTAI. In 1996, R-H was retained as financial advisors and sole and exclusive agent to sell SSTAI and prepared an Offering Memorandum and assisted in the

negotiations and sale of SSTAI. As financial advisors, R-H owned fiduciary duties of care, candor, loyalty and fairness (against self-dealing corporate opportunities and transactions with others) including Pardee, and the Selling Shareholders) to SSTAI and SFSC as its successor. As officers and directors of SSTAI, Pardee and Sutro had fiduciary duties to SSTAI and were subject to specific obligations imposed by the Rhode Island General Corporation Law. Pardee and Sutro resigned from their respective positions in SSTAI on May 20, 1997, the date on which the 1997 LBO was consummated. Also on May 20, 1997, Pardee directed and Sutro had knowledge that SSTAI approved the liquidation of in excess of $17 million of trust assets held by SSTAI to directly fund the purchase of SSTAI stock by SFSC.

182. Although the 1997 LBO was not consummated until May 20, 1997, the agreements that memorialized the 1997 LBO were made over a period of months from or about late 1996 through May, 1997. In fact, as early as 1992, Pardee, Sutro and Hinckley Allen constructed a scheme to embark on a series of amendments to the Governing Documents whereby SSTAI would ultimately unlawfully obtain a financial interest in the trust assets for their sole benefit and to the detriment of the Debtor and its predecessors. Consequently, Pardee, Sutro and Hinckley Allen were aware of, acquiesced to, and directly contributed to the consummation of the 1997 LBO. At the time they did so, they knew, or reasonably should have known, that the 1997 LBO would impose substantial additional debt upon SFSC solely for the benefit of the two Selling Shareholders, Pardee and Sutro, and to the detriment of the acquiring company, SFSC and its creditors, the Settlement Payees.

183. Hinckley Allen prepared opinion letters relied upon by SFSC, SSTAC and CPS and incorporated into the closing documents which failed to disclose the true nature of SSTAI's business purpose.

184. R-H prepared an Offering Memorandum relied upon by SFSC, SSTAC, and CPS which failed to disclose the true nature of SSTAI's financial status and business purpose.

185. After the transfer of the $17.3 million used to fund the 1997 LBO, Pardee, Sutro and Hinckley Allen knew, or should have known, that the 1997 LBO impaired or would cause impairment of SFSC's capital, and that SFSC could no longer fund its ongoing obligations to the Settlement Payees.

186. In furtherance of their own financial interests, Pardee, Sutro, Hinckley Allen and R-H conspired with each other or aided and abetted additional breaches of their fiduciary duties. As set forth above, over the course of several years, Pardee, as controlling shareholder of SSTAI, with the assistance of Hinckley Allen and Sutro, strived to achieve the systematic elimination of the Settlement Payee protections contained within the various trust agreements administered by Pardee. Pardee and Sutro, with the assistance of Hinckley Allen marketed SSTAI as a company with millions of dollars of assets available for investment.

187. These actions represented a breach of the fiduciary obligations of Pardee, Sutro, the Selling Shareholders and Hinckley Allen because the Pardee, Sutro, Selling Shareholders and Hinckley Allen knew or recklessly disregarded the fact that their collective conduct facilitated, aided and abetted the removal of assets from safe investments guaranteed to fund payments to creditors and resulted in the investment of such assets in highly speculative and risky investments that jeopardized the ability of SSTAI and its successor in interest, SFSC, to fund payments to the Settlement Payees. The Pardee, Sutro, the Selling Shareholders and Hinckley Allen knew or should have known that virtually every dollar held by SSTAI in the Treasury Bonds was required to meet the financial obligations of SSTAI to its creditors, the Settlement Payees and amending the trust agreements and stripping over $17 million of assets from SSTAI

and its successor in interest, SFSC, to pay them would render the company unable to meet its obligations to creditors.

