UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JONATHAN H. PARDEE, an individual; and Carol H. Pardee (formerly Carol P. Havican) as Trustee of the JONATHAN H. PARDEE CHARITABLE REMAINDER UNITRUST U/A MAY 17, 1997,

*Plaintiffs,*

v.

C.A. No. 07-023 ML

CHARLES E. BRADLEY, JR., an individual; and CHARLES E. BRADLEY, SR., an individual,

*Defendants.*

**PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS**

Now Come Plaintiffs—Jonathan H. Pardee and Carol H. Pardee (formerly Carol P. Havican) as Trustee of the Jonathan H. Pardee Charitable Remainder Unitrust U/A May 17, 1997—and hereby object to the Motion to Dismiss or to Stay Proceedings of Defendants, Charles E. Bradley, Sr. and Charles E. Bradley, Jr.. In support thereof, Plaintiffs rely upon the Memorandum of Points and Authorities, attached hereto and incorporated herein.

Plaintiffs,
By their attorneys,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION

I hereby certify that the within has been electronically filed with the Court on this 27th day of April, 2007, is available for viewing and downloading from the ECF system, and that the counsel of record listed below will receive notice via the ECF system:

Christopher H, Little, Esq.
clittle@lmkbw.com

SCOTT K. POMEROY, ESQ.
spomeroy@lmkbw.com

*/s/ Marc DeSisto*

Marc DeSisto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JONATHAN H. PARDEE, an individual; and Carol H. Pardee (formerly Carol P. Havican) as Trustee of the JONATHAN H. PARDEE CHARITABLE REMAINDER UNITRUST U/A MAY 17, 1997,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHARLES E. BRADLEY, JR., an individual; and CHARLES E. BRADLEY, SR., an individual,<br><br>*Defendants.* | C.A. No. 07-023 ML |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS**

## I. INTRODUCTION

The motion of Defendants, Charles E. Bradley, Sr. and Charles E. Bradley, Jr. (the "Bradleys"), is wrong on both the facts and the law and should be denied. The Bradleys gave plaintiff, Jonathan H. Pardee ("Pardee") an "absolute" and "unconditional", contractual guaranty. That guaranty has been triggered. Pardee's claim is ripe. Controlling law is clear that in contractual indemnification actions, the facts of this action justify this court's jurisdiction. Pardee has pleaded that the Bradleys have and had a current obligation to defend and indemnify him under that guarantee for the more than $3 million dollars he has necessarily paid lawyers in mounting his successful defense against claims spawned by the Bradleys' wrongdoing. The Bradleys' guarantee notwithstanding, they have for over six years shirked their obligation to reimburse Pardee for these costs. The pending motion is their latest effort to further delay

performing their obligations to Pardee, and to damage him further by their breach. It is now time to move this claim forward, so Pardee can have the benefit of the bargain he struck with the Bradleys nearly 10 years ago.

## II. FACTUAL BACKGROUND

### A. Background

In 1997, the Bradleys wanted to buy Pardee's majority interest in a structured settlement assignment company. As inducement, the Bradleys signed a written guaranty (the "Guaranty"). Therein, they made an "absolute" and "unconditional" guaranty of full and punctual payment and performance of certain indemnification obligations if the acquired company failed to fulfill certain obligations to third parties. *Complaint at 3, ¶1; Guaranty, at ¶ 1, Exhibit A ("Ex. A"); and Stock Purchase Agreement ("SPA"), at ¶ 9.02(a), Exhibit B ("Ex. B")*. The Bradleys explicitly waived defenses which might otherwise be available to the underlying indemnitor. After taking control of the acquired company, the Bradleys masterminded a failed investment "strategy" for the company. In 2000, three plus years after buying Pardee's interests, the Bradleys walked away from obligations of nearly $100,000,000 to payees of structured settlements—including widows, orphans, and paraplegics ("Payees")[1]. As a result, Pardee (as a former shareholder of the obligor which was acquired by the Bradleys) has been dragged into epic litigation. That litigation involved nearly $100,000,000 in third party losses caused by the Bradleys. To date, Pardee has spent over $3,000,000 to defend these claims successfully. Pardee incurred the bulk of these fees in two major pieces of underlying litigation in California, a class action and large individual claim. In 2004 and 2005, respectively, those cases concluded in Pardee's favor. One ended by summary judgment. The other ended by a dismissal with no

[1] These creditors, the "Payees," are largely comprised of grievously injured tort payees (or their surviving orphans, widows or widowers) who had bargained to have their structured litigation settlements paid over time by and through the structured settlement assignment company, now called "Stanwich."

payment or settlement having been made by Pardee. A third, unmeritorious suit against Pardee remains pending in the Connecticut bankruptcy court administering the bankruptcy of the Bradley companies. In that suit, and in the appeal of the summary judgment, Pardee continues to incur defense costs and other losses covered by the Guaranty. No payment has been made on the indemnification or the Guaranty. The Bradleys have breached their obligation to Pardee.

