# Exhibit C

COPY

René P. Tatro (SBN 78383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
660 S. Figueroa Street, Suite 1450
Los Angeles, CA 90017
Telephone: (213) 225-7171
Facsimile: (213) 225-7151

Attorneys for Defendant
JONATHAN H. PARDEE

ORIGINAL FILED
DEC 07 2005
LOS ANGELES
SUPERIOR COURT

RECEIVED
DEC 06 2005
Dept. 322

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| TAKAKO HAWKINS, CLIVE HAWKINS, and THE ESTATE OF THELMA JEAN FENTER<br><br>Plaintiffs<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED; MERRILL LYNCH & CO., INC.; MERRILL LYNCH LIFE AGENCY INC.; BEAR STEARNS & CO., INC.; SETTLEMENT SERVICES, INC.; JONATHAN H. PARDEE; MERRILL LYCH INSURANCE GROUP, SERVICES, INC. and DOES 1 through 100, inclusive,<br><br>Defendants | Case No. BC 279691<br><br>**[~~PROPOSED~~] ORDER GRANTING JONATHAN H. PARDEE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**<br><br>DATE: December 7, 2005<br>TIME: 10:30 a.m.<br>PLACE: Department 322<br><br>Hon. Peter D. Lichtman |

This matter came on for hearing on December 7, 2005. Having considered all pleadings and filings relating to the Motion for Summary Judgment or, in the Alternative, for Summary Adjudication of Issues of defendant Jonathan H. Pardee ("Pardee"), as well as all other pleadings and prior proceedings in this matter, and having received oral argument on the foregoing matters, the Court hereby **GRANTS** Pardee's motion for summary judgment on the grounds that there is no triable issue as to any material fact and Pardee is entitled to a judgment as a matter of law (Civ. Proc. Code § 437c(c)), and further makes the following findings and rulings:

1. Plaintiffs' cause of action for breach of contract fails, as a matter of law:

   a. Pardee was not a party to the contracts at issue (*i.e.*, the Hawkinses' Settlement Agreement & Assignment and Assumption Agreement, and Fenter's Settlement Agreement & Assignment and Assumption Agreement), and as such, cannot be liable for their alleged breach. Plaintiffs admit that Pardee was not a party to the contracts at issue in response to Facts nos. 12 and 13 in Pardee's Separate Statement of Undisputed Material Facts and Supporting Evidence. (Second Amended Complaint ("SAC") ¶¶ 27, 31; Declaration of Jonathan H. Pardee ("Pardee Decl.") ¶ 4 and Exs. A-D; Declaration of Juliet A. Markowitz ("Markowitz Decl."), Exs. A & B, Response to Request For Admissions Nos. 4 and 6). *Tri-Continent Int'l Corp. v. Paris Sav. & Loan Assoc.*, 12 Cal. App. 4th 1354, 1359 (1993) (one "cannot assert a claim for breach of contract against one who is not a party to the contract.").[1]

   b. Pardee was not the successor-in-interest to any party to the contracts at issue

      i. The general rule concerning successor-in-interest liability is as follows:

---

[1] Plaintiffs inscrutably allege that "[t]o the extent the TIGRs [Treasury Investment Growth Receipts] were not held in plaintiffs' name, but were purchased in the name of the Settlement Company, plaintiffs were third party beneficiaries of the TIGRs . . . ." (SAC ¶¶ 58, 60.) This is facially nonsensical, as the TIGRs are not a contract to pay Plaintiffs anything; rather, like a stock or bond, they are simply a right held by the owner of that investment. In any event, Plaintiffs have admitted that the contracts to which they are alleged third-party beneficiaries are merely the very settlement contracts to which they are parties. Plaintiffs' third-party beneficiary claim is thus legally vacuous. Plaintiffs are direct, not third-party, beneficiaries of their own contracts.

> The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, *the latter is not liable for the debts and liabilities of the transferor.* [ ] This rule has frequently been applied to actions for damages for breach of contract [ ] at least where the claim is not a lien on the property at the time of the sale and transfer,[ ] and where the transfer is made in good faith and for fair consideration.