188. As a direct result of this breach of their fiduciary duties, virtually the entire proceeds from the liquidation of the Treasury Bonds had been lost to risky investments by just over four years after the completion of the 1997 LBO. This breach was compounded by the fact that all actions of the Selling Shareholders and Hinckley Allen were deliberately calculated to be done without giving notice to the Settlement Payees.

189. The 1997 LBO benefited Pardee, Sutro and Hinckley Allen directly and with respect to Pardee and Sutro benefited trusts controlled by them. These benefits came at the direct expense of SFSC and its creditors. The indebtedness which SFSC incurred to fund the 1997 LBO and the fees and expenses which SFSC incurred and paid to Hinckley Allen and others to accomplish and effect the 1997 LBO rendered SFSC insolvent, left SFSC with unreasonably small capital, and rendered SFSC unable to pay its debts as they became due.

190. By directing and controlling or acquiescing to and contributing to SSTAI's participation in the 1997 LBO, Pardee, Sutro, Hinckley Allen and R-H breached the fiduciary duties which they owed to SSTAI and ultimately, its creditors.

191. Pardee, Sutro, Hinckley Allen and R-H are jointly and severally liable to the Plaintiff for the full amount of all monies paid by SFSC to fund and effect the 1997 LBO, in an amount in excess of $17.3 million.

## COUNT VIII

### Aiding and Abetting Breach of Fiduciary Duties
### (As to Defendants Hinckley Allen and R-H)

192. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

193. Hinckley Allen knowingly participated in one or more breaches of fiduciary duties owed to SFSC, as successor to SSTAI, by it President Pardee, Executive Vice President Sutro, and the other Selling Shareholders.

194. R-H knowingly participated in one or more breaches of fiduciary duties owed to SFSC, as successor to SSTAI, by it President Pardee, Executive Vice President Sutro, and the other Selling Shareholders.

195. As a consequence of the breaches of fiduciary duties and the assistance of Hinckley Allen and R-H, SFSC has suffered damages in excess of $17.5 million which includes the proceeds from trust assets that were stripped from the company as part of the 1997 LBO.

196. Hinckley Allen and R-H acted willfully, maliciously, and fraudulently and SFSC is entitled to punitive damages.

**COUNT IX**

**Conspiracy to Breach of Fiduciary Duty**
**(As to Defendants Hinckley Allen and R-H)**

197. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1–149 above as if specifically restated and realleged.

198. Hinckley Allen conspired with Pardee and Sutro to facilitate one or more breaches of fiduciary duties owed to SFSC and R-H conspired with Pardee and Sutro to facilitate one or more breaches of fiduciary duties owed to SFSC by Pardee and Hinckley Allen.

199. Hinckley Allen and R-H each knew the common object of the conspiracies to breach fiduciary duties owed to SFSC and deliberately intended to take part in the conspiracies.

200. One or more of the wrongful acts to further the conspiracy were committed by one or more members of each of the conspiracies to breach fiduciary duties to SFSC.

201. As a direct consequence of the acts of Hinckley Allen and R-H, SFSC has suffered damages in excess of $17.5 million which includes the proceeds from trust assets that were stripped from the company as part of the 1997 LBO.

**COUNT X**

**Intentional Misrepresentation**

**Rhode Island Common Law**
**(As to Defendants Hinckley Allen and R-H)**

202. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

203. Hinckley Allen's express and implicit representations to SFSC, as successor to SSTAI, that it had a high degree of confidence in the truth and accuracy of the representations contained in the Opinion Letter and the Stock Purchase Agreement were intentionally false.

204. R-H's expenses and implicit representation to SFSC that it had a high degree of confidence in the truth and accuracy of the representations contained in the Offering Memorandum were intentionally false.