In December 2001, Pardee instituted an action against the indemnitor, CPS—a company that has at all times related to this litigation been effectively controlled by the Bradleys. The Bradleys are not parties to that action. The CPS action is based on a different legal instrument, which has different obligors, different terms, and different defenses (among other things) than the Guaranty on which the Bradleys are sued here. In 2004, before the California litigations concluded, Judge Lagueux issued the stay of Pardee's claim against CPS on which the Bradleys now rely so heavily. As noted above, the Bradleys broadly waived defenses that otherwise might have been available on the Guaranty.[2] They also waived the right to assert any defense based upon the CPS or any other stay, as follows: "The Guarantors waive . . . . all defenses which may be available by virtue of any . . . ***stay*** . . . now or hereafter in effect . . . ." *Complaint; Ex. A, Guaranty, ¶ 3*. The Guaranty contemplates precisely the situation where payment is not being made on the indemnification guaranteed by the Bradleys. Defendants guaranteed

> full and punctual payment and performance of the Obligations[3] and not of their collectibility only and is in no way conditioned upon any requirement that [Pardee] first attempt to collect any of the Obligations [from the indemnifying parties] or resort to any security or other means of obtaining payment and performance of the Obligations. Should the [indemnifying parties] fail to pay or perform any of the Obligations when due, the obligations of the Guarantors [the Bradleys] hereunder shall become immediately due and payable [to

[2] See Ex. A, Guaranty, ¶ ¶3 and 4, quoted at p. 8 below.

[3] Defined as "the performance, of all indemnification obligations of the Company, the Purchaser and the Indemnitor to the Indemnitees contained in that certain Stock Purchase Agreement (the "Agreement") among the Indemnitees, the Purchaser and the Indemnitor of even date herewith." *Complaint at p. 9, ¶ 19, n.1; Ex. A, Guaranty, at ¶ 1.*

Pardee], without demand or notice of any nature, all of which are expressly waived by the Guarantors." *Complaint at 9, ¶19.*

**B. The Company Defaulted, Resulting in Litigation Against Pardee**

More than three years passed after Pardee sold all of his stock in the structured settlement assignment company. Then, while that company remained under the exclusive control and direction of the Bradleys, the company failed (for the first time ever) to make the periodic payments that were due and owing under the structured settlement agreements entered with the Payees. *Complaint at 2, ¶2.* The Bradleys caused the default by directing Stanwich to make various substantial investments in illiquid, closely-held companies controlled by the Bradleys or their family. *Complaint at 2, ¶1.* On June 25, 2001, Defendants' failed investment "strategy" drove the structured settlement assignment company into bankruptcy, where it remains today. *Id.*

The Bradleys' conduct precipitated in California, Montana and Connecticut. Pardee had no role in—and received no benefit from—the Bradleys' excessively risky and illiquid investments. But Pardee was drawn into much of this litigation. Pardee was forced to mount a defense simply because he had sold his interest in the company to an entity controlled by the Bradleys when the company was still a solvent, going concern which had never failed to make any payment to any Payee. *See Complaint at 2, ¶2.* The defense has been arduous and expensive. The litigation has lasted for more than 6 years. All but the Connecticut adversary proceeding have been resolved in Mr. Pardee's favor and the Connecticut case generally has not been active. *Complaint at 3, ¶2.* The only judge to reach the merits granted summary judgment in Pardee's favor) because the undisputed evidence showed that "[w]hat harmed the Plaintiffs [the Payees] was the failure by the Bradleys and the ultimate bankruptcy of the Assignment Company" and not any action taken by Mr. Pardee. *Complaint at 13, ¶27; See also Hawkins v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc., Superior Ct. of CA, BC No. 279691 (Lichtman, J.) (December 7, 2005) at p. 9, ¶ 1.g.vi, Exhibit C ("Ex C.") (Hereinafter "California December 7, 2005 Order").*[4]

### C. Pardee Has Incurred, and Continues to Incur, Substantial Defense Costs and Losses Covered By The Guaranty

To date, Pardee has been forced to spend millions of dollars defending against claims by Payees and others. He has suffered additional losses as well, all of which are covered by the Guaranty. *Complaint at 13, ¶ 28*. These defense costs and other losses continue to grow. *Id.* Neither CPS nor the Bradleys have reimbursed Pardee. *Id.* Pardee has borne these costs alone. *Id.* Pardee has also lost substantial income for which he is entitled to be reimbursed under the Guaranty. Conservatively estimated, his out of pocket defense costs and additional losses will exceed the $5 million cap of Defendant's Guaranty. *Complaint; Ex. A, Guaranty, ¶ 2*.