Fletcher Cyclopedia of the Law of Private Corporations, W. Fletcher (1995 Westlaw) (fns omitted).

ii. Under California law, which adopts this "general rule," a corporation purchasing the assets of another corporation does not assume the seller's liabilities unless "[1] the transaction amounts to a consolidation or merger of the two corporations, [2] the purchasing corporation is a mere continuation of the seller, or [3] the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (1977); *Beatrice Co. v. State Bd. of Equalization*, 6 Cal.4th 767, 778 (1993).

iii. Cal. Corp. Code § 2011(a)(1)(B), moreover, provides that a shareholder, like Pardee, can be liable as a successor of a dissolved corporate entity only to the extent of the corporate assets received by the individual shareholder in the dissolution.

iv. It is undisputed that no such circumstance is present here. The undisputed facts, as set forth in the Pardee Decl., as well as in Plaintiffs' SAC, are that Pardee never entered into any agreement with the Assignment Company[2] with whom Plaintiffs contracted or with any party to the contracts pursuant to which he agreed to be its successor-in-interest, much less to accept as his own the liabilities of such party. (Pardee Decl. ¶¶ 5, 6). During the time that Pardee was the majority shareholder and president of the Assignment Company – *i.e.*, from March 1, 1993 to May 20, 1997 (Pardee Decl. ¶ 2, 15; SAC ¶ 40) – the Company continued to exist as a separate legal entity, with its own

[2] "Assignment Company" as used herein means the company with whom Plaintiffs contracted, regardless of any subsequent name changes, in accordance with Plaintiffs' SAC ¶ 40.

rights and obligations, separate and apart from Pardee. (Pardee Decl. ¶ 6; SAC ¶ 49). Although it went through several name changes, the Assignment Company with whom Plaintiffs contracted never dissolved; as Plaintiffs admit, it continued to exist as of the filing of Plaintiffs' SAC in this action – several years after Pardee sold his shares in the company and ceased all involvement, the company filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut, a stay is in effect, and it cannot be sued in this action. (SAC ¶ 50; Pardee Decl. ¶¶ 6, 15, 16).

c. Pardee was not the alter ego to any party to the contracts at issue.

i. The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842 (1962). "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 529 (2000). It requires evidence of "such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." *Talbot v. Fresno-Pacific Corp.*, 181 Cal.App.2d 425, 431 (1960) (emphasis added).

ii. In *Associated Vendors*, 210 Cal. App. 2d 825, 838-40 (1962), the California Court of Appeal identified 14 factors bearing on alter ego liability; the undisputed facts show these factors are absent here. The undisputed evidence is that none of the following occurred as between Pardee and any party to the contracts at issue here: commingling of funds or assets; a failure to segregate individual funds from those of the corporation; unauthorized diversions; treatment of corporate assets as the shareholder's own; failure to seek authority to issue more stock; failure to maintain minutes or records; intermingling of individual and corporate records; use of a single

address for the shareholder and corporation; concealment of ownership; disregard of formalities; attempts to make the corporation liable for a shareholder's personal debts. (Pardee Decl. ¶ 5; Supplemental Declaration of Jonathan H. Pardee ¶¶ 2-4).

d. The Assignment Company's conduct in directing the sale of the TIGRs was not a breach of the contracts by the Assignment Company, much less by Pardee.

i. The contracts do not contain any provisions prohibiting such sale. (Pardee Decl., Exs. A-D). While they provide for the purchase of the TIGRs, nowhere do they obligate the Assignment Company to hold the TIGRs for any period of time, nor do they prohibit the Assignment Company from selling the TIGRs prior to maturity, in order to, *e.g.,* realize an investment gain and reinvest the proceeds in a conservative, professionally managed, investment portfolio. The parties knew how to prohibit sale of the TIGRs before maturity, if that had been their intent; the agreements do expressly prohibit the liquidation, as well as the reinvestment, of the other funding instruments composing plaintiffs' settlements (annuities in the case of the Hawkinses, and treasury bonds placed in trust in the case of Fenter). (*Id.*) It is undisputed that they did not include any such prohibition on the sale of the TIGRs. Thus, a sale of the TIGRs prior to maturity is not a breach of the contracts by the Assignment Company, much less by its shareholder and officer, Pardee.