205. R-H and Hinckley Allen's express and implicit representation of the confidence and honest belief were false because, *inter alia,* financial advisors and attorneys at Hinckley Allen, including Farmer:

a. knew or believed that the representations in the Opinion Letter, the Stock Purchase Agreement and the Offering Memorandum were false;

b. knew or believed that there was no basis for the degree of confidence and accuracy that those representations state and imply;

c. were conscious that they held merely a belief that the representations were so, but recognized that there was a significant chance that the facts might not be represented; and/or

d. made the representations with utter disregard for the truth of the representations.

206. R-H and Hinckley Allen made these false representations to SFSC, as successor to SSTAI, with the intent to: (1) induce reliance by SSTAC, the purchasers of the stock of SSTAI; and (2) ultimately SFSC in agreeing to become a party to the Stock Purchase Agreement and indemnify Pardee and the other SSTAI shareholders.

207. R-H and Hinckley Allen's false representations were material.

208. In light of the language of the Offering Memorandum, the Opinion Letter, the Seller's warranties and the documents provided to SSTAC prior to the acquisition, SSTAC's reliance was intended, reasonable and foreseeable.

209. Neither SSTAC nor SFSC knew and could not reasonably have known that the representations made by R-H and Hinckley Allen were false.

210. As a direct and proximate cause of R-H's and Hinckley Allen's intentional misrepresentations, SFSC has been damaged.

**COUNT XI**

**Negligent Misrepresentation**

**Rhode Island Common Law**
**(As to Defendants Hinckley Allen and R-H)**

211. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

212. One or more of the representations made by in the Opinion Letter by Hinckley Allen to SSTAC - the acquiring company - were false.

213. One or more of the representations made by the Offering Memorandum by R-H to SSTAC - the acquiring company - were false.

214. Hinckley Allen had no reasonable grounds to support its representations to SSTAC and SFSC and failed to exercise due care with respect to those false representations.

215. R-H and Hinckley Allen made these false representations to SSTAC and SFSC with the intent to induce reliance by SSTAC in agreeing to become a party to the Stock Purchase Agreement and indemnify Pardee and the other SSTAI shareholders.

216. Hinckley Allen's false representations were material.

217. R-H's false representations were material.

218. In light of the language of the Offering Memorandum, Opinion Letter, the seller's warranties, and the documents provided to SSTAC prior to the acquisition, SSTAC's and SFSC's reliance was intended, reasonable and foreseeable.

219. Neither SSTAC nor SFSC knew and could not have reasonably known that the representations made by R-H and Hinckley Allen were false.

220. As a direct and proximate result of R-H's and Hinckley Allen's negligent misrepresentations SFSC has been damaged.

**COUNT XII**

**Fraudulent Misrepresentation**

**Rhode Island Common Law**
**(As to Defendants Pardee, Sutro, Hinckley Allen and R-H)**

221. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

222. At all times, Hinckley Allen was counsel to SSTAI – predecessor to SFSC- and maintained a attorney-client relationship with SSTAI.

223. At all times, R-H was financial advisor and from 1996 exclusive agent to SSTAI - predecessor to SFSC - and maintained an accountant relationship with SSTAI.

224. At all times Pardee was President and majority shareholder of SSTAI and actively participated with his attorneys, Hinckley Allen, to consummate the Stock Purchase Agreement.

225. One or more of the representations made by Pardee and Sutro as part of the closing of the Stock Purchase Agreement to SSTAC and SFSC was materially false.

226. One or more of the representations by R-H in the Offering Memorandum to SFSC were materially false.

227. One or more of the representations made by Hinckley Allen in the Opinion Letter to SSTAC - the acquiring company - and one or more of the representations made by Hinckley Allen to SFSC in the Stock Purchase Agreement were materially false.

228. R-H, Hinckley Allen, Pardee, and Sutro had no reasonable grounds to support their representations to SSTAC and SFSC and both Hinckley Allen and Pardee intended to deceive SSTAC and SFSC.

229. R-H, Hinckley Allen and Pardee made these false representations to SSTAC and SFSC with the intent to induce reliance by SSTAC in agreeing to become a party to the Stock Purchase Agreement and indemnify Pardee and the other SSTAI's shareholders.