## III. STANDARD OF REVIEW

Relying on the claim that the action is not ripe for adjudication, defendants have moved to dismiss the instant complaint in lieu of answer pursuant to Rule 12(b) (6) of the Federal Court Rules of Civil Procedure, or in the alternative to stay the instant action. In addressing defendants' motion to dismiss in lieu of answer, this Court must accept all well-pled allegations as true. *See, e.g., Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002)*. In accepting these factual averments, this Court's role then is "to determine whether the complaint . . . alleges facts sufficient to make out a cognizable claim." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004) quoting Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).*

---

[4] The California December 7, 2005 Order, attached hereto as Ex. C to this memorandum, is an official order of the California Superior Court of the County of Los Angeles.

In determining whether an action if ripe for review, the Court employs a two-part test: (1) the fitness of the issues for judicial determination, and (2) the hardship to the parties of withholding court consideration. *Operation Clean Gov't v. R.I. Ethics Comm'n, 315 F. Supp. 2d 187, 195 (D.R.I. 2004) quoting Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967) (emphasis added).* "The ripeness inquiry is often *sui generis.* Most litigation has idiosyncratic features, and the various integers that enter into the ripeness equation play out quite differently from case to case . . . " *Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995, citing State of Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir.), cert. denied, 513 U.S. 919 (1994); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).*

## IV. SUMMARY OF ARGUMENT

Applying these standards to the instant case, plaintiffs submit that the instant motion should be denied. The Bradleys cannot give a meaningful reason why they should be relieved of their express waiver of any right they might otherwise have to hide behind a stay.[5] Even if they could, the differences between the situation before this Court and the CPS case are profound. The claims against CPS and the Bradleys involve ***different parties*** with ***different obligations*** on ***different legal instruments*** waiving ***different defenses***. Under each instrument and from each party, Pardee received various promises to protect and/or reimburse if the assignment company failed to make payments to Payees when due. *See Complaint at 8-11, ¶¶18-22; Ex. A, Guaranty at ¶ 1-6; and Ex. B. SPA, at ¶ 9.02(a).* The Bradleys, in their individual capacities, signed only the Guaranty. The Guaranty is the only contract on which they are sued in this litigation. ***Only*** the Bradleys signed the Guaranty. It was not signed by CPS (an "Indemnitor" on an indemnity

[5] In fact, the Bradleys expressly waived any right to assert any stay as a defense to obligations under the Guaranty: "The Guarantors waive . . . all defenses which may be available by virtue of any . . . stay . . . ." Ex. A, Guaranty, at 2, ¶ 3. This provision is unique to the Guaranty, so was not before Judge Lagueux in the CPS litigation.

provision of the Stock Purchase Agreement). It was not signed by Stanwich (obligated under the Stock Purchase Agreement to indemnify Pardee). It was not signed by SST Acquisition Corp. (obligated to protect Pardee under the Stock Purchase Agreement).

Under the Guaranty, Pardee was expressly relieved of any obligation to pursue relief against any other party before enforcing the Guaranty. *Complaint at 9, ¶9; Ex. A, Guaranty, at ¶1.* The Guaranty specifically anticipates exactly the type of action Pardee has now filed against the Bradleys, without regard to whether or not each and every underlying dispute on which Pardee could ever seek to be indemnified has been fully and finally resolved. That provision is as follows: "Payments by the Guarantors hereunder may be required by the Indemnitees on any number of occasions." *Complaint at 9, ¶ 19.* That provision of the Guaranty makes no sense if each and every underlying dispute has to be fully and finally resolved before Pardee can turn to the Bradleys under the Guaranty. The Bradleys urge this Court to render that contract provision meaningless and superfluous, by reading it out of the Guaranty entirely. Significantly, not only is Pardee not required to conclude an action on the underlying indemnification, he is not required even to commence such an action. *See Ex. A, Guaranty at ¶ 3.* Nothing prohibits Pardee from pursuing the obligors under these various agreements concurrently (although the Stanwich bankruptcy has stayed Pardee's pursuit of a claim against that entity).

The Bradleys are not signatories to the Stock Purchase Agreement, nor (unlike CPS) are they signatories to the indemnity provisions of the Stock Purchase Agreement. CPS, which Pardee has sued on its indemnity obligations under the Stock Purchase Agreement, is not a signatory on the Guaranty. Unlike the Bradleys, CPS did not expressly bargain away its right to defer its obligations pursuant to a stay such as that issued by Judge Lagueux. The Bradleys are not parties to the CPS litigation. The CPS litigation will not resolve the rights Pardee asserts

under the Guaranty (nor will it resolve any defenses the Bradleys may assert). The most notable similarity between the two actions is that the defendants in both actions are fully committed to delaying tactics. CPS succeeded on ripeness grounds, albeit under very different circumstances; i.e., in 2004, both the California actions were active and unresolved. Now they are over. Both were resolved in Pardee's favor.