ii. The contracts explicitly provide that Plaintiffs "shall have no legal or equitable interest, vested or contingent, in the ...[TIGRs] and [Plaintiffs'] rights against [the Assignment Company] ... shall be solely those of a creditor." (Pardee Decl., Ex. A at 9; Ex. C at 7).

iii. Plaintiffs contractually agreed that they were to receive the specified payments the Assignment Company agreed to pay to them; they were never to be given physical possession of the TIGRs. (Pardee Decl., Exs. A-D).

iv. Plaintiffs entered into the Agreements expressly representing, in writing, that they received independent legal advice regarding, and had a full understanding of, the meaning and ramifications of their agreements with the Assignment Company. (Pardee

Decl., Ex. A at 12; Ex. C at 9). Ms. Hawkins' lawyer also made an express representation that he had "fully explained" to her the terms of the contract. (Pardee Decl., Ex. A at 14). Those terms include: (i) the agreements' unambiguous provision that the Assignment Company alone was their obligor; (ii) the stark contrast between the protections afforded plaintiffs' TIGR payments, on the one hand, and their annuity payments (in the Hawkinses' case) or treasury bond trust payments (in Fenter's case), on the other; and (iii) the express warning that in the event the Company failed, Plaintiffs' rights would be solely those of creditors. (Pardee Decl., Exs. A-D).

v. Because Plaintiffs' structured settlement contracts are written agreements, "the intention of the parties is to be ascertained from the writing alone." Civ. Code § 1639; *id.* § 1625 ("The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."). This is particularly true where, as here, the written agreements expressly state that they constitute the entire agreements with regard to the matters set forth in them. (Pardee Decl., Ex. A, ¶ 7 at p.11; Ex. C, ¶ 7 at p.9). *See Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 344 (2004) ("[T]he act of embodying the complete terms of an agreement in a writing (the 'integration') *becomes the contract of the parties. . .* [E]xtrinsic evidence cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because *as a matter of law the agreement is the writing itself.* Such evidence is legally irrelevant and cannot support a judgment.").

vi. An alleged oral agreement to hold the TIGRs until maturity, moreover, could not by its terms be performed in a year; it thus is invalid under the statute of frauds. Cal. Civ. Code § 1624(a)(1).

e. Pardee did not breach the contracts at issue by allegedly "using the proceeds for his own benefit." (SAC ¶ 59).

i. The undisputed evidence establishes that Pardee did not take or use any of the proceeds from the sale of the TIGRs for his own personal gain. (Pardee Decl. ¶ 9). Rather, as the president of the Assignment Company, he directed that all of the proceeds of the sale be reinvested in the company's conservative, professionally managed investment portfolio, in a manner that would enable the Assignment Company to meet its contractual obligations to Plaintiffs. (*Id.*) Indeed, these efforts were successful, in that sufficient assets existed in the Assignment Company at all times during Pardee's tenure to satisfy all payment obligations, including all future obligations to Plaintiffs. (Pardee Decl. ¶¶ 10, 11). When the Assignment Company was sold in 1997, and Pardee's involvement with the Company ceased, the Company had more than sufficient funds to satisfy the contractual obligations to Plaintiffs here, regardless of any interim investments selected by the Assignment Company. (*Id.*)

f. Pardee did not breach the contracts at issue by allegedly "failing to make the settlement payments owed to Hawkins." (SAC ¶ 59).

i. The undisputed evidence establishes that Pardee no longer owned stock in the Assignment Company, or otherwise had any involvement with the Assignment Company, after 1997. (Pardee Decl. ¶ 15). Thus, when the Assignment Company breached its obligation to make payments to the Hawkinses under the Assignment Agreements in 2002 (SAC ¶ 32), Pardee no longer had any ownership or other interest in the Assignment Company. (*Id.*) There is no legal basis for imputing liability to Pardee for the Assignment Company's failure to make settlement payments five years after Pardee had ceased all involvement with the Company.