230. R-H's false representations were material.

231. Hinckley Allen's false representations were material.

232. Pardee's false representations were material.

233. Sutro's false representations were material.

234. In light of the language of the Offering Memorandum, Opinion Letter, the seller's warranties, and the documents provided to SSTAC prior to the acquisition, SSTAC's and SFSC's reliance was intended, reasonable and foreseeable.

235. Neither SSTAC nor SFSC knew and could not reasonably have known that the representations made by R-H, Hinckley Allen, Pardee, and Sutro were false.

236. As a direct and proximate result of the fraudulent misrepresentations by R-H, Hinckley Allen, Pardee, and Sutro, SFSC has been damaged.

## COUNT XIII

### Unjust Enrichment
### (As to Defendants Pardee, Sutro and Hinckley Allen)

237. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

238. Defendants Hinckley Allen, Pardee and Sutro willingly, knowingly and fraudulently entered into or assisted the 1997 LBO whereby they, as Selling Shareholders, and counsel would receive an enormous economic benefit. Both Pardee and Sutro received a benefit in the form of payments in the amount of $16.8 million for the stock of SSTAI, plus additional transaction fees exceeding $500,000 paid for their benefit, while depriving the Settlement Payees of that amount of trust assets and Hinckley Allen received $3,500,000 paid to their benefit.

239. In addition, Pardee and Sutro authorized additional payments to themselves for management expenses of SSTAI of approximately $3,000,000 for the period 1992-1997 which came from trust assets of SSTAI.

240. Because of their knowledge of the asset and liability structure of SSTAI at the time of the 1997 LBO, both Pardee and Sutro, as officers, directors, and shareholders and Hinckley Allen, as counsel, were aware and had knowledge of the benefit they were receiving from the sale of the SSTAI stock.

241. Further, at the time that Pardee, Sutro and Hinckley Allen accepted the benefit from the sale of the stock, Pardee, Sutro and Hinckley Allen knew that SSTAI and its creditors would suffer such an economic detriment from the 1997 LBO that it would be inequitable for Pardee and Sutro to retain such proceeds.

242. The monies paid to Pardee, Sutro and Hinckley Allen from the sale of the SSTAI stock came from SSTAI and received such property from SSTAI.

243. As a result of the wrongful acts of Pardee, Sutro, and Hinckley Allen each has been unjustly enriched at the expense of SFSC, while the creditors have been unjustly deprived of the benefits of their Settlement and Trust Agreements.

244. Pardee, Sutro and Hinckley Allen have been and will continue to be unjustly enriched if allowed to retain the above-described funds and benefits, and therefore the Plaintiffs request that: (1) a constructive trust be imposed on all monies and benefits wrongfully obtained by Pardee, Sutro and Hinckley Allen for the benefit of the Debtor's estate; (2) an accounting be required and (3) an Order be entered disgorging from Defendants or reimbursing the Debtor's estate for all monies, benefits and proceeds from the funds wrongfully obtained by Pardee, Sutro and Hinckley Allen.

**COUNT XIV**

**Conversion**
**(As to Defendants Pardee and Sutro)**

245. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

246. Pardee and Sutro assumed dominion and control over all the assets of SSTAI by: (1) deliberately and unlawfully altering the trust agreements so as to allow SSTAI to obtain a financial interest in the trust assets for their own personal gain as shareholders; (2) gaining access to the trust assets and any and all available cash; (3) using proceeds from trust assets to pay themselves exorbitant salaries and management and consulting fees; and (4) using proceeds from the trust assets as their own personal "checking" account to fund the expenses and costs of

their scheme to amend the trust agreements and ultimately market SSTAI for sale for their own profit to the detriment of SSTAI.

247. Pardee and Sutro exercised dominion and control over the property of SSTAI without consent of the Settlement Payees.