There are several other provisions of relevance in the Guaranty which make it clear that this action should proceed now, regardless of whether or not the action against CPS is stayed (or even if CPS prevails in that action on the merits), as follows:

> The Guarantors agree that the Obligations will be paid and performed strictly in accordance with their respective terms ***regardless of any law***, regulation ***or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Indemnities with respect thereto. The Guarantors waive … protest…and all suretyship defenses generally.*** Without limiting the generality of the foregoing, the ***Guarantors … agree that the obligations of Guarantors hereunder shall not be released or discharged, in whole or in part, or otherwise affected by*** … (iii) any ***rescissions***, waivers, amendments or ***modifications of any of the terms or provisions*** of any agreement evidencing, securing or otherwise executed in connection with any of the Obligations; … (vii) ***any other act or omission which might in any manner or to any extent vary the risk of the Guarantors or otherwise operate as a release or discharge of the Guarantors***, all of which may be done without notice to the Guarantors.
>
> 4. <u>ENFORCEABILITY OF OBLIGATIONS AGAINST PURCHASER AND INDEMNITOR.</u> ***If for any reason the Company, the Purchaser or the Indemnitor …is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Company, the Purchaser or the Indemnitor by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantors to the same extent as if the Guarantors at all times had been the principal obligor on all such Obligations***. In the event that acceleration of the time for payment of the Obligation is stayed … for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing … any of the Obligations shall be immediately due and payable by the Guarantors.

*Guaranty, Ex. A, (emphasis added).*

Put simply, the Bradleys expressly waived all of the legal arguments CPS asserts in its action with Pardee. Assuming *arguendo* CPS prevails on any of those arguments, that will not undermine Pardee's rights in this "absolute" and "unconditional" Guaranty, so the action should proceed now.

## V. ARGUMENT

### A. <u>Pardee's Action is Ripe and the Fed.R.Civ.P. 12(b)(6) Motion Fails.</u>

The Bradleys do not, and cannot, argue that events covered by their guarantee to Pardee have not occurred. Nor can the Bradleys contend that under the plain language of the Guaranty Pardee is not now entitled to recover under that Guaranty.[6] Instead, the Bradleys rely on inaccurate statements of fact and inapposite judicial decisions in an attempt to convince this Court to dismiss Pardee's complaint.

The Bradleys cite a slew of cases purportedly standing for the proposition that indemnification claims are unripe until there has been a determination of liability or a settlement payment in an underlying action. The Bradleys neglect to inform the court that the cases they cite involve equitable, non-contractual indemnification or contracts indemnifying against loss rather than providing a defense against liability as does the Guaranty and the underlying indemnification. Moreover, in none of these cases did the obligor expressly waive the right to rely on a stay, or otherwise so comprehensively waive defenses as the Bradley's have done here.

Ripeness determinations are highly individualized. *<u>State of Rhode Island v. Narragansett Indian Tribe</u>, 19 F.3d 685, 693 (1st Cir.), cert. denied, 513 U.S. 919 (1994).* The Bradleys ignore this guidance and argue as if there is a cookie cutter, one-size-fits-all approach without regard to the specific contract language alleged here. The applicable case law demonstrates that

---

[6] Pardee clearly has incurred indemnified costs and expenses to defend against indemnified liability. Thus far that defense has resulted in dismissal of one action and summary judgment on another in Pardee's favor.

contractual indemnification against liability—as is provided by the Bradleys' Guaranty—does not require a finding of liability or a settlement payment for the Guaranty to be operative.

The Bradleys guaranteed an indemnification defending Pardee and holding him harmless from and against not only "losses, damages . . . and settlement payments," but also against "liabilities, obligations and claims of any kind." This indemnification includes, without limitation, reasonable attorneys' fees. Significantly, and contrary to the fact scenarios in the cases cited by the Bradleys, the Guaranty does not require a finding of liability or settlement payment in order to be effective. By its express terms, the Guaranty is of payment and not merely of collectibility, significantly expanding the Guaranty's scope. Further, the Guaranty expressly provides for payments from time to time, a contractual provision the parties were entitled to, and did, include in their contract. To require finality of ***all*** underlying litigation before Pardee's rights under the Guaranty ripens would render that provision meaningless in contravention of the axioms of contractual interpretation, especially where the major litigation is concluded in Pardee's favor.