ii. Plaintiffs allege that the obligations under the contracts remained with the Assignment Company (then called Settlement Services Treasury Assignments, Inc. ("SSTAI")) after Pardee sold his stock in and ceased his involvement in 1997, not with Pardee: "On or about November 15, 2000, SSTAI defaulted on its obligations to make payments to structured settlement payees including plaintiff Thelma Fenter." (SAC ¶ 49). They

further allege that they cannot sue the Assignment Company for that breach because it filed bankruptcy and a stay is in effect: "On June 25, 2001, SSTAI dba Stanwich filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut, a stay is in effect, and Stanwich cannot be sued in this action." (SAC ¶ 50).

g. The conduct which Plaintiffs allege amounted to a breach of contract in this action was not the proximate cause of their damage.

i. "Where, as here, there is no triable material fact on the issue of causation, it is a question of law properly determined on a motion for summary judgment." *Visueta v. General Motors Corp.*, 234 Cal. App. 3d 1609, 1616 (1991) (citing cases).

ii. "Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997). To be a proximate cause of loss or damage, the conduct at issue must be a "but for" cause – conduct, of course, is not a "factor" at all in bringing about a harm if the harm would have happened even if the conduct alleged to be wrongful had never occurred. *Viner v. Sweet*, 30 Cal.4th 1232, 1239-40 (2003). Not only must the conduct be a "but for" cause, to be a proximate cause of loss or damage, the allegedly wrongful conduct *also* must be a "substantial factor" in bringing about that loss or damage. *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1052-53 (1991). Thus, even if conduct is a necessary part of the chain of events, it must be a substantial factor which, for purposes of causation, is something that is more than "'a slight, trivial, negligible, or theoretical factor in producing a particular result.' [Citation.]" *Espinosa v. Little Co. of Mary Hospital*, 31 Cal. App. 4th 1304, 1314 (1995).

iii. As is shown by the uncontroverted facts, both elements are missing in this case. The TIGRs were sold in 1993. (Pardee Decl. ¶ 8). The stock of the Assignment Company – including Pardee's stock – was sold on May 20, 1997 to the Bradley entities. (Pardee

Decl. ¶ 15). At that time, the Assignment Company had sufficient assets with which to satisfy all future payment obligations, including those due to Plaintiffs under the Agreements. (Pardee Decl. ¶ 11). After that date, Pardee had no further involvement in or dealings with the Assignment Company or the Bradley entities. (Pardee Decl. ¶ 15). Plaintiffs allege that more than three years later, "[o]n or about November 15, 2000, [the Assignment Company] defaulted on its obligations to make payments to structured settlement payees including plaintiff Thelma Fenter." (SAC ¶ 49). Thereafter, on or about June 25, 2001, the Assignment Company filed a voluntary chapter 11 bankruptcy. (*Id.*; SAC ¶ 50).

iv. There is no evidence that but for Pardee's allegedly wrongful conduct (*i.e.*, as president of the Assignment Company directing that the TIGRs be sold), the harm to the Plaintiffs would not have happened just as surely as if the TIGRs had not been sold. It would be sheer speculation to say that "but for" Pardee's direction to have the TIGRs sold and the proceeds reinvested in the Assignment Company's portfolio, the subsequent owners of the Assignment Company would not have forced the Assignment Company into bankruptcy in 2001. That could and would have happened, even if Pardee, as president, had not given the supposedly wrongful directions.

v. However, even if Pardee's alleged conduct in 1993 with respect to the sale of the TIGRs was a *necessary* part of the causal chain (it was not), it was by no stretch of the imagination a "substantial" one. As the undisputed facts establish, Plaintiffs' causes of action against Pardee are all premised on the sale of TIGRs nine years (or more) before the Assignment Company failed to comply with its contractual obligations to Plaintiffs in 2002. (SAC ¶¶ 28, 32, 49; Pardee Decl. ¶ 8).