248. Pardee and Sutro's exercise of dominion was inconsistent with SSTAI's right to possession.

249. Pardee and Sutro's exercise of dominion and control over the property of SSTAI was unauthorized, unlawful, or inconsistent with the rights of SSTAI.

250. As a direct consequence of Pardee and Sutro's conversion, SSTAI has suffered damages in excess of $3.0 million.

251. Pardee and Sutro acted wantonly or with malice and therefore SSTAI is entitled to punitive damages.

**COUNT XV**

**Indemnity Claim**
**(As against Pardee, Sutro, the Pardee Trust and the DW Trust)**

252. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

253. Pardee, Sutro and the other Selling Shareholders have breached their representations and warranties contained in the Stock Purchase Agreement and engaged in fraudulent behavior prior to and in connection with the 1997 LBO.

254. SFSC is entitled to the benefits and protections set forth in the indemnity provision of Section 9.01 of the Stock Purchase Agreement and is entitled to reimbursement of all reasonable attorneys' fees, costs and expenses in connection with the prosecution of this litigation.

## COUNT XVII

**Equitable Subordination**
**Bankruptcy Code Section 510(c)(1)**
**(As to all Defendants)**

255. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

256. The Defendants have asserted or may assert an unsecured claim against the Debtor's estate for any and all funds they are compelled to return as a result of this action. To the extent that any of the Defendants have an allowed claim against the estate, under principles of equitable subordination, distribution of proceeds in connection with that allowed claim should be subordinated to all other unsecured claims in this case.

## COUNT XVII

**Objection to Pardee Claim**
**Bankruptcy Code Section 502(b)(1)**
**(As to Defendant Pardee)**

257. The Plaintiff incorporates herein by reference the allegations stated in paragraphs 1-149 above as if specifically restated and realleged.

258. Pardee knowingly breached representations and warranties contained in the Stock Purchase Agreement and fraudulently induced the Debtor to purchase SSTAI. The express terms of Section 9.01 and 9.02 of the Stock Purchase Agreement specifically prohibit Pardee's right to indemnification under the circumstances surrounding the 1997 LBO. Pardee's intentional conduct and fraudulent inducement bars his right to indemnification for any damages and litigation expenses for lawsuits that he created.

## VI. JURY DEMAND

259. Plaintiff demands a jury for all issues in this action that may be so tried before the Court.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter its judgment for the following relief:

(A) On the First Count of the Complaint, a judgment against each of Defendants Pardee, Pardee Trust, Sutro, DW Trust, First Union and Hinckley Allen avoiding, recovering and preserving for the benefit of the Debtor's estate transfers in an amount equal to the total amount of the transfers and payments any of them received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions;

(B) On the Second Count of the Complaint, a judgment against each of Defendants Pardee, Pardee Trust, Sutro, DW Trust, First Union and Hinckley Allen avoiding, recovering and preserving for the benefit of the Debtor's estate transfers in an amount equal to the total amount of the transfers and payments any of them received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions;

(C) On the Third Count of the Complaint, a judgment against each of Defendants Havican, Morse and Dodge avoiding, recovering and preserving for the benefit of the Debtor's estate transfers in an amount equal to the amount of the Trustee Fee Payments received by each of them, directly or indirectly, from SSTAI or SFSC in connection with the 1997 LBO and related transactions;

(D) On the Fourth Count of the Complaint, a judgment against each of Defendants Havican, Morse and Dodge avoiding, recovering and preserving for the benefit of the Debtor's

estate transfers in an amount equal to the amount of the Trustee Fee Payments received by each of them, directly or indirectly, from SSTAI or SFSC in connection with the 1997 LBO and related transactions;

(E) On the Fifth Count of the Complaint, a judgment against each of Defendants Bear Stearns, HA&S, R-H, and Junkin, Hinckley Allen and R-H avoiding, recovering and preserving for the benefit of the Debtor's estate transfers in an amount equal to the Professional Fee Payments received by each of them directly or indirectly from SSTAI or SFSC in connection with the 1997 LBO and related transactions;