The Bradleys are not entitled to delay this action on ripeness grounds. Distilled, the Bradleys fail to apply the proper ripeness standard in their motion to dismiss under Rule 12(b)(6). The Bradleys urge this Court to apply ripeness criteria inapplicable to the express, contractual guaranty of defense against liability at issue here. The Bradleys rely on cases involving enforcement of government regulation, implied (as opposed to express) indemnification, indemnification against damages (rather than defense against liability), and even go so far as to cite Racketeer Influenced and Corrupt Organization cases where liability was contingent on the results of actions in other courts. This memorandum sets forth the appropriate authority.

Where a duty to defend is implicated, a dispute over that duty will be considered "independent of the facts of the underlying causes" and will be deemed ripe. *AC and S, Inc. v. Aetna Casualty & Surety, 666 F.2d 819, 823 (3rd Cir. 1981)(contractual claim for defense held ripe); cf. Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 650 (3rd Cir. 1990)(distinguishing the ripeness of contractual duties to indemnify and defend under cases such as AC and S, Inc. from actions involving the mere allegation of a common law indemnification).*[7]

In Rhode Island, "[c]learly, a right to indemnification can be created by express contract. Independent of other duties and obligations, the indemnitor can expressly agree to save and hold the indemnitee harmless against any loss, damage, and/or liability." *A and B Construction, Inc. v. Atlas Roofing and Skylight Co., 867 F. Supp. 100, 106 (D.R.I 1994, Lagueux, C.J.)("Consistent with this majority approach, Rhode Island courts enforce express contractual indemnification provisions . . . ").*[8] The facts in *Molex Inc. v. Wyler, 334 F. Supp. 2d 1083 (N.D. Ill. 2004)* are similar in important respects to the instant case. There, a defendant brought a motion under Rules 12(b)(1) and (6) to dismiss an action in Illinois seeking defense and indemnification pertaining to a Massachusetts action under a contract involving sale of a Massachusetts corporation. The court found that the issue of whether the alleged indemnitor was obligated to "reimburse [the plaintiff] for its on-going defense costs in the Massachusetts litigation was ripe for determination before the conclusion of the Massachusetts litigation. *Id. at 1086*. The court considered ripeness of the plaintiff's breach of contract claims on a contractual duty to defend. The court held that those claims were ripe based on allegations that the plaintiff

---

[7] The *Step-Saver* case, contrary to the Bradleys' assertions, clearly states that had the facts of that case created "a duty to defend, as opposed to a duty to pay," the Third Circuit would have found the case ripe. *Step-Saver, 912 F.2d at 652.*

[8] The Bradley's reliance on the Rhode Island Supreme Court's ruling in *Muldowney v. Weatherking Products, Inc., 509 A.2d 441 (R.I. 1986)* epitomizes the inapplicable nature of many of the Bradleys' citations, because not only does that case not involve ripeness it arises from factual allegations that do not even support indemnification. *Id. at 443-44.*

"has already and will continue to incur expenses in the Massachusetts [sic] based on [the defendants'] alleged breach of his duty to defend." *Id. at 1089.*

A like result was reached in another case similar to the instant one, namely, *WMX Technologies, Inc. v. Jackson, 168 F.R.D. 64 (M.D. Ala. 1996)*. That action arose from acquisition by the plaintiff of the defendant's stock and interest in various business operations and assets. *Id. at 65*. The complaint alleged, among other things, that the parties disputed whether the plaintiff was entitled to indemnification for losses, whether the plaintiff had engaged in bad faith dealings, whether the defendant should defend the underlying claims and actions which gave rise to plaintiff's demand for indemnification, and whether the defendant should be indemnified by the plaintiff. *Id. at 66 n.3*. The court found that the allegations alleged a "live controversy which is ripe for decision" and denied the defendant's motion to dismiss. *Id. at 66; see also Metayer v. PFL Life Ins. Co., 30 F.Supp.2d 57, 58-59 (D.Me. 1998)("a district court in the First Circuit implicitly held that an indemnification claim is ripe when the relevant action determining liability is still pending"), citing Providence Journal Co. v. The Travelers Indemnity Co., 938 F.Supp. 1066, 1080 (D.R.I. 1996)*. Guarantees such as the one at issue here are sometimes called the "paramount obligation." *Nation Wide, Inc. v. Scullin, 256 F. Supp. 929, 932 (D.C.N.J. 1966)*. They will not be lightly deferred on a claim of unripeness. See, e.g. *In the Matter of Lloyd E. Hill, Debtor, 5 B.R. 79 (Bankr. Minn. 1980)*, where the debtor issued a guarantee and responded to a state court action with "certain defenses and counterclaims . . . of payment, of breach of contract, of lack of consideration, and . . . undue influence and economic duress." *Id. at 82*. The court was not persuaded by a contention that the action on the guarantee was unripe. "The mere fact of the pendency of the undecided litigation with respect to defenses and claims is not directly relevant to the issues presented . . . [the contention of the debtor] that

the obligation under the guarantee is not ripe because allegedly conditional and in the nature of an indemnity is not well taken. The guarantee by its own express terms is 'an absolute continuing guarantee.' Even without that expression, in the absence of some express qualification, the guarantee would have to be treated as an absolute one." *Id.; see also Thomas H. Lee Equity Fund V., L.P. v. Bennett, 2007 WL 950133, Slip Op. (S.D.N.Y. March 28, 2007)(finding enforcement of personal guarantee ripe despite no attempt to collect from primary obligor, because the guarantee was of payment, not merely of collection).*

As these cases make clear, when the guarantee at issue is an absolute guarantee, an action to collect pursuant to that guarantee will not be defeated based on the pendency of underlying actions because of ripeness. As more fully outlined above, the Guaranty at issue in the instant action is, likewise, of payment and thus ripe for adjudication without regard to the status of the underlying claim against CPS. *Id., Slip Op. at 3-4*. There is nothing novel in this result. *See Battery Associates, Inc. v. J & B Battery Supply, Inc., 944 F.Supp. 171, 178 (E.D.N.Y. 1996) and Consolidated Rail Corp. v. Primary Indus. Corp., 901 F.Supp. 765, 770 (S.D.N.Y.1995)("The desire to avoid having to [wait in line with other creditors to collect] is precisely the reason why guarantees are sought in the first place.").*

Moreover, although not necessary under the Guaranty at issue in the instant case, the underlying cases have concluded in Pardee's favor.[9] Thus, even if the Court were to accept the authority cited by the Bradleys—and under applicable law cited in this opposition—Pardee is entitled to the benefits of the Guaranty.

Considering all the factors discussed above—especially the summary judgment and dismissal in Pardee's favor of the California actions, the Bradleys' contention that Pardee's claim

[9] Under Rhode Island law, the pending appeal in one does not undercut its finality for these purposes.

for indemnification under the Guaranty is not ripe for adjudication is clearly wrong. *See, e.g., Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 542-43 (D.R.I. 1995).*

**B. Neither the CPS Stay Order Nor Any Dispute about the CPS Indemnification Undermines the Ripeness in the Instant Case.**

The CPS litigation currently is stayed pursuant to an opinion from which the Bradley motion quotes liberally. Key distinctions exist, however, between the instant case and CPS case. First, the status of the major underlying cases has changed dramatically from when Judge Lagueux issued his 2004 Order. In one of those cases Pardee has been voluntarily dismissed with no finding of liability (and no payment) and in another Pardee has won summary judgment on the undisputed facts, as set forth in that court's order, that the Bradleys—the Guarantors in the instant case—are the reason for the underlying litigation. Second, the CPS case involved a different instrument with different terms. It is key that, as set forth above, many of the supposed defenses CPS has to Pardee's claim were simply contracted away by the Bradleys in signing the Guaranty. Even if CPS ultimately prevails on one of its alleged defenses, because those defenses are so generally and completely voided in the "absolute" and "unconditional" Guaranty, Pardee will nonetheless prevail on the Guaranty. While Pardee remains convinced that some of the underlying analysis applicable to the Guaranty here also applies to the indemnification there, it is clear that the two cases are sufficiently distinct in their facts, terms, available defenses and in the parties involved, that any adverse ruling in the CPS case would not prevent this Court from ruling in Pardee's favor on the Guaranty.

The Guaranty makes clear that indemnification from Defendant is in no way dependent upon, or linked to, whether Pardee seeks or obtains indemnification from CPS. As the Guaranty expressly provides, "This Guaranty . . . is in no way conditioned upon any requirement that the Indemnitees first attempt to collect any of the Obligations from the Company, the Purchaser or

the Indemnitor . . ." *Ex. A, Guaranty, ¶ 1*. Moreover, the Bradleys are not parties to the Stock Purchase Agreement or the CPS Action. CPS is not a signatory to the Guaranty. Clearly, the parties, terms, instruments and issues among all of these suits are substantially different, so no stay is warranted here.[10]

The parties expressly agreed that "Payments by the Guarantors hereunder may be required by the Indemnitees on any number of occasions."[11] *Id.* The Court must give effect to, and not simply disregard, this language. *See Clauson v. New England Ins. Co., 83 F. Supp. 2d 278, 281 (D.R.I. 2000) (contract "should be construed in a manner that harmonizes and gives effect to all of its material terms and avoids rendering any of its provisions meaningless")(citing Psaty & Fuhrman, Inc., 68 A.2d at 35).* The Bradleys advocate a position that would render this contract provision meaningless. Moreover, where "the duty to indemnify arises out of contract instead of as a matter of law, 'the question of whether actual liability is a prerequisite to the duty to indemnify is answered by reference to what the parties, by virtue of their contractual capacity, intended, as reflected in the language of the indemnity clause.'" *Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1094 (1st Cir. 1989).* Accordingly, the 2004 decision to stay the CPS action does not prevent this action from moving forward because the parties to the Guaranty agreed otherwise.

---

[10] Obviously, because of the differences in the instruments involved, it is important for this Court to conduct a *de novo* review of the ripeness of issues under the Guaranty. Terms of relevance to ripeness which are unique to the Guaranty (*i.e.*, are not relevant in the CPS Stock Purchase Agreement indemnification litigation) include the provision that payment of Defendant's indemnification obligations "may be required . . . on any number of occasions," and the provision that Mr. Pardee is not required to first seek payment by CPS or anyone else under the Stock Purchase Agreement before demanding payment by Defendant. Under the facts of this case and the Guaranty, Mr. Pardee's claims are ripe for adjudication and Mr. Pardee is entitled to immediate payment of Defendant's obligations under the Guaranty.

[11] Parties may agree on terms which alter the rights they might otherwise have under common or statutory law. *Psaty & Fuhrman, Inc. v. Housing Authority of Providence, 68 A.2d 32, 36 (R.I. 1949) ("The parties to a contract are free to agree upon any terms that are not illegal."); see also Faraj v. Allstate Ins. Co., 486 A.2d 582, 586 (R.I. 1984).*

The Bradleys' citation to *CPS* also is misplaced to the extent the Bradleys would have this court apply to the Guaranty the standard that a claim for indemnity arises when "the indemnitee's liability is fixed either by entry of judgment . . . or by settlement . . ." *Pardee v. Consumer Portfolio Services, 344 F.Supp.2d 823, 836 (D.R.I. 2004).* The parties, by agreement, clearly modified any such limitation by the broad waivers of defenses on the Guaranty which are asserted by CPS to be available on its indemnification obligation. Moreover, the authority set forth in this memorandum clearly establishes that a different standard applies here.

Even assuming, however, for the sake of argument that the same standard applies under the Guaranty, Pardee's claim satisfies this requirement at least with respect to the completed California actions.[12] The Guaranty authorizes Pardee to demand payment "on any number of occasions." *Complaint at 9, ¶19; Ex. A, Guaranty at ¶1.*

**C. The Bradleys Waived the Benefits of Any Stay and the CPS Stay Order Is Not Res Judicata**

***1. The Bradleys Expressly Waived The Right To Rely Upon the CPS Stay***

As discussed above, the Bradleys expressly waived the right to seek dismissal or stay of this action and "all defenses which may be available by virtue of any . . . stay . . . in effect." *Complaint; Ex. A, Guaranty.*

---

[12] The appeal of one of the California actions notwithstanding, that summary judgment is still considered "final" for determining whether Plaintiff's claims for indemnity are ripe under Rhode Island law. Rhode Island generally considers an appealed judgment "final." *Perez v. Pawtucket Redevelopment Agency, 302 A.2d 785, 791-92 (R.I. 1973) ("[o]n balance, we think the hazard of undue delay, with its potential of numerous trials and appeals, far outweighs the occasional risk of reversal which may be inherent in our adoption of what has been described as the majority rule").*

### 2. *The CPS Stay Order Is Not A Final Ruling On The Merits*

Only a prior proceeding which "resulted in a final judgment or order on the merits" may have res judicata effect. An order staying proceedings is an interim, not a final, order, and therefore has no res judicata effect. The CPS 2004 decision makes it abundantly clear that the ruling is ***not*** a ruling on the merits of the case. Indeed, the very rationale for the stay was ***to put off making such a ruling***. *Pardee v. Consumer Portfolio Services, Inc., 344 F. Supp. 2d 823, 838 (D.R.I. 2004) ("CPS")*. There is no "final order", no "ruling on the merits," and no res judicata.

### 3. *There Is Not Identity of Issues Between the CPS Stay and this Motion.*

The 2004 motion to stay the *CPS* action posed the issue of whether the outcome one of ***the then pending California actions*** and the Connecticut Action might affect the indemnification obligations ***of CPS*** under the ***Stock Purchase Agreement***. *See CPS, 344 F. Supp. 2d at 828 & nn. 2&3, 837-38).* The *CPS* decision did not consider ***the Bradleys' liability*** on the ***Guaranty.*** It did not consider the existence of the other California action at all. Because the suite of litigation facing Pardee is so dramatically different from that considered by Judge Lagueux, the issues he considered, definitionally, cannot be identical to the ones before this Court. Nor did the court consider the impact on the stay of the Guaranty's provision that claims were to be paid "on any number of occasions;" that term is not found in the Stock Purchase Agreement entered into by CPS. *Compare Ex. A, Guaranty ¶1 and Ex. B, SPA).*

## D. The Bradleys' Frivolous Reasons for Failing To Honor The Guaranty Underscore Why Their Day of Reckoning Should Not Be Further Delayed

The Bradleys and CPS have contended that Pardee allegedly committed "misrepresentation" through a purported failure to inform CPS and/or the Bradleys that the

acquired company's Treasury bond assets could not be lost with impunity and that the company could not with impunity renege on its underlying obligations to Payees. Of course, in the first instance, not only does no such "mispresentation" exist, but in light of the fact that this matter is before the Court on Defendants' Motion to Dismiss in Lieu of Answer, this Court must accept all well-pled allegations of the Complaint as true. *Thompson, 300 F.3d at 753*. Regardless, CPS's ligations under the SPA and the Bradleys' obligations under the Guaranty are independent. The Bradleys' Guaranty obligations are triggered by "…any failure to fulfill any obligation of the Sellers, the Company and/or the SSTAI Trust to any Payee as and when due at any time after the closing date." *Complaint at 9, ¶ 18; Ex. B, SPA at p. 27, ¶ 9.02(a) (vii)*. Further, Pardee's ***only*** alleged affirmative representation was true, as the Bradleys have admitted.[13] In sum, there was no failure in Plaintiff's representations, but rather a failure by the Bradleys, as described in the summary judgment order quoted above.[14]

**E. Mr. Pardee Will Suffer Severe Hardship If This Action Is Stayed**

The Bradleys are wrong both legally and factually to claim that a stay or dismissal will not prejudice Pardee. Pardee has paid out millions of dollars in defense costs subject to the Guaranty and needs to be reimbursed now. The effect of the Bradleys' motion would be to deprive Pardee of his immediate right to payment under the Guaranty, *i.e.*, to indemnification of

---

[13] Specifically, Pardee is alleged to have represented that the Treasury Bonds belonged to the company (with the Payees having no ownership interest and being general creditors of the company) and could be hypothecated as security for loans to the company. In fact, the Bradleys used the company's assets as collateral for loans of approximately $98,000,000 to the company, then reinvested the loan proceeds in a risky, failed investment "strategy" which caused the company to default on payments to Payees and led the company into bankruptcy.

[14] In a related, but no less unsupportable argument – which has already been adjudicated favorably to Pardee by a California court—the Bradleys assert that a letter sent to Purchaser *(i.e.,* not the Bradleys) by a law firm representing Pardee in connection with the SPA contained a misrepresentation. As Judge Lichtman wrote, "The letter provided, among other things, as follows: 'Reliance Upon Opinion. This Opinion may be relied upon by you [Buyer] only in connection with the Transaction and may not be used or relied upon by you or any other person for any purpose whatsoever without in each instance our prior written consent . . . .'" *Stuber v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Superior Ct. of State of CA, BC 244111 (Lichtman, J.) (November 3, 2004) at 3, ¶ 5, Exhibit D ("Ex. D.")*. The Bradleys were not the Buyer in that Transaction, and therefore could not rely on that letter. *Id.* ("CPS was not an addressee of the letter, and . . . . was not the purchaser in the transaction. . . .").

over $3,000,000 that he has already incurred plus defense costs that he continues to incur, and to force Pardee to continue to bear these costs alone. Putting Pardee in such a situation is unwarranted and contrary to both the intent and express term of the Guaranty. The Bradley's motion would unfairly perpetuate this hardship indefinitely.

The severity of the prejudice to Pardee is obvious. Requiring an individual to absorb and carry such a burden over an extended period of time undermines the purpose and value of guarantees in all situations, discouraging the transactions those guarantees facilitate. Just as uncertainty about (for example) a future interpretation of a land use ordinance could chill a corporation's willingness to invest in development of a parcel of land, uncertainty about (and delays in) enforcement of guarantees could chill the willingness of a party to a transaction to proceed with that transaction or to take a course of action the cost of which should be reimbursed under a guarantee.

## VI. CONCLUSION

For the foregoing reasons, this Court should deny the Bradleys' motion in its entirety.

Plaintiffs,
By their attorneys,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION

I hereby certify that the within has been electronically filed with the Court on this 27th day of April, 2007, is available for viewing and downloading from the ECF system, and that the counsel of record listed below will receive notice via the ECF system:

Christopher H, Little, Esq.
clittle@lmkbw.com

SCOTT K. POMEROY, ESQ.
spomeroy@lmkbw.com

*/s/ Marc DeSisto*

Marc DeSisto