vi. What harmed the Plaintiffs here was the failure by the Bradleys and the ultimate bankruptcy of the Assignment Company, not the sale of the TIGRs in 1993 by the Assignment Company or Merrill Lynch. The sale of the TIGRs was not a necessary part of the causal chain, but if it was, it was purely incidental. Even if the TIGRs had

never been sold, there was nothing in the Agreements to preclude the Bradley entities, once they owned the Assignment Company, from selling the TIGRs. (Pardee Decl., Exs. A-D ). There is nothing whatsoever to suggest that the same result – *i.e.,* the Assignment Company's bankruptcy and resulting default on Plaintiffs' payments – would not have followed if the TIGRs had not been sold in 1993, and instead were still assets of the Assignment Company when the Bradley entities acquired the Company in 1997.

i. As a matter of law, Plaintiffs simply cannot establish the causation element of their causes of action, because, even if the Assignment Company had *never* sold the TIGRs, once it filed bankruptcy in 2001, the Plaintiffs would not have had any access to the TIGRs or to their settlement payments, due in 2002 or later, and would be in the same position they are in now.

ii. Ultimately, Plaintiffs' allegations that the Assignment Company would not have breached its obligations to Plaintiffs if the TIGRs had not been sold in 1993 are "at best speculation." *National Medical Transportation Network v. Deloitte & Touche,* 62 Cal.App.4th 412, 438 (1998). Proof of causation, however, must be by "'substantial' evidence, and evidence 'which leaves the determination of these essential facts in the realm of mere speculation and conjecture is insufficient.' [Citations.]" *Leslie G. v. Perry & Associates,* 43 Cal. App. 4th 472, 484 (1996) (*Leslie G*).

2. Plaintiffs' cause of action for intentional interference fails as a matter of law:

a. Pardee, as a shareholder and an officer of the Assignment Company, is not, as a matter of law, personally liable for inducing the Assignment Company to breach its contracts with Plaintiffs.

i. Under the "manager's privilege," an agent of a corporation cannot be held liable for inducing the corporation's breach. *See Becket v. Welton Becket & Associates,* 39 Cal.App.3d 815, 823 (1974) ("The immunity of a corporate officer . . . from liability for the tort of inducing a breach of contract on behalf of the corporation is sometimes

referred to as the 'manager's privilege.'"). Consistent with the manager's privilege, under the "agent's immunity rule," "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 n. 4 (1994). Thus, "[i]t is . . . well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990).

ii. Although the Assignment Company is a signatory to Plaintiffs' Assignment and Assumption Agreements only – not the Settlement Agreements – because the contemporaneous agreements (Pardee Decl., Exs. A-B (Hawkinses) and Pardee Decl., Exs. C-D (Fenter)) "relat[e] to the same matters, between the same parties, and [were] made as parts of substantially one transaction, [they] are to be taken together." Cal. Civ. Code § 1642. *See also* Goodman *v. Severin*, 274 Cal. App. 2d 885, 895 (1969) ("[W]hen two or more written instruments are executed contemporaneously, with reference to each other, for purposes of attaining a preconceived objective, they must all be construed together and effect given if possible to the purpose intended to be accomplished; and this principle controls whether each of the several instruments was signed by all or only some of the parties to the transaction.").

iii. The obligations allegedly breached by the Assignment Company (*i.e.*, "plaintiffs will not receive the payments to which they are entitled") (SAC ¶ 53) are the very same obligations in the Settlement Agreement that were assigned to the Assignment Company by virtue of the Assignment Agreements. (Pardee Decl., Exs. B & D at ¶ 1 (Assignment Agreements "assign to" the Assignment Company "the obligations of [the settling defendants] to make the payments to the Plaintiffs . . . described in" the Settlement Agreements)). A party can no more interfere with a contractual obligation assigned to it than one that it undertook directly.

iv. Pardee's actions in connection with the sale of the TIGRs and the reinvestment of the proceeds from that sale were taken in his capacity as president of the Assignment Company, on behalf of the Assignment Company, and not on his own behalf or for his own personal benefit. (Pardee Decl. ¶ 9).

b. Pardee did not interfere with the contracts.

i. To succeed on their intentional interference claim, plaintiffs must prove the existence of "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).

ii. Plaintiffs claim that Pardee interfered with their settlement contracts by selling the TIGRs intended for plaintiffs' benefit and using the proceeds derived therefrom for his own benefit," as a result of which they "will not receive the payments to which they are entitled." (SAC ¶ 53).

iii. For the reasons explained in Sections 1.d-f, above, Plaintiffs' allegations do not and cannot establish a breach of the Agreements during any period in which Pardee acted or was involved with the Assignment Company, as a matter of law. It necessarily follows that, having failed to establish this requisite element, Plaintiffs' purported cause of action against Pardee for intentional interference with those Agreements therefore fails. *See Farmers Ins. Exchange v. State of California*, 175 Cal. App. 3d 494, 506 (1985) ("Plaintiffs cannot state a cause of actions for tortuous interference with contract . . . [where] [t]here was no breach. . . ."). *See also Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 55 (1998); *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 514, fn. 5 (1994) (elements of cause of action for intentional interference with contract include the "actual breach or disruption of the contractual relationship").

c. Plaintiffs cannot establish the requisite intent by Pardee to interfere with the contracts.

i. Plaintiffs cannot establish that Pardee's conduct was "designed to induce a breach or disruption of the" Agreements between Plaintiffs and the Assignment Company, a requisite element of Plaintiffs' claim. *Quelimane Co.*, 19 Cal. 4th at 55; *Applied Equip. Corp.*, 7 Cal. 4th at 514, n.5.

ii. Pardee did not direct the Assignment Company to sell the TIGRs for the purpose of "using the proceeds derived therefrom for his own benefit." (SAC ¶ 53). Indeed, Pardee did not, at any time, use the proceeds from the sale of the TIGRs (or any other assets) for his own benefit, or otherwise deplete these proceeds. (Pardee Decl. ¶ 9).

iii. Moreover, the Assignment Company's sale of the TIGRs was not intended to deprive Plaintiffs of their future settlement payments, but rather to make the Assignment Company's portfolio uniform and conservative. (Pardee Decl. ¶¶ 7-9; Declaration of Bernice Conn ("Conn Decl.), Ex. 42 (Pardee Depo) at 77:3-18, 84:17-23).

iv. That Pardee never intended to do any action that would result in a breach of the Agreements or interference with Plaintiffs' benefits thereunder is further established by the undisputed fact that, during Pardee's tenure as president of the Assignment Company, the Company always had sufficient liquid assets to make every settlement payment as and when due. (Pardee Decl. ¶ 10).

v. Pardee's lack of intent to interfere with Plaintiffs' rights and benefits is further established by the undisputed fact that, when the Assignment Company was sold in May 1997 and Pardee's involvement ended (four years after the sale of the TIGRs), the Assignment Company had sufficient assets with which to honor all future settlement obligations, including those due to the Plaintiffs under the Agreements. (Pardee Decl. ¶ 11). Pardee, moreover, sold his shares in the Company to a purchaser recommended to him by Bear Stearns as "an excellent owner;" indeed, Bear Stearns emphasized its "high regard for his business principles." (Pardee Decl. ¶ 13).

vi. Pardee's lack of intent is further evidenced by the undisputed facts that he took steps to record the Assignment Company's payment obligations to these particular Plaintiffs on

the Trustee's (Banker's Trust) books, as well as to provide records of the Assignment Company's future payment obligations to Plaintiffs to the future owners of the Assignment Company in connection with their due diligence. (Pardee Decl. ¶¶ 12-13 and Exs. E & G-I.).

vii. There is no evidence whatsoever from which a reasonable trier of fact could conclude that Pardee acted to intentionally interfere with Plaintiffs' Agreements. Accordingly, Plaintiffs' claim fails as a matter of law.

d. The conduct which Plaintiffs allege amounted to an interference with contract in this action was not the proximate cause of their damage.

i. For the reasons explained in Section 1.g, above, the conduct which Plaintiffs allege constituted an intentional interference with contract was not the proximate cause of Plaintiffs' damages. Accordingly, Pardee cannot be liable for interference with contract as a matter of law.

3. Plaintiffs' cause of action for fraud and deceit fails as a matter of law:

a. Pardee did not make any misrepresentations to Plaintiffs.

i. Plaintiffs allege Pardee "intentionally concealed from plaintiffs that he had acquired control of the TIGRs...; directed that the TIGRs be delivered, transferred, sold, traded, negotiated or otherwise liquidated; that the TIGRs had been sold; and that Pardee subsequently obtained and used the sales proceeds for his own benefit." (SAC ¶ 81).

ii. The elements of a cause of action for fraud are: (1) a misrepresentation; (2) knowledge of falsity or scienter; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Charpentier v. Los Angeles Rams Football Company, Inc.*, 75 Cal. App. 4th 301, 312 (1999).

iii. Under California law, deceit may consist of the suppression of a fact "by one who is bound to disclose it" or "who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ.Code § 1710(3).

iv. Here, it is undisputed that Pardee did not make any misrepresentations to Plaintiffs; indeed, he had no contact with them whatsoever before this litigation. (Pardee Decl. ¶ 4; Markowitz Decl., Exs. A & B, Hawkinses' Response to Request For Admissions Nos. 1 and 2.).

b. Pardee did not owe Plaintiffs a duty to disclose a material fact.

i. An intentional failure to disclose a material fact is actionable fraud "if there is a fiduciary relationship giving rise to a duty to disclose it." *Black v. Shearson, Hammill & Co.*, 266 Cal. App .2d 362, 367 (1968). *See also Weiner v.* Fleischman, 54 Cal.3d 476, 483 (1991) ("Although material facts are known to one party and not the other, failure to disclose them is ordinarily not actionable fraud unless there is some fiduciary relationship giving rise to a duty to disclose."); *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 517 (1980) (affirming dismissal of constructive fraud claim because no fiduciary relationship alleged).

ii. The Court previously ruled (when it sustained, without leave to amend, Pardee's demurrer to Plaintiffs' breach of fiduciary duty and constructive fraud causes of action), that Pardee – who never had any contact whatsoever with Plaintiffs prior to this lawsuit – was not a fiduciary of Plaintiffs. (Markowitz Decl., Ex. G, Order on Demurrers and Motions to Strike dated September 13, 2004). Accordingly, under California law, Pardee is, as a matter of law, incapable of being liable to Plaintiffs for fraudulent omission or concealment – whether Plaintiffs choose to label their cause of action "constructive fraud" (*see* FAC, eighth cause of action) or "fraud and deceit" (*see* SAC, fourth cause of action). Indeed, although the Court sustained Pardee's demurrer to Plaintiffs' ninth cause of action for fraud (as assented in the FAC) with leave to amend, Plaintiffs not only have continued to fail to *allege* any basis for liability, but have failed to present *any evidence* that would support such liability.

iii. Even if the duties of the Assignment Company could somehow be imputed to Pardee personally (they cannot), the Assignment Company likewise did not owe any fiduciary

duties to Plaintiffs. The nature of Plaintiffs' relationship with the Assignment Company was defined by the written Agreements the Plaintiffs entered into several years before Pardee's involvement. Those contracts impose ***no duty whatsoever*** on the Assignment Company to act as Plaintiffs' fiduciary, or to inform Plaintiffs when new individuals become involved with the Assignment Company or how the Assignment Company manages the TIGRs and other assets – which, in fact and by contract, were the sole and exclusive property of the Assignment Company.

iv. The relationship between the Assignment Company and Plaintiffs was purely contractual, and did not amount to a fiduciary relationship. A contract negotiated at arm's length does not create a fiduciary relationship. *See Recorded Picture Co. (Productions) Ltd. v. Nelson Entertainment, Inc.*, 53 Cal. App. 4th 350, 370-71 (1997) (citing *Gonsalves v. Hodgson*, 38 Cal. 2d 91, 98-99 (1951) (no fiduciary relationship where parties engaged in course of arm's length dealing)). Here, moreover, the Agreements explicitly state that Plaintiffs are merely general creditors of the Assignment Company and unambiguously limits their rights to "be solely those of a creditor," with no vested or contingent interest in the Assignment Company's assets. (Fact 18). A debtor-creditor relationship such as that between Plaintiffs and the Assignment Company is not a fiduciary relationship as a matter of law. *Copesky v. Superior Court*, 229 Cal. App. 3d 678, 692-93 (1991); *accord Downey v. Humphreys*, 102 Cal. App. 2d 323, 332 (1951) ("there is not a fiduciary relation between debtor and creditor"); *see also Lawrence v. Bank of America*, 163 Cal. App. 3d 431, 437 (1985) ("the relationship between a bank and its depositor is that of debtor-creditor, and is not a fiduciary one").

c. The conduct which Plaintiffs allege amounted to fraud or deceit in this action was not the proximate cause of their damage.

i. For the reasons explained in Section 1.g, above, the conduct which Plaintiffs allege constituted an intentional interference with contract was not the proximate cause of Plaintiffs' damages.

ii. Moreover, Plaintiffs were not the legal owners of the TIGRs. (Pardee Decl., Exs. A-D). Thus, Plaintiffs had no right to prevent the sale of the TIGRs even if they had known of the intended sale, and would not have had any claim based solely upon such sale. Regardless, the contracts did not prohibit the sale of the TIGRs. (*Id.*) In addition,, following the sale of the TIGRs, and for the next four years during which Pardee remained involved with the Assignment Company, it maintained sufficient assets to make the future payments to Plaintiffs. (Pardee Decl. ¶ 11). Accordingly, Pardee cannot be liable for interference with contract as a matter of law.

DATED: December 9th, 2005

Peter D. Lichtman
The Honorable Peter D. Lichtman
Superior Court Judge

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 660 S. Figueroa Street, Suite 1450, Los Angeles, California 90017.

On December 6, 2005, I served the foregoing documents(s) described as:

**[PROPOSED] ORDER GRANTING JONATHAN H. PARDEE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES, SUMMARY ADJUDICATION OF ISSUES**

on the interested parties in this action as follows

X by placing ___ the original X a true copy thereof enclosed in sealed envelopes addressed as stated on

Marc T.G. Dworsky, Esq.
Randall G. Sommer, Esq.
Munger Tolles & Olson LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560

Roman M. Silberfeld, Esq.
Bernice Conn, Esq.
ROBINS, KAPLAN, MILLER & CIRESI LLP
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067

**BY PERSONAL SERVICE**

X I served a true copy of the above-referenced documents on the interested party(ies) in said action.

**BY MAIL**

___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 6, 2005 at Los Angeles, California.

X (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

LEANDRO DiMONLIVA

JAIME Rodriguez
Print

Signature

POS-Letty(personal)

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 660 S. Figueroa Street, Suite 1450, Los Angeles, California 90017.

On December 8, 2005, I served the foregoing documents(s) described as:

**~~[PROPOSED]~~ ORDER GRANTING JONATHAN H. PARDEE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES, SUMMARY ADJUDICATION OF ISSUES**

on the interested parties in this action as follows

X by placing ___ the original X a true copy thereof enclosed in sealed envelopes addressed as stated on

Marc T.G. Dworsky, Esq.
Randall G. Sommer, Esq.
Munger Tolles & Olson LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560

Roman M. Silberfeld, Esq.
Bernice Conn, Esq.
ROBINS, KAPLAN, MILLER & CIRESI LLP
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067

**BY FEDERAL EXPRESS**

___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for shipping via Federal Express. Under the practice it would be dropped off with the Federal Express office on the same day with shipping fees thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY MAIL**

x As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 8, 2005 at Los Angeles, California.

X (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Karen L. Roberts