(F) On the Sixth Count of the Complaint of the Complaint, a judgment against Defendants Bear Stearns, HA&S, R-H, and Junkin, Hinckley Allen and R-H avoiding, recovering and preserving for the benefit of the Debtor's estate transfers in an amount equal to the amount of the Professional Fee Payments received by each of them directly or indirectly from SSTAI or SFSC in connection with the 1997 LBO and related transactions;

(G) On the Seventh Count of the Complaint, judgment against each of Defendants Pardee, Sutro, Hinckley Allen and R-H in an amount equal to the total amount of the transfers and payments they respectively received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount they unjustly retained for their own personal financial benefit.

(H) On the Eighth Count of the Complaint, judgment against each of Defendants Hinckley Allen and R-H in an amount equal to the total amount of the transfers and payments they respectively received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount they unjustly retained for their own personal financial benefit, in addition to an award of punitive damages.

(I) On the Ninth Count of the Complaint, judgment against each of Defendants Hinckley Allen and R-H in an amount equal to the total amount of the transfers and payments they respectively received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount they unjustly retained for their own personal financial benefit.

(J) On the Tenth Count of the Complaint, judgment against Defendant Hinckley Allen in an amount equal to the total amount of the transfers and payments it received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount they unjustly retained for its own personal financial benefit.

(K) On the Eleventh Count of the Complaint, judgment against Defendant Hinckley Allen in an amount equal to the total amount of the transfers and payments it received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount it unjustly retained for its own personal financial benefit.

(L) On the Twelfth Count of the Complaint, judgment against Defendants Pardee and Hinckley Allen in an amount equal to the total amount of the transfers and payments they respectively received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount they unjustly retained for their own personal financial benefit, in addition to an award of punitive damages.

(M) On the Thirteenth Count of the Complaint, judgment against Defendants Pardee, Sutro and Hinckley Allen in an amount equal to the total amount of the transfers and payments they respectively received directly or indirectly from SFSC as consideration for, or in connection with, the 1997 LBO and related transactions, which amount they unjustly retained for their own personal financial benefit. As to Hinckley Allen in an amount equal to the total amount of the

transfers to all transferees as a result of the 1997 LBO, in addition to the amounts claimed against them as direct or indirect transferees and an award of punitive damages.

(N) On the Fourteenth Court of the Complaint, judgment against the Defendants Pardee and Sutro in an amount equal to all funds unlawfully and wrongfully converted by Pardee and Sutro during their tenure as shareholders and directors of SSTAI, in addition to an award of punitive damages.

(O) On the Fifteenth Count of the Complaint, judgment against Defendants Pardee, Sutro and the other Selling Shareholders in an amount equal to the reimbursement of all reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution of this litigation.

(P) On the Sixteenth Count of the Complaint, an Order granting equitable subordination of any allowed claim of any Defendant to the claims of all other unsecured creditors in this Chapter 11 case.

(Q) On the Seventeenth Count of the Complaint, an Order disallowing in its entirety Claim No. 149 filed by Pardee in this Chapter 11 case.

(R) Award of pre-judgment and post-judgment interest under applicable law and attorney's fees, including all costs and expenses and experts' fees and expenses incurred in connection with the prosecution of this action; and

(S) Granting such other and further relief to which the Plaintiff may be entitled at law or in equity.

Dated at Greenwich, Connecticut this 23rd day of October, 2003.

Respectfully Submitted,

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS on behalf of
THE ESTATE OF STANWICH
FINANCIAL SERVICES CORPORATION
AND ITS CREDITORS

By:____________________________

Melissa Zelen Neier, Esq. (25055)
Justin B. Blackhall Esq. (24781)
Ivey, Barnum & O'Mara, LLC
170 Mason Street
Greenwich, CT 06830
Phone: 203-661-6000
Facsimile: 203-661-9462
E-Mail: mneier@ibolaw